No. 25-1664

# United States Court of Appeals
## For the Eighth Circuit

D. BART ROCKETT, as next friend of his minor child, B.R., and KADAN ROCKETT,

*Plaintiffs-Appellees*,

v.

ERIC EIGHMY, in his individual capacity only,

*Defendant-Appellant*.

On Appeal from the United States District Court for the Western District of Missouri, the Honorable M. Douglas Harpool

## APPELLANT'S BRIEF

**ANDREW BAILEY**
Missouri Attorney General

Maria Lanahan, #65956 (MO)
*Principal Deputy Solicitor General*
815 Olive Street, Ste. 200
St. Louis, MO 63101
Tel: (314) 340-4978
Fax: (573) 751-0774
Maria.Lanahan@ago.mo.gov

*Counsel for Defendant-Appellant*

## SUMMARY OF CASE AND STATEMENT ON ORAL ARGUMENT

This case arises out of a judge's good-faith effort to resolve a dispute between a mother and her recalcitrant 14- and 12-year-old teenagers. Two divorced parents settled, deciding the teenagers would live with their mother. After the court accepted the settlement, the teenagers refused to leave with their mother. The judge took the teenagers into a conference room to discuss the consequences of their actions. When that did not work, he walked the teenagers downstairs to the Juvenile Division, where Juvenile Division employees had them sit in two cells for less than an hour. The teenagers were always free to go home with their mother. After sitting in the cells for less than an hour, they went home with their mother.

The teenagers filed suit alleging the judge violated their Fourth Amendment rights. The defendant judge alleges qualified immunity and judicial immunity. The jury originally awarded $0. Then Plaintiffs requested a nominal damages instruction they previously waived. The district court issued the instruction, after which the jury awarded $5,000 per plaintiff. This case warrants this Court's careful attention. Judge Eighmy requests 15 minutes of oral argument.

## TABLE OF CONTENTS

**Summary of Case and Statement On Oral Argument** .................... i
**Table of Contents** .......................................................................... ii
**Table of Authorities** ....................................................................... iv
**Jurisdictional Statement** ................................................................. 1
**Statement of the Issues** ................................................................... 2
**Statement of the Case** ..................................................................... 4
**Summary of Argument** ..................................................................... 11
**Standard of Review** ......................................................................... 18
**Argument** ........................................................................................ 19

I. Judge Eighmy cannot be sued for his actions because they are covered by either judicial or qualified immunity or, if they are not, he cannot be liable under § 1983 because he was not acting as a state actor. ................................................................ 22

A. Judge Eighmy is entitled to qualified immunity. ..................... 22

1. Judge Eighmy did not unconstitutionally seize Plaintiffs because a reasonable person would have known that they were free to leave, because any alleged seizure was reasonable, and because Judge Eighmy acted in good faith. ......................................................................... 23

2. Judge Eighmy did not violate any clearly established constitutional rights. ......................................................... 30

B. Judge Eighmy has judicial immunity. .................................... 37

C. Alternatively, Judge Eighmy was not acting under color of state law. ........................................................................ 41

II. The district court abused its discretion in denying the motion to alter or amend the judgment. ................................................ 44

A. The district court erred when it submitted a nominal damages instruction after the jury returned a $0 verdict. ....... 45

B. The district court abused its discretion by denying the motion to alter or amend the judgment by reducing the damages award. .......... 52

III. The district court abused its discretion by awarding $325,000 in attorney fees. .......... 54

A. The district court abused its discretion in awarding $325,000 in attorney fees when Plaintiffs were only awarded $5,000 each. .......... 54

B. The district court abused its discretion in awarding attorney fees when Plaintiffs should have been awarded $0 or $2 in damages. .......... 59

**Conclusion .......... 61**

**Certificate of Compliance .......... 62**

**Certificate of Service .......... 63**

<u>**TABLE OF AUTHORITIES**</u>

**Cases** Page(s)

*Alexander v. Riga*,
208 F.3d 419 (3d Cir. 2000) ........................................ 46

*Anderson v. Creighton*,
483 U.S. 635 (1987)........................................ 30

*Anheuser-Busch, Inc. v. John Labatt Ltd.*,
89 F.3d 1339 (8th Cir. 1996)........................................ 49

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)........................................ 23, 30, 31, 32

*Briseño v. Henderson,*
*998* F.3d 1014 (9th Cir. 2021)........................................ 58

*Bulfin v. Rainwater*,
104 F.4th 1032 (8th Cir. 2024) ........................................ 23

*Burlison v. Springfield Pub. Sch.*,
708 F.3d 1034 (8th Cir. 2013)........................................ 23, 41

*Butler v. Dowd*,
979 F.2d 661 (8th Cir. 1992)........................................ 3, 9, 50

*C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*,
591 F.3d 624 (8th Cir. 2010)........................................ 23, 24

*Corpus v. Bennett*,
430 F.3d 912 (8th Cir. 2005)........................................ 52, 53

*Debity v. Monroe Cnty. Bd. of Educ.*,
134 F.4th 389 (6th Cir. 2025) ........................................ 49

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) ........................................ 2, 4, 6, 31, 32

*Engel Sheet Metal Equip., Inc. v. Shewman*,
307 S.W.2d 694 (Mo. App. 1957) ........................................ 36, 37, 38

*Estate of Johnson v. Kranitz*,
168 S.W.3d 84 (Mo. App. 2005) .................................................... 36, 38

*Farrar v. Hobby*,
506 U.S. 103 (1992)..................................3, 4, 5, 6, 7, 55, 56, 57, 59, 60

*Fires v. Heber Springs Sch. Dist.*,
565 F. App'x 573 (8th Cir. 2014) ........................................... 3, 9, 56, 57

*Geier v. Missouri Ethics Comm'n*,
715 F.3d 674 (8th Cir. 2013)................................................................ 18

*Gibeau v. Nellis*,
18 F.3d 107 (2d Cir. 1994) .................................................................. 50

*Hansen v. Black*,
872 F.3d 554 (8th Cir. 2017)......................................................... 23, 34

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................ 3, 55

*Hewitt v. Helms*,
482 U.S. 755 (1987)............................................................................ 59

*Irish v. McNamara*,
108 F.4th 715 (8th Cir. 2024) ............................................... 2, 31, 34, 35

*Jones v. Lockhart*,
29 F.3d 422 (8th Cir. 1994)....................................................... 3, 18, 57

*Jordan v. Carmean*,
573 F. App'x 609 (8th Cir. 2014) ......................................................... 18

*Liles v. Reagan*,
804 F.2d 493 (8th Cir. 1986)............................................................ 2, 38

*Loggins v. Delo*,
999 F.2d 364 (8th Cir. 1993)................................................................ 56

*Malik v. Arapahoe Cnty. Dept. of Soc. Services*,
191 F.3d 1306 (10th Cir. 1999)............................................................ 34

*McLean v. First Horizon Home Loan Corp.*,
277 S.W.3d 872 (Mo. App. 2009) .......... 36

*Messerschmidt v. Millender*,
565 U.S. 535 (2012) .......... 24, 30, 33

*Mettler v. Whitledge*,
165 F.3d 1197 (8th Cir. 1999) .......... 31, 32

*Michigan v. Chesternut*,
486 U.S. 567 (1988) .......... 23

*Miller v. Albright*,
657 F.3d 733 (8th Cir. 2011) .......... 3, 45, 46, 51

*Mireles v. Waco*,
502 U.S. 9 (1991) .......... 2, 37

*Mullenix v. Luna*,
577 U.S. 7 (2015) .......... 32

*Nichols v. Woodward & Lothrop, Inc.*,
322 A.2d 283 (D.C. 1974) .......... 31

*Oliver v. Falla*,
258 F.3d 1277 (11th Cir. 2001) .......... 46

*Parker v. Boyer*,
93 F.3d 445 (8th Cir. 1996) .......... 3, 41

*Patterson v. City of Omaha*,
779 F.3d 795 (8th Cir. 2015) .......... 3, 50

*Piaubert v. MacIntosh*,
10 F. App'x 503 (9th Cir. 2001) .......... 46

*Riehm v. Engelking*,
538 F.3d 952 (8th Cir. 2008) .......... 2, 24, 26, 30

*Rockett v. Eighmy*,
71 F.4th 665 (8th Cir. 2023) .......... 7, 9, 38, 39, 41, 42, 43, 47

*Roe v. Humke*,
128 F.3d 1213 (8th Cir. 1997) .......... 3, 41, 42, 43, 44

*Ryan Data Exch., Ltd. v. Graco, Inc.*,
913 F.3d 726 (8th Cir. 2019) .......... 18

*Salazaar v. Encinias*,
242 F.3d 390 (10th Cir. 2000) .......... 46

*Schinzing v. Mid-States Stainless, Inc.*,
415 F.3d 807 (8th Cir. 2005) .......... 18

*Sims v. Mulcahy*,
902 F.2d 524 (7th Cir. 1990) .......... 46

*State ex rel. Cullen v. Harrell*,
567 S.W.3d 633 (Mo. 2019) .......... 36, 37, 38

*Stump v. Sparkman*,
435 U.S. 349 (1978) .......... 2, 37, 38, 39, 43

*T.S.H. v. Green*,
996 F.3d 915 (8th Cir. 2021) .......... 30

*United States v. Drayton*,
536 U.S. 194 (2002) .......... 26, 27, 29

*United States v. Warren*,
984 F.3d 1301 (8th Cir. 2021) .......... 27, 28, 30

*Westcott v. Crinklaw*,
133 F.3d 658 (8th Cir. 1998) .......... 3, 49

*Wheeler v. City of Searcy, Arkansas*,
14 F.4th 843 (8th Cir. 2021) .......... 2, 24, 30

*White v. Pauly*,
580 U.S. 73 (2017) .......... 31, 37

**Statutes and Constitutional Provisions**

U.S. Const. amend. IV .......... 23

28 U.S.C. § 1291 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1343 .......... 1

42 U.S.C. § 1983 .......... 2, 11, 12, 14, 20, 21, 22, 30, 34, 41, 43, 44, 50, 54

42 U.S.C. § 1988 .......... 54, 60

**Rules**

Fed. R. App. P. 4 .......... 1

Fed. R. App. P. 28 .......... 62

Fed. R. App. P. 32 .......... 62

Fed. R. Civ. P. 49 .......... 49

Fed. R. Civ. P. 51 .......... 3, 45, 48

Fed. R. Civ. P. 59 .......... 18

## JURISDICTIONAL STATEMENT

This appeal arises out of a final judgment entered by the United States District Court for the Western District of Missouri after a jury verdict. On December 12, 2024, a jury awarded Plaintiffs $10,000 in damages. App. 0650; R. Doc. 174, at 1. On January 9, 2025, Judge Eighmy moved to alter the judgment and moved for judgment as a matter of law. App. 0768; R. Doc. 181, at 1; App. 0775; R. Doc. 182, at 1. The district court denied these motions on March 6, 2025. App. 0908; R. Doc. 197, at 1. Judge Eighmy noticed his appeal on April 2, 2025. App. 0923; R. Doc. 205, at 1.

The notice of appeal was timely under Fed. R. App. P. 4(a)(1)(A). The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Was Judge Eighmy entitled to qualified immunity when he asked two recalcitrant teenagers refusing to comply with the terms of their parents' settlement agreement to follow him to the Juvenile Division, where Juvenile Division employees placed them in holding cells for less than an hour?

    - *Wheeler v. City of Searcy, Arkansas*, 14 F.4th 843 (8th Cir. 2021)
    - *Riehm v. Engelking*, 538 F.3d 952 (8th Cir. 2008)
    - *District of Columbia v. Wesby*, 583 U.S. 48 (2018)
    - *Irish v. McNamara*, 108 F.4th 715 (8th Cir. 2024)

2. Did Judge Eighmy have judicial immunity when he asked two recalcitrant teenagers refusing to comply with the terms of their parents' settlement agreement to follow him to the Juvenile Division, where Juvenile Division employees placed them in holding cells for less than an hour?

    - *Mireles v. Waco*, 502 U.S. 9 (1991) (per curiam)
    - *Stump v. Sparkman*, 435 U.S. 349 (1978)
    - *Liles v. Reagan*, 804 F.2d 493 (8th Cir. 1986)

3. If Judge Eighmy's actions were not judicial acts, then was he acting under color of state law such that he could be liable under § 1983?

- *Roe v. Humke*, 128 F.3d 1213 (8th Cir. 1997)
- *Parker v. Boyer*, 93 F.3d 445 (8th Cir. 1996)

4. Did the district court abuse its discretion by declining to reduce the $10,000 damages award, which would not have occurred without the district court's erroneous decision to submit a waived nominal damages instruction to the jury after the jury returned a $0 compensatory damages verdict?

   - Fed. R. Civ. P. 51
   - *Miller v. Albright*, 657 F.3d 733 (8th Cir. 2011)
   - *Westcott v. Crinklaw*, 133 F.3d 658 (8th Cir. 1998)
   - *Patterson v. City of Omaha*, 779 F.3d 795 (8th Cir. 2015)
   - *Butler v. Dowd*, 979 F.2d 661 (8th Cir. 1992) (en banc)

5. Did the district court abuse its discretion in awarding $325,000 in attorney fees to Plaintiffs' attorneys when Plaintiffs recovered only $5,000 each and should have recovered even less than that?

   - *Farrar v. Hobby*, 506 U.S. 103 (1992)
   - *Hensley v. Eckerhart*, 461 U.S. 424 (1983)
   - *Jones v. Lockhart*, 29 F.3d 422 (8th Cir. 1994)
   - *Fires v. Heber Springs Sch. Dist.*, 565 F. App'x 573 (8th Cir. 2014)

## STATEMENT OF THE CASE[1]

### I. Judge Eighmy tries to help resolve a dispute between a mother and her recalcitrant teenagers.

This case involves two teenage magicians who "were finalists on…America's Got Talent." PTCT 15:9–10.[2] When they "were just two and four, their parents" divorced, "and there were subsequent proceedings over custody." TT 45:23–46:1. This case involves proceedings on October 8, 2019. *See, e.g.*, *id.* at 58:1–4. The details of the custody dispute itself are not important.

During the proceedings, Plaintiffs' parents agreed to settle, and the settlement provided the teenagers would live with their mother. *Id.* at 76:7–8. Kadan Rockett was "[n]ot thrilled, to say the least." *Id.* at 76:14. He said that he was "not going to leave the courthouse with [his] mom." *Id.* at 76:23–25, 77:8–11. B.R. did not want to go home with her mom either. *Id.* at 186:24–187:5.

---

[1] All facts referenced in this brief are in the light most favorable to the Plaintiffs.

[2] "PTCT" refers to the pretrial conference transcript. "TT" refers to the trial transcript. "PE[#]" refers to Plaintiffs' exhibits, "DE[#]" refers to Defendant's exhibits, and "JE[#]" refers to the joint exhibits.

When Judge Eighmy came downstairs, he saw Plaintiffs arguing with their mother in the middle of the courthouse, and he invited them to go "into another side room" or conference room. *Id.* at 80:17; 338:16–24. The court-appointed counselor followed them into the room. *Id.* at 48:18; 338:16–339:2. Judge Eighmy wanted to "break" the "loop" of the teenagers arguing with their mother because he thought that they were making each other angrier. *Id.* at 234:20–25. In the conference room, the teens continued to voice their opposition to the settlement agreement, explaining that they "wanted to head back to California and not with [their] mom." *Id.* at 81:8–9, 83:2–7.[3] The teens also repeatedly said that sending them with their mom was illegal. *Id.* at 124:11–13, 189:13–15. Judge Eighmy warned the teens that if they did not go with their mom, they could come into care, which he hoped they could avoid. *Id.* at 239:13–21, 262:16–263:4.

Realizing the conversation was futile, Judge Eighmy told the teens to follow him and led them out of the conference room and downstairs.

[3] This recalcitrance was emblematic of a deteriorating relationship between Plaintiffs and their mother. *See* TT 115:18–25, 179:24–180:2. That is why Kadan "planned on doing anything and everything [he] could to not leave with [his] mom." *Id.* at 119:12–23.

*Id.* at 189:15–19; 84:5–11. Once downstairs, Judge Eighmy asked the teens to take a seat in the Juvenile Office waiting area, which they did. *Id.* at 85:1–23; App. 0925; JE5; TT 87:3–11; App. 0926; JE6; TT 86:5–7, 14–21; App. 0927; JE7. Kadan testified that he did not feel free to leave. TT 87:23–25. The Juvenile Office "can be brought into child custody cases if there are problems." TT 240:3–4.

Once in the Juvenile Office, the teens and Judge Eighmy again discussed the settlement agreement, but the teens continued to stand their ground, and Judge Eighmy continued to let them know about the possibility of going into care. TT 90:25–91:6. At some point, an officer from the Juvenile Office opened two holding cells in the office and showed them to the teens. *Id.* at 91:15–25. Eventually, Kadan and B.R. were patted down and placed into the holding cells by a male Juvenile Office officer in the presence of Judge Eighmy. *Id.* at 95:2–15, 196:17–197:11; 128:7–8. Judge Eighmy was not the supervisor of Chief Juvenile Officer Darlene Rae, and he did not have the power to make her or the Juvenile Office do anything regarding the teens. TT 249; 271. The teens stayed

in the cells for less than an hour,[4] after which they sat back down in their seats outside the cells and agreed to leave with Mom. *Id.* at 105:21–106:1.

Judge Eighmy's goal in all of this was to get the teens to "go home with [their] mom." *Id.* at 249:10–11. He "was trying to avoid" having the teens go to foster care and hoped that he "could just get them in the car with their mom." *Id.* at 262:16–263:4.

## II. The teens sue Judge Eighmy.

About a year and a half after the incident, the teens filed a Complaint in the United States District Court for the Western District of Missouri. App. 0001; R. Doc. 1, at 1. This complaint included, as relevant here, a count alleging that Judge Eighmy violated the Fourth Amendment prohibition on unreasonable seizures when he interacted with the

[4] The teens could not say how long they were in the cell. TT 131:24–25 ("Q: You can't say how long you were in the cell? A [by Kadan]: No, just that it felt like forever."); TT 199:3–7 ("Q: Do you have an idea of approximately how long you were in that cell? A [by B.R.]: I really don't."). Mom testified that the teens could have been downstairs generally (as opposed to in the cells) for "20, 30, 40 minutes," but she didn't know and "it's hard to put a time" on it. TT 371:7–9. Judge Eighmy testified that it was between ten and fifteen minutes. TT 248:10–16.

teens in the Taney County Courthouse. App. 0030; R. Doc. 1, at 30.[5] Plaintiffs amended their complaint, which was substantially similar to the original complaint for the purposes of this brief. App. 0257; R. Doc. 59-7; App. 0296; R. Doc. 61. In June 2024, Judge Eighmy moved for summary judgment on the basis of judicial and qualified immunity, which the district court denied. R. Doc 105; R. Doc. 106; App. 0410; R. Doc. 133, at 7.

The case went to jury trial. TT 1–4. At the close of Plaintiffs' evidence, Judge Eighmy moved for judgment as a matter of law, both on the record and in briefing, which the district court denied. TT 547:16–554:16; App. 0569; R. Doc. 164, at 1; App. 0908; R. Doc. 197, at 1. Judge Eighmy renewed his motion for judgment as a matter of law at the close of all evidence, which the district court denied. TT 573:1–9.

The district court held jury-instruction conferences on December 10 and 11, where the parties proffered proposed jury instructions. *Id.* at 394:9–418:1, 419:7–445:20, 573:10–612:10. Plaintiffs never requested a nominal damages instruction during the instruction conferences. *Id.* at

---

[5] The Complaint also raised claims that this Court held were barred by judicial immunity in an earlier appeal. *See Rockett v. Eighmy*, 71 F.4th 665, 673 (8th Cir. 2023) ("*Eighmy I*").

394:9–418:1, 419:7–445:20, 573:10–612:10; 675:17–18 (Judge Harpool stating "I frankly wondered why nobody tendered a nominal damage instruction"). After the instructions conferences, the district court read the instructions to the jury, explaining how the jury could award "damages for [B.R.]" and "[d]amages for Kadan." *Id.* at 629:11–13. There was no discussion of nominal damages at this time either. *See id.*

After deliberating, as relevant here, the jury returned a verdict in the teens' favor on Count I – unreasonable seizure, but found that damages were zero. *Id.* at 663:11–14, 663:21–664:2, 664:9–11. Then, for the first time, the teens moved for a nominal damages instruction, TT 667:8, 669:4–5. Judge Eighmy objected to giving the nominal damages instruction, but did not dispute the wording of the proposed instruction. TT 675 ("Our record is that when a nominal damages [instruction] is not requested nor objected to when a damage instruction [is] given and they don't award damages, … the plaintiff would not be the prevailing party."); TT 670:7–8.

The district court instructed the jury on nominal damages and asked it to reconsider its verdict. *Id.* at 676:10–677:11. The jury returned

shortly thereafter, awarding $5,000 in damages to each Plaintiff. *Id.* at 678:18–19, 679:7–8.

After trial, Judge Eighmy moved for judgment as a matter of law and to alter or amend the judgment. App. 0768; R. Doc. 181, at 1; App. 0775; R. Doc. 182, at 1. Among other things, Judge Eighmy argued that there was no seizure, that any seizure was not unreasonable, that any alleged violation of the Fourth Amendment's unreasonable-seizure requirement was not clearly established, that Judge Eighmy had not acted under color of state law, and that the amount of damages should be reduced to either $2 or $0. App. 0768; R. Doc. 181; App. 0775; R. Doc. 182. The district court denied both the motion for judgment as a matter of law and the motion to alter or amend the judgment. App. 0908; R. Doc. 197, at 1.

## SUMMARY OF ARGUMENT

**I.** Judge Eighmy should have been granted qualified immunity and judicial immunity from suit. If he was granted neither, then he was not acting under color of state law, and he cannot face § 1983 liability.

**A.** Judge Eighmy was entitled to qualified immunity because he did not violate the Fourth Amendment or, if he did, any violation was not "clearly established."

**1.** Judge Eighmy did not violate the Fourth Amendment because he did not seize anyone, or, if he did, any seizure was reasonable. A person is not seized if a reasonable person would feel free to leave. In this case, the teens knew that they were free to leave with their mom. In fact, Judge Eighmy was imploring them to do so. Further, a seizure does not violate the Fourth Amendment if it is reasonable or in good faith. Here, any alleged seizure was either reasonable or in good faith, so Judge Eighmy did not violate the Fourth Amendment. Judge Eighmy's actions were reasonable given the circumstances. The teens refused to go with their mother. Their

father was not at the courthouse. And when there were problems with children in custody cases, the Juvenile Division was called in to assist. Bringing the teens down to the Juvenile Division was reasonable given the circumstances. And finally, Judge Eighmy was acting in good faith because his intention was to avoid the teens having to go into foster care or some other form of juvenile supervision. Thus, there can be no § 1983 violation.

**2.** In the alternative, any alleged violation of the Fourth Amendment was not "clearly established," meaning Judge Eighmy was entitled to qualified immunity and cannot be liable. Both the district court judge and Plaintiffs' counsel below agreed that this case was highly unusual. And in cases that are highly unusual, qualified immunity is at its zenith because the official lacks guidance as to whether his conduct is unlawful. At the time of the alleged violation, it was not clearly established that Judge Eighmy's conduct was unconstitutional under the Fourth Amendment.

A party also cannot violate the Fourth Amendment's unreasonable-seizure prohibition unless he subjectively wants to seize someone. Judge Eighmy lacked this subjective intent.

Further, a party does not violate the Fourth Amendment if they have a basis in law to act as they did, which Judge Eighmy did. Missouri courts have inherent authority to enforce their judgments. This authority extends to preventing even non-parties from actively thwarting a judgment they know about. That is exactly what happened here. Judge Eighmy used his judicial power to prevent the teens from actively thwarting a judgment they knew about.

**B.** Judicial immunity bars this suit. Judge Eighmy's acts were judicial as a matter of law. They are acts normally undertaken by a judge, and Plaintiffs dealt extensively with Judge Eighmy in his capacity as a judge. For instance, this Court has held that asserting contempt powers is, as a matter of law, a judicial act.

**C.** In the alternative, if Judge Eighmy was not acting in his judicial capacity, then he is not acting under color of state law at all. And if he was not acting under color of state law, he cannot be

liable under § 1983. In *Eighmy I*, this Court explained that judges lose their judicial immunity when they engage in non-judicial acts. If that is true, then Judge Eighmy's acts were not just non-judicial—they were purely private because Judge Eighmy did not have any other official persona other than judge. When an official engages in purely private acts (even ones that could not have occurred unless the official was a state official), there can be no § 1983 liability.

**II.** The district court also abused its discretion by denying the motion to reduce the damages award.

**A.** A party must proffer all proposed jury instructions before closing arguments. A party waives its objections to any instructions it fails to proffer. Here, Plaintiffs did not proffer a nominal damages instruction. They only proffered a compensatory damages instruction. Thus, when the jury returned with a $0 compensatory verdict, the district court should not have been able to send back a new nominal damages instruction.

This Court has held that a district court may not instruct the jury with a nominal damage instruction after the jury returns a $0

compensatory verdict. This is true even when a jury *must* award damages for liability to exist. This makes sense. Plaintiffs often choose not to request a nominal damages instruction for strategic reasons. They do not want to suggest to the jury that they have no compensable damages. But that strategic choice rightly comes with a risk—that the jury award $0 in compensatory damages.

**B.** This Court should reverse and remand with instructions to decrease the amount of the judgment to $0 because the district court wrongly sent back a new nominal-damages instruction to the jury, which materially affected the verdict. This Court has consistently held that a jury need not award compensatory damages in Fourth Amendment cases.

**C.** In the alternative, this Court should reduce the damages award to $2. When the jury returned with a $0 compensatory damages verdict, it unambiguously concluded that Plaintiffs did not deserve compensatory damages. In those circumstances, this Court has held that *the most* a jury can award is $1 per count. Here, that would be $2. Instead, the district court awarded $10,000. This

Court should reverse with instructions to enter a damages award of $2.

**III.** Finally, the district court abused its discretion in awarding more than $325,000 in attorney fees when the teens recovered only $5,000 each, and should have recovered even less than that ($2 or $0).

**A.** It is disproportional and an abuse of discretion to award $325,000 in attorney fees when Plaintiffs only recovered $5,000 each. Other cases from this Court indicate that attorney fees should be severely diminished when plaintiffs recover only a small fraction of what they originally sought. Here, Plaintiffs sought over a million dollars, but received less than 1% of that amount. The district court abused its discretion by failing to reduce damages accordingly.

**B.** This argument has even more force if this Court were to decrease damages to $2 or $0. Those are nominal damages amounts, and the U.S. Supreme Court has held that when damages are nominal, the proper amount of attorney fees is usually $0. The district court abused its discretion in awarding $325,000 in fees.

This Court should reverse the judgment of the district court. In the alternative, this Court should reduce damages to $0 (or, in the alternative, $2). And this Court should hold that the district court abused its discretion in awarding $325,000 in attorney fees and either eliminate attorney fees or, in the alternative, greatly reduce them given the very small damages award

## STANDARD OF REVIEW

Legal challenges to an adverse jury verdict are reviewed *de novo*, with the Court viewing the facts in the light most favorable to the jury's verdict. *See Ryan Data Exch., Ltd. v. Graco, Inc.*, 913 F.3d 726, 732 (8th Cir. 2019); *see also, e.g.*, *Jordan v. Carmean*, 573 F. App'x 609, 609 (8th Cir. 2014) (per curiam). This Court "review[s] the denial of a Rule 59(e) motion to amend the judgment for abuse of discretion." *Schinzing v. Mid-States Stainless, Inc.*, 415 F.3d 807, 813 (8th Cir. 2005). And this Court reviews challenges to an award of attorney fees for abuse of discretion. *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994). "A district court abuses its discretion when it makes an error of law." *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).

## ARGUMENT

*"It's kind of an unusual fact situation."*

-Judge Harpool, TT 548:25–549:1

*This is a highly unusual case.*

-Hugh Eastwood, Counsel for Plaintiffs, TT 630

As everyone agrees, this was not a case with a common or typical fact pattern. After a series of custody proceedings in multiple States, Bart Rockett and his ex-wife, Kami Ballard, agreed that 14-year-old Kadan Rockett and 12-year-old B.R. (collectively, "Plaintiffs" or "the teenagers") would live with Ballard ("Mom"). But the teenagers did not like that. They wanted to live with Rockett ("Dad"). After Dad left the courthouse, the teenagers refused to leave with Mom.

Defendant Judge Eric Eighmy came down from his courtroom and tried to talk sense into the teenagers. He took them into a conference room and explained that both Mom and Dad agreed that they would be leaving with Mom today. When the teenagers did not change their tune, he explained that there could be consequences for not going with Mom. The teens still did not agree to go with Mom. Judge Eighmy led the teens out of the conference room, past Mom, and down to the Juvenile Division.

In the Juvenile Division, the teens still refused to go home with Mom. According to the teens, Judge Eighmy told a Juvenile Division employee to place them in cells. A Juvenile Division employee then patted the teens down and placed them in two cells and shut the door to each. The teens spent less than an hour in the cells. After that, the teens emerged from the cells, agreed to go home with Mom, and were led out of the Juvenile Division and back to Mom, after which they left the courthouse.

The teens sued, alleging violation of, among other things, their Fourth Amendment right against unreasonable seizures. After an appeal, part of the case was dismissed. The case then proceeded to trial on, as relevant here, the theory that Judge Eighmy was not acting in his capacity as a judge (meaning he was not entitled to judicial immunity), but that he was acting in his capacity as some other state official (which would allow § 1983 liability). During the instruction conference, the parties litigated jury instructions, but no one proffered a nominal damages instruction.

Initially, the jury found liability but awarded $0 in compensatory damages. Plaintiffs then belatedly requested a nominal damages instruction which they had previously waived by not requesting it. Instead of recognizing that the nominal damages instruction was waived, the district court sent back the verdict form and ordered the jury to reconsider their already valid verdict. When it did so, it returned a $10,000 damages verdict for Plaintiffs. Later, the district court awarded $326,637.22 of the $418,830.72 in attorney fees requested despite Plaintiffs asking for sizeable six- and seven-figure amounts in damages and punitive damages but only being awarded $5,000 per plaintiff. Tr. 641:1–5, 641:25–642:3.

The district court made five errors in this case, each individually warranting reversal. *First*, the district court erred in denying Judge Eighmy qualified immunity. *Second*, the district court erred in denying Judge Eighmy judicial immunity. *Third*, if Judge Eighmy was not entitled to judicial immunity, he was not acting under color of state law and could not be held liable under § 1983. *Fourth*, the district court refused to reduce the $10,000 damages award, which it should have done on the basis that the only reason the $10,000 award existed was because the district court wrongly told the jury to reconsider its valid verdict. *Fifth*,

the district court abused its discretion by awarding about $325,000 in attorney fees when the Plaintiffs recovered only $5,000 each, and should have recovered even less than that.

This Court should reverse the judgment against Judge Eighmy or, in the alternative, decrease the damages award and the attorney fees award.

## I. Judge Eighmy cannot be sued for his actions because they are covered by either judicial or qualified immunity or, if they are not, he cannot be liable under § 1983 because he was not acting as a state actor.

The district court erred when it entertained this § 1983 suit for three reasons. *First*, Judge Eighmy did not violate any clearly established constitutional rights, so he is qualifiedly immune from suit. *Second*, Judge Eighmy's actions were judicial acts, so he is absolutely immune from suit. *Third*, if Judge Eighmy's actions were not judicial acts, then he was not acting under color of state law and, therefore, could not be subject to a suit under § 1983.

### A. Judge Eighmy is entitled to qualified immunity.

In a § 1983 suit alleging violation of the Fourth Amendment, a defendant who is a state official like Judge Eighmy is "entitled to qualified immunity unless the evidence, viewed in the light most favorable to

[Plaintiffs], establishes a violation of [their] Fourth Amendment rights that was clearly established at the time of the violation." *Bulfin v. Rainwater*, 104 F.4th 1032, 1038 (8th Cir. 2024). "This shields all but the 'plainly incompetent'—those whose conduct violated legal norms that existing precedent placed 'beyond debate' at the time of the alleged misconduct." *Hansen v. Black*, 872 F.3d 554, 557 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 743 (2011)).

### 1. Judge Eighmy did not unconstitutionally seize Plaintiffs because a reasonable person would have known that he or she were free to leave, because any alleged seizure was reasonable, and because Judge Eighmy acted in good faith.

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1039 (8th Cir. 2013) (quoting U.S. Const. amend. IV). When, as here, a plaintiff asserts that their person has been seized, he or she must show that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). He or she also must show that any seizure was "unreasonable." *See, e.g.*, *C.N. v. Willmar Pub. Sch.,*

*Indep. Sch. Dist. No. 347*, 591 F.3d 624, 633 (8th Cir. 2010). "Reasonableness is judged in light of the totality of the circumstances…and context is therefore critical to reasonableness analysis." *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 633 (8th Cir. 2010). (cleaned up). Also, a plaintiff cannot succeed on his or her claim when the official acted "in objective good faith." *See Wheeler v. City of Searcy, Arkansas*, 14 F.4th 843, 852 (8th Cir. 2021) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)); *see, e.g.*, *Riehm v. Engelking*, 538 F.3d 952, 965–66 (8th Cir. 2008).

Judge Eighmy did not violate the unreasonable-seizure provision of the Fourth Amendment for three reasons: (1) a reasonable person in Plaintiffs' position would have believed they were free to leave; (2) Judge Eighmy's conduct was reasonable given the totality of the circumstances; and (3) Judge Eighmy was acting in good faith.

**a. The teens were not seized by Judge Eighmy.**

To start, the teens were not seized by Judge Eighmy. The only thing the teens allege Judge Eighmy did was lead the teens down to the Juvenile Office. TT 631:3–6 (Plaintiffs' counsel identifying their theory of seizure as the teens being "no longer free to go when [Judge Eighmy]

marched them down to the juvenile office"). Judge Eighmy was not their personal jailer. He did not pat them down or put them in cells. Someone else from the Juvenile Office—which was not under Judge Eighmy's control—did that. TT 249:15 (Judge Eighmy stating "I have no control over [the Juvenile Office]."); TT 271 (Judge Eighmy stating "I don't have the power to make [Chief Juvenile Officer Rae] do anything in regards to these children."); TT 513:9–514:14 (Chief Juvenile Officer Rae stating that she decided what to do with the teens, not the judge); 95:2–15 (juvenile officer putting in cells), 196:17–197:11 (same).

Further, during the time that Judge Eighmy was around the teens, a reasonable person in their shoes would have thought they were free to leave based on Judge Eighmy's statements. Kadan testified that he "knew the only way to get out of it was to just give in and go with [his] mother," suggesting he knew he was free to leave. TT 88:9–14. Judge Eighmy's unrebutted testimony at trial was likewise that he continuously told the teens that "[w]e don't have to do this, you can go home with your mom, would you please do that[?]" TT 249:10–12 (Judge Eighmy testimony); *see also* TT 82:2–7. Plaintiffs' theory of the case was that Judge Eighmy was ordering around small and innocent children. *See,*

*e.g.*, *id.* at 82:2–7. But those same Plaintiffs never contested that the same judge was, using their logic, ordering the children *to leave*. *Id.* If anything, a reasonable person in the teens' shoes would have felt compelled to leave the courthouse with their mother instead of staying to argue with Judge Eighmy.

Plaintiffs' own statements show that neither they nor a reasonable person would have felt compelled to stay with Judge Eighmy. For example, the unrebutted testimony shows that the teens "were so disrespectful of Judge Eighmy" that court counselor Dr. Baker "could not believe that it was" them. *Id.* at 340:8–9. "They referred to him as a little judge from Missouri and that he could not tell them what to do." *Id.* at 340:9–11 (counselor Dr. Baker); *Id.* at 78:24–79:16 (Kadan admitting). Indeed, that last point is perhaps the most dispositive. Judge Eighmy was imploring Plaintiffs to leave with their mother. But Plaintiffs did not want to, so they were going to stay and contest the matter. By refusing to leave the courthouse with their mom, *id.* at 76:23–25, 77:9–11, 185:18–186:21, the teens voluntarily chose to stay with Judge Eighmy because their dad was no longer present. 299:24–305:9. A voluntariness precludes a Fourth Amendment violation. *See United States v. Drayton*, 536 U.S.

194, 207 (2002). This was not a case of people who reasonably believed they were not free to leave. This was a case of people who were told to leave but chose not to because they did not want to leave with their mother.

**b. There was no Fourth Amendment violation because any alleged seizure in leading the teens downstairs to the Juvenile Office was reasonable given the circumstances.**

Any alleged seizure failed to violate the Fourth Amendment because it was reasonable. The only seizure the teens claimed was Judge Eighmy leading them down to the Juvenile Office. TT 631:3–6 (Plaintiffs' counsel identifying their theory of seizure as the teens being "no longer free to go when [Judge Eighmy] marched them down to the juvenile office"). This was reasonable. The teens and their mother were repeatedly arguing about whether they had to live with their mother as the settlement agreement required. *Id.* at 77:22–73:1. Plaintiffs and Ballard had been going in circles, and they were making each other increasingly agitated. *Id.* at 234:20–25. This was plainly an emotional situation, and it was reasonable for Judge Eighmy to bring the teens into another room to privately discuss the terms of the settlement and what was happening. A reasonable person would have felt free to leave. *See United States v.*

*Warren*, 984 F.3d 1301, 1303–04 (8th Cir. 2021) (request from officer to "just stay in there for me, please" was not a seizure). Even if Plaintiffs did not feel free to leave at this point (they did), and even if that belief was reasonable (it was not), Judge Eighmy's own conduct in having this important conversation in a separate room was itself reasonable.

Likewise, it was reasonable for Judge Eighmy to lead the teens downstairs to the Juvenile Division after trying multiple times to convince them to comply with the settlement agreement and leave with their mom. Chief Juvenile Officer Darlene Rae's uncontested testimony was that the Juvenile Division is called upon when parents cannot control their children, which is what was occurring here. TT 471:22–472:23 (stating that children can be taken into custody when they are "beyond parental control" and that if the teens had not been agreeable to go home with their mom after being placed in the cells for a short time, "then [Rae] d[id]n't believe [she] would have had any choice but to take them into protective custody"). Judge Eighmy acted reasonably by bringing two teens who appeared to be beyond parental control to the right place—the Juvenile Division. Thus, even if this was a seizure (it was not), it was a reasonable one.

#### c. There was no Fourth Amendment violation because Judge Eighmy acted in good faith.

Finally, Judge Eighmy also was acting in good faith through all of this. He repeatedly explained his goal—to get the teens to "go home with [their] mom." *Id.* at 249:10–12. He "was trying to avoid" having the teens go to foster care and hoped that he "could just get them in the car with their mom." *Id.* at 262:16–263:4. He repeatedly asked Plaintiffs to go home, telling them "[t]his is going to happen. You have to go home with your mom." *Id.* at 267:4–5.

Even if the alleged seizure was not reasonable, Judge Eighmy acted in good faith. He was a guardian ad litem for nearly 20 years and a judge for several more. *Id.* at 212:5–7, 214:3–5. If there was *anyone* who knew the consequences of the teens' actions, it was Judge Eighmy. And drawing on his experience advocating for vulnerable children in Missouri's family courts, he knew that the best way to protect the teens' interests was to bring them down to the Juvenile Division, where they would be educated on the consequences of their actions and cared for if that is what they chose to do. If they did not change their actions, they would have come into care—that is the undisputed testimony. TT 471:22–472:23 (stating that children can be taken into custody when they are "beyond

parental control" and that if the teens had not been agreeable to go home with their mom after being placed in the cells for a short time, "then [Rae] d[id]n't believe [she] would have had any choice but to take them into protective custody"). Plaintiffs cannot reasonably argue that Judge Eighmy was not acting in good faith. That means there is, by definition, no basis for § 1983 liability under the Fourth Amendment. *See Wheeler*, 14 F.4th at 852 (quoting *Messerschmidt*, 565 U.S. at 546); *see, e.g.*, *Riehm*, 538 F.3d at 965–66.

**2. Judge Eighmy did not violate any clearly established constitutional rights and so cannot be liable under § 1983.**

Judge Eighmy did not violate any clearly established constitutional rights and so cannot be liable under § 1983. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (cleaned up). If the government official could have reasonably believed that his conduct was reasonable, then there is no clearly established Fourth Amendment violation. *T.S.H. v. Green*, 996

F.3d 915, 920 (8th Cir. 2021) ("[W]e…conclude that a reasonable officer could have believed that the seizure was reasonable."). Importantly, the right must be clearly established "*at the time* of the violation." *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999) (emphasis added).

In Fourth Amendment cases, two other caveats apply. *First*, when state law provides at least an arguable basis for the official's conduct, then the officer is qualifiedly immune from suit. For example, in *District of Columbia v. Wesby*, the Supreme Court held that officers had qualified immunity when they allegedly searched a property without probable cause because they had the legal right to disbelieve the suspect's explanation for his conduct. 583 U.S. 48, 67–68 (2018) (citing *Nichols v. Woodward & Lothrop, Inc.*, 322 A.2d 283, 286 (D.C. 1974)). *Second*, an officer has qualified immunity as a matter of law if the plaintiff fails to show the officer subjectively intended to seize him. *See, e.g.*, *Irish v. McNamara*, 108 F.4th 715, 721 (8th Cir. 2024).

The Supreme Court has repeatedly "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *al-Kidd*, 563 U.S. at 742). "The general proposition, for example,

that an unreasonable search or seizure violates the Fourth Amendment is" not enough. *Ashcroft*, 563 U.S. at 742. Rather, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (emphasis in original) (quoting *Ashcroft*, 563 U.S. at 742). Put differently, Plaintiffs "must show the right was clearly established in a particularized sense relevant to the case at hand." *Mettler*, 165 F.3d at 1203. For this reason, "the fact that a case is unusual"—like this one—"is an important indication that the…conduct did not violate a clearly established right." *Wesby*, 583 U.S. at 67.

The alleged violation was not clearly established here for three reasons. *First*, this case was so unusual that there is *no* case law (much less a robust consensus of case law) putting the constitutionality of Judge Eighmy's actions beyond debate. *Second*, Plaintiffs presented no evidence of Judge Eighmy's subjective intent, which is required to overcome qualified immunity in seizure cases. *Third*, and in the alternative, Judge Eighmy had a basis for his actions under state law.

a. **This case is so unusual that no case law demonstrates that Judge Eighmy violated a clearly established right.**

This case is so unusual that no case law demonstrates that Judge Eighmy violated a clearly established right. Both the district court and Plaintiffs' counsel confirmed that this was a highly unsual case. During Judge Eighmy's motion for a directed verdict, the district court explained that this case is "kind of an unusual fact situation." TT 548:25–549:1. Plaintiffs' counsel agreed, explaining that "this case is highly unusual." *Id.* at 630:10–15. They are both right. This was a case where two teens in a custody dispute refused to go home with their mother, even though both parents agreed that they would do so. The teens continued to dig in their heels, even after the court-appointed counselor and the family-court judge tried to reason with them. These were very unusual circumstances.

The fact that this case was so unusual means that Judge Eighmy has qualified immunity. A search of the case law in both state and federal courts indicates that something like this has not happened in any case (published or unpublished) anywhere in the country. The closest that Judge Eighmy could find were cases where social workers maliciously lied to a judge to obtain a warrant to remove a child from a home. *See,*

*e.g.*, *Malik v. Arapahoe Cnty. Dept. of Soc. Services*, 191 F.3d 1306, 1316 (10th Cir. 1999) ("Officials cannot reasonably assume that the law permits them to obtain a custody order in retaliation for a parent's retaining counsel and through reckless omission of probative facts to a magistrate.").

This is important because, even if there need not be a case directly on point, there needs to at least be *something* that can put the right asserted beyond doubt. *Hansen*, 872 F.3d at 557 (requiring that any § 1983 "violat[ion] [of] legal norms" must be based on "existing precedent" that "place[s]" the legality of the conduct "beyond debate"). Without that, as here, Judge Eighmy has qualified immunity, and this court should reverse.

**b. There is no clearly established violation because Judge Eighmy had no subjective intent to seize the teens. He wanted them to go home.**

There is no clearly established violation because there is no evidence that Judge Eighmy subjectively wanted to seize the teens. *See, e.g.*, *Irish*, 108 F.4th at 721 (subjective intent required for Fourth Amendment seizure violation). Judge Eighmy's unrebutted testimony is that he wanted Plaintiffs to go home with their mother. He testified that "what

[he] was trying to avoid was to keep them out of the system. If I could just get them in the car with their mom, it would avoid them having to come into contact with law enforcement." TT 262:16–263:4. In response to the question "Why were [the teens] free to leave?" He responded, "Because probably for the fifteenth time I was asking them, We don't have to do this, you can go home with your mom, would you please do that." TT 249:9–12. The teens knew this too. Kadan testified that "I knew the only way to get out of it was to just give in and go with our mother." TT 88:9–14. A judge that wants someone to leave is not subjectively trying to prevent that person from doing so. And without evidence that Judge Eighmy subjectively wanted to seize Plaintiffs, he has qualified immunity. *Irish*, 108 F.4th at 721.

**c. There is no clearly established violation because Judge Eighmy had a colorable basis for his actions under state law.**

In the alternative, there is no clearly established violation of the Fourth Amendment because Judge Eighmy had a basis for his actions under state law. The custody agreement was a divorce settlement. As a matter of Missouri law, divorce settlements are judgments, and Mis-

souri's "circuit courts have the inherent power to enforce their own judgments and should see to it that such judgments are enforced when they are called upon to do so." *State ex rel. Cullen v. Harrell*, 567 S.W.3d 633, 639 (Mo. 2019) (quoting *McLean v. First Horizon Home Loan Corp.*, 277 S.W.3d 872, 876–77 (Mo. App. 2009)) (cleaned up).

All Missouri judges have the inherent power to use coercive measures, like contempt, to ensure compliance with their orders. *See, e.g.*, *Estate of Johnson v. Kranitz*, 168 S.W.3d 84, 92 (Mo. App. 2005). The inherent contempt power includes the authority to hold non-parties in contempt when those non-parties know about and try to obstruct the enforcement of a lawful court order. *See Engel Sheet Metal Equip., Inc. v. Shewman*, 307 S.W.2d 694, 696 (Mo. App. 1957) ("[O]ne who, with notice, participates in acts in violation of an injunction is guilty of contempt and the fact that he was not a party to the action, or actually served with a copy of the injunction, will not relieve him.").

Here, Plaintiffs' continued to insist that they would not live with their mother, even after their father at least formally agreed to it. TT 297:19–22 (dad stating that he agreed to the settlement agreement because Judge Eighmy "asked me did I believe it was in the best interest of

the children and I said, For now, because I felt like I had a gun held to my head. I had no choice whatsoever"). The teens knew about the settlement agreement. *See id.* at 76:5–14. The teens' refusal to go home with their mother obstructed Judge Eighmy's order entering the settlement agreement. That gave Judge Eighmy the inherent right to take action to enforce his order. *See Harrell*, 567 S.W.3d at 639; *Engel*, 307 S.W.2d at 696. Thus, even if Judge Eighmy subjectively intended to seize Plaintiffs, he had a basis for doing so under Missouri law, meaning he has qualified immunity.

### B. Judge Eighmy has judicial immunity.

"A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11 (citation omitted). In determining whether a judge is entitled to judicial immunity, courts analyze "the nature and function of the act, not the act itself." *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)) (internal quotation marks omitted). In *Stump*, the Supreme Court laid out a two-part test for determining the

nature and function of an act. *First*, courts look at "whether it is a function normally performed by a judge." *Stump*, 425 U.S. at 362. *Second*, courts look at "whether [the parties] dealt with the judge in his judicial capacity." *Id.* As a matter of law, actions taken to enforce a court order are judicial acts for which the judge is absolutely immune. *See, e.g.*, *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986) (contempt proceedings and findings are judicial acts); *see also Eighmy I*, 71 F.4th at 671.

Judge Eighmy was engaged in a judicial act for three reasons. *First*, Judge Eighmy's acts were judicial in nature as a matter of law. *Second*, resolving disputes is normally a function performed by a judge. *Third*, The teens dealt extensively with Judge Eighmy in his capacity as a judge.

To start, Judge Eighmy's actions were judicial in nature as a matter of law. As noted above, divorce settlements are court orders that judges can enforce through their inherent powers. *See Harrell*, 567 S.W.3d at 639; *Kranitz*, 168 S.W.3d at 92. And Missouri judges can use their inherent powers to enforce those orders against people who may (as a formalistic matter) not be parties to the case. *Shewman*, 307 S.W.2d at 696 ("[O]ne who, with notice, participates in acts in violation of an injunction

is guilty of contempt and the fact that he was not a party to the action, or actually served with a copy of the injunction, will not relieve him.").

It is no answer that Judge Eighmy may not have had his robes on or that Judge Eighmy took these actions outside the courtroom. *See Stump*, 435 U.S. at 361; *Eighmy I*, 71 F.4th at 672. What matters is the nature of what Judge Eighmy was doing. Here, two teens who knew what Judge Eighmy's orders were prevented those orders from being followed. Accordingly, Judge Eighmy was well within his rights to determine that they were in contempt.

Previously, this Court determined that Judge Eighmy did not get judicial immunity at the motion-to-dismiss stage because the complaint alleged that Judge Eighmy threw the teens in jail himself. *Eighmy I*, 71 F.4th at 672 ("[J]udges do not do double duty as jailers. So even assuming Judge Eighmy could have ordered *someone else* to take the kids to jail, he could not put them there *himself*."); App. 0013; R. Doc. 1, at 13 (¶ 100 stating: "[t]he jail cells appeared to be intended for the use of adult detainees or convicts, not children…."); App. 0014; R. Doc. 1, at 14 (¶¶ 104–06). There was no evidence at trial that Judge Eighmy personally jailed the teens himself—a male officer from the Juvenile Office did that. TT

95:2–15. The evidence in the light most favorable to the teens was that Judge Eighmy suggested the teens be put into two cells in the Juvenile Office, not adult cells. TT 95:7–10; TT 136:1–6 ("Q: You all were not put in the Missouri Department of Corrections. A: No, not trying to say we were. Q: You were temporarily put into cells in the juvenile office in Taney County, correct? A: I believe so, yes."). And the evidence was that he had no supervisory authority over the Juvenile Division. TT 249, 271; 513:9–514:14. Further, the unrebutted testimony at trial was that children could be taken into custody by the Juvenile Division if they were (as looked to be the case here) beyond parental control, TT 471:22–23, 499:15–18, and that judges could ask the Juvenile Division to intervene in custody cases. TT 240:2–4, 271, 472:6–17 (Chief Juvenile Officer Rae testifying she had been called to a courtroom to take custody of a juvenile before). Thus, Judge Eighmy was engaging in a judicial function under Missouri law when he brought the teens down to the Juvenile Division for them possibly to be taken into custody for being beyond parental control.

### C. Alternatively, Judge Eighmy was not acting under color of state law.

A plaintiff cannot bring an action under § 1983 unless they "prove that the [defendant] acted under color of state law." *Burlison*, 708 F.3d at 1038. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997) (internal quotation marks omitted). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* Accordingly, a plaintiff needs to prove that "[t]he injury complained of must have been caused by the exercise of some right or privilege created by the state, by a rule of conduct imposed by the state, or by a person for whom the state is responsible." *Parker v. Boyer*, 93 F.3d 445, 448 (8th Cir. 1996).

In *Eighmy I*, this Court held that a judge is immune only for his judicial acts. 71 F.4th at 670. If this Court holds that, in the light most favorable to the teens, Judge Eighmy's acts were not judicial acts (it

should not), then Judge Eighmy was necessarily acting in his private capacity. *See id.* at 669 ("That is, like any other citizen, judges could be haled into court for any illegal acts they committed outside the courtroom."). If Judge Eighmy was acting in his private capacity and not as a judge, he was not a state actor, as he has no other state function other than as judge. Thus, his actions were not taken under color of state law.

This Court's decision in *Roe v. Humke* controls on this issue. There, the plaintiff (Roe) sued a police officer (Humke) for sexually assaulting her daughter (Doe). 128 F.3d at 1214. Humke was assigned to work at Doe's school, and he groomed Doe while they were both at Doe's school. *Id.* Then, "[w]hile at the school, in his police car and in uniform, Humke several times suggested to Doe and some of her friends that they go to Humke's farm to ride all-terrain vehicles." *Id.* When Doe and her friends agreed, Humke picked up the children in his personal car, without his uniform or service weapon. *Id.* at 1214–15. At the farm, Humke sexually assaulted Doe. *Id.* at 1215.

This Court explained that Humke was not acting under color of state law because he was not acting in his capacity as a police officer, and it was unrelated to his duties as a police officer. *Id.* at 1216. The Court

further explained that even if it were supposed to analyze the full course of conduct leading up to the constitutional violation (rather than just the violation itself), it would not change the analysis. *Id.* at 1217. Because there was no nexus between Humke's duties as an officer and the assault, he was not acting under color of state law. *Id.* Accordingly, "[t]he sexual abuse of plaintiff, while reprehensible and to be condemned in the strongest possible terms, was a private tort committed by a person acting in a purely private capacity." *Id.* at 1218.

*Humke* precludes any § 1983 liability in this case. In *Eighmy I*, this Court explained that, as alleged, Judge Eighmy's acts were not judicial acts because he did not have the authority to do what he did, and he was not taking acts that are "normally performed by a judge." *Eighmy I*, 71 F.4th at 672 (quoting *Stump*, 435 U.S. at 362). In other words, Judge Eighmy was not acting as a judge. Nor was he wearing his judge robes, according to Plaintiffs. TT 48:5–8.

If Judge Eighmy was not acting *as a judge*, it is unclear what other state-official capacity he could be acting in. The only other capacity in which he could have been acting was *as a private citizen*. If this Court determines that bringing the teens down to the Juvenile Division and

suggesting that the teens be placed in holding cells was not related to Judge Eighmy's position as judge, then he cannot be liable under § 1983 at all. As *Humke* makes clear, the question is whether the person is acting *as a state official* when they commit the allegedly unconstitutional act. If Judge Eighmy was not acting as a judge, then he was not acting as a state official at all because his acts were not pursuant to any state duties that he had. Indeed, in *Humke*, the course of conduct, except for the abuse, was undertaken while the officer was acting *as a police officer*. 128 F.3d 1214–15. If Judge Eighmy's conduct was not undertaken as a judge, then he was not acting as a state actor, there can be no § 1983 liability, and this Court should reverse.

## II. The district court abused its discretion in denying the motion to alter or amend the judgment.

The district court abused its discretion in denying the motions to alter or amend the judgment for two reasons. *First*, the district court should not have submitted a nominal damages instruction after the jury returned a $0 verdict because Plaintiffs waived a nominal damages instruction, and the verdict awarded was not inconsistent. *Second*, the district court abused its discretion when it refused to reduce the damages

award because it was only awarded after the district court wrongly sent back a valid jury verdict for further deliberation.

### A. The district court erred when it submitted a nominal damages instruction after the jury returned a $0 verdict.

Under Rule 51, a party must proffer *all* of the jury instructions that it wants at or before the close of evidence unless the court grants leave. Fed. R. Civ. P. 51(a). A party must raise any objections to jury instructions (including "failure to give an instruction") before the court instructs the jury. Fed. R. Civ. P. 51(c), (c)(2)(A). Failure to object to a jury instruction waives the objection. *See* Fed. R. Civ. P. 51(d); *Miller v. Albright*, 657 F.3d 733, 736 (8th Cir. 2011).

This Court's decision in *Miller* controls here. In *Miller*, the plaintiff (Miller) sued law enforcement officers under the Fourth Amendment, and "[a]t the conclusion of the proof, Miller proposed jury instructions for both compensatory and punitive damages, but did not propose an instruction for nominal damages." *Miller*, 657 F.3d at 735. The jury found for Miller on one of the counts (unlawful entry), but did not award him any damages. *Id.* "After the verdict was read, but before the jury was discharged, Miller's lawyer approached the bench and requested that the district

court direct the jury to award nominal damages, but that request was denied." *Id.* This Court affirmed the district court, holding that the issue was waived based on the decisions of five of its sister courts. *See id.* at 738 (citing *Oliver v. Falla*, 258 F.3d 1277, 1282 (11th Cir. 2001); *Piaubert v. MacIntosh*, 10 F. App'x 503, 506 (9th Cir. 2001) (per curiam); *Salazaar v. Encinias*, 242 F.3d 390 (10th Cir. 2000) (table opinion); *Alexander v. Riga*, 208 F.3d 419, 429 (3d Cir. 2000); *Sims v. Mulcahy*, 902 F.2d 524, 536 (7th Cir. 1990)).

This case is *Miller* all over again. Like in *Miller*, Plaintiffs here sued under the Fourth Amendment. Like in *Miller*, Plaintiffs did not request a nominal damages instruction. TT 394:9–418:1, 419:7–445:20, 573:10–612:10; 675:17–18 (Judge Harpool stating "I frankly wondered why nobody tendered a nominal damage instruction"). Like *Miller*'s unlawful entry claim, there was no evidence of physical damages here either. Like in *Miller*, the jury returned a $0 verdict. TT 663:11–14, 663:21–664:2, 664:9–11. And like in *Miller*, Plaintiffs did not ask for a nominal damages instruction until after the jury returned its verdict. TT 667:8, 669:4–5. This Court should reverse.

The district court stated that Judge Eighmy waived this issue, App. 0909; R. Doc. 197, at 2, but that mischaracterizes what Judge Eighmy's counsel said at trial. After the jury returned its verdict, Plaintiffs told the court that they believed this was an inconsistent verdict. TT 666:8–14. Judge Eighmy's counsel told the court that their "position is if [Plaintiffs] don't meet the element of damage, it should have been a verdict for defendant on both those claims." TT 668:12–14. The district court then proposed sending back jury instructions with a note along with a nominal damages instruction. TT 668:16–669:14.

Plaintiffs' counsel then introduced this Court's Pattern Jury Instruction Number 4.71 and, when asked for his thoughts, Judge Eighmy's lawyer said that the jury instruction's text was acceptable. *Id.* at 669:21–670:8. In context, the statement "[w]e're fine with the nominal instruction given, Your Honor," *id.* at 670:7–8, refers to the *text* of the instruction itself, not whether the district court could give that instruction in the first place. That is why Judge Eighmy's counsel contested whether the jury could reconsider its damages verdict. *Id.* at 668:12–14. That also is why Judge Eighmy's counsel made a "record [] that when a nominal damages is not request[ed] nor objected to when a damage[s] instruction are

given and [the jurors] don't award damages, therefore plaintiff would not be the prevailing party." TT 675:12–15.

Rule 51 states that objections to issuance of an instruction may be made prior to the instruction's delivery to the jury. Fed. R. Civ. P. 51(c)(2)(A). Judge Eighmy objected to the nominal damages instruction going to the jury.

The district court considered *Miller* but analyzed it incorrectly. The district court wrongly suggested that discussion of an inconsistent verdict distinguishes this case from *Miller*, App. 0912; R. Doc. 197, at 5, but this is irrelevant. The time to object to the verdict sheet missing a nominal damages instruction is *before* the jury is instructed. *See* Fed. R. Civ. P. 51(b)(2), (c)(2). The fact that the district court considered further instructing the jury does not matter because Rule 51(b)(3) allows the district court to "instruct the jury at any time before the jury is discharged," but Rule 51(c)(2)(A) states that an objection is timely only if it is made before the damages instruction is first issued and before closing arguments. Together, these rules mean that a party cannot ask the district court to modify jury instructions it has already given. That is precisely what Plaintiffs did here. Defendant Judge Eighmy rightly and timely

objected to allowing a new nominal damages instruction going back to the jury.

The appropriate course of action in this case would have been to conduct a Rule 49 analysis to determine the nature of the verdict issued. *See generally Debity v. Monroe Cnty. Bd. of Educ.*, 134 F.4th 389, 398–404 (6th Cir. 2025) (describing and conducting this type of analysis). At that point, the district court could have considered the appropriate way of dealing with ostensibly inconsistent verdicts. *See, e.g.*, *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1347 (8th Cir. 1996). But here, the verdicts were not inconsistent. As noted previously, a party may demonstrate a violation of his or her Fourth Amendment rights to be free from unconstitutional seizures without demonstrating actual damages. In *Westcott v. Crinklaw*, the plaintiff sued for excessive force under the Fourth Amendment, and this Court unambiguously held that "a jury may reasonably conclude that compensatory damages are inappropriate despite a finding that" the defendant violated the Fourth Amendment. 133 F.3d 658, 661 (8th Cir. 1998). Other cases similarly demonstrate that a jury is not required to award compensatory damages simply because it found that an official violated the Fourth Amendment.

*See, e.g.*, *Patterson v. City of Omaha*, 779 F.3d 795, 801–02 (8th Cir. 2015) (no inconsistency between nominal damages award and finding of excessive force); *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) (same); *Butler v. Dowd*, 979 F.2d 661, 669 (8th Cir. 1992) (en banc) (same).

That makes sense. A § 1983 plaintiff cannot recover compensatory damages unless they "prove that the defendant's unconstitutional action was the cause in fact of the plaintiff's injury." *Butler*, 979 F.2d at 669 (quotation marks omitted); *see also* App. 0619; R. Doc. 169, at 25; App. 0630; R. Doc. 169, at 36 (Instruction Nos. 19 and 29 describing causation requirement). For example, in *Gibeau*, the Second Circuit held that a police officer used excessive force, but compensatory damages were not appropriate because the officers used force twice, and there was no way to tell whether the first (lawful) use of force or the second (unlawful) use of force caused the injury. 18 F.3d at 110.

Here, the jury could reasonably have found that the cause of Plaintiffs' injuries was their refusal to follow the settlement agreement and go home with their mother. The jury also could have disbelieved that Plaintiffs were harmed because of smiling pictures of them dressed up as Judge Eighmy and a prisoner for Halloween just a few weeks later. App.

0931; JE 16; App 0932; JE 17. Both possibilities are supported by the record in this case, and either one of them, independently, would have warranted the jury awarding $0 in compensatory damages. Thus, the district court erred by determining that the $0 compensatory damage award was an inconsistent verdict.

The district court further erred by sending back a new, nominal damages instruction that the Plaintiffs had never proffered until after the jury's original verdict. To be sure, cases like *Miller* suggest that a jury must award at least nominal damages when finding that the defendant violated the Fourth Amendment, but *Miller* expressly held that Plaintiffs *do not* get nominal damages when they fail to ask for a nominal damages instruction. 657 F.3d at 737–38. By failing to timely seek a nominal damages instruction, Plaintiffs left themselves with one option: prove they suffered injuries warranting compensatory damages. They failed to do so, so the district court should have kept compensatory damages at $0 and not sent back the nominal damages instruction. This Court should decrease the district court's damages award to zero because there was nothing inconsistent about the original verdict. Giving Plaintiffs a second bite at the apple was error.

### B. The district court abused its discretion by denying the motion to alter or amend the judgment by reducing the damages award.

The district court also abused its discretion by denying the motion to alter or amend the judgment by reducing the damages award. The district court should have kept the $0 damages award for the reasons stated in Part II.A, above. The district court wrongly held that the jury was *required* to award damages because the jury instructions said that a plaintiff must be "damaged" to win an unlawful seizure case. App. 0910; R. Doc. 197, at 3; *see* App. 0619; R. Doc. 169, at 25; App. 0630; R. Doc. 169, at 36 (Instruction Nos. 19 and 29). As noted above, a plaintiff need not be awarded compensatory damages simply because the jury finds an unlawful seizure. This Court should reverse.

In the alternative, the district court should have reduced the damages award to $2 because the jury had already found that there was no compensatory damages, and the only thing they could have awarded was nominal damages. This Court's decision in *Corpus v. Bennett* controls this case. 430 F.3d 912 (8th Cir. 2005). There, the plaintiff sued a police officer for excessive force, but the jury declined to award compensatory

damages. *Id.* at 915. Instead, the jury awarded $75,000 in nominal damages. *Id.* Because the jury made "an unambiguous finding that [the plaintiff] suffered no compensable injuries," the only option was to award nominal damages. *Id.* at 916. This Court held that $1 is an appropriate nominal damages award. *Id.*

This case is like *Corpus*. In coming back with the $0 damages award but a verdict for Plaintiffs on the seizure question, the jury made an unambiguous finding that Plaintiffs suffered no compensable injuries. As a result, *the most* that the jury could have awarded was nominal damages—*i.e.*, $1 per plaintiff. There were two plaintiffs in this case, so that means the jury should have awarded at most $2.

The district court's contrary finding rests on the mistaken premise that it had the authority to make the jury reconsider its damages verdict. But, as noted above, a jury has the right to award $0 in compensatory damages in a Fourth Amendment case. Accordingly, even if this Court believes that Plaintiffs did not waive the nominal damages instruction, it should reduce the nominal damages award to $2 because that is the most such an instruction would permit.

## III. The district court abused its discretion by awarding $325,000 in attorney fees.

The district court abused its discretion by awarding attorney fees to the Plaintiffs for two reasons. First, even if the Plaintiffs were properly awarded $5,000 in damages each, $325,000 is far too much attorney fees to award for amounts that could have been claimed in small claims court.[6] App. 0917; R. Doc. 199, at 4. Second, as discussed above, the Plaintiffs should have been awarded $0 (or, in the alternative, $2) in damages. Awarding $325,000 in attorney fees to attorneys whose clients basically lost the case is an abuse of discretion under U.S. Supreme Court precedent.

### A. The district court abused its discretion in awarding $325,000 in attorney fees when Plaintiffs were only awarded $5,000 each.

Prevailing parties in § 1983 actions are entitled to have their attorneys' fees reimbursed, 42 U.S.C. § 1988(b), but that does not mean that courts should rubber stamp a request for fees. Rather, the ultimate fee award should be tailored to the relief received in relation to the relief

---

[6] Missouri Courts, https://www.courts.mo.gov/page.jsp?id=704 (defining small claims as "actions in which the amount of the claim does not exceed five thousand dollars").

sought—*i.e.*, the degree of actual success in the litigation. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). In civil rights cases, "the most critical factor" in the attorneys' fees analysis "is the degree of success obtained," so simply multiplying the hours spent and the lawyers' hourly rate," as the district court did here (with a slight decrease of the hourly rate), "is inappropriate in small dollar cases. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); App. 0914; R. Doc. 199, at 1 (hourly rates awarded, including $425 for Mr. Eastwood); App. 0674, R. Doc. 176, at 9 (hourly rates requested, including $550 for Mr. Eastwood). "This [is] true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* When the amount of damages awarded pales in comparison to the amount of damages sought, "the court may lawfully award low fees or no fees." *Farrar*, 506 U.S. at 115. Here, it did neither.

Several factors indicate that the district court abused its discretion in issuing the $325,000 attorneys' fees award. *First*, the fees awarded in this case are grossly disproportionate to fees awarded in cases where the litigants ultimately obtained the same or similar degree of success. This is not "low fees or no fees" and so is not lawful. *Farrar*, 506 U.S. at 115. *Second*, the district court used an unreasonably small multiplier when

determining whether to reduce Plaintiffs' fees award. *Third*, in other contexts, this type of fees award would be considered grossly disproportionate and warrant reversal.

Start with the "low fees or no fees" that plaintiffs have won in similar cases. *See id.* In *Jones*, the plaintiff requested over $860,000 but won only nominal damages. 29 F.3d at 424. The district court awarded $25,000 in fees, but this Court held that this was an abuse of discretion given that the Plaintiff succeeded on only one of his two issues, so it reduced the fees award to just $10,000. *Id.* In *Loggins v. Delo*, the plaintiff requested $100,000 in damages but won only $102.50. 999 F.2d 364, 368 (8th Cir. 1993). The plaintiff requested $34,968 in fees, but the district court awarded $25,000, and this Court affirmed. *Id.* at 368–70. Finally, in *Fires v. Heber Springs School District*, the plaintiff asked for compensatory damages, punitive damages, and an injunction but received only nominal damages. 565 F. App'x 573, 577 (8th Cir. 2014) (per curiam). The plaintiffs asked for almost $60,000 in fees, but this Court awarded just $10,000. *Id.*

Here, Plaintiffs asked for compensatory damages in the high six figures and punitive damages reaching seven figures. TT 641:1–642:3.

They received $5,000 each. Then the attorneys in this case requested $418,830.72 in fees, and the district court reduced that amount by only about 25%. App. 0681; R. Doc. 176, at 16; App. 0917; R. Doc. 199, at 4 (awarding $326,637.22). As demonstrated by the fees awarded in other cases with small damages awards, *supra*, the fee award in this case was much too high. It was not "low fees or no fees." *Farrar*, 506 U.S. at 115.

Here, Plaintiffs requested a damages award in the millions of dollars but only received $10,000—less than one percent of the amount sought. Even if this Court is hesitant to specifically say that a particular dollar amount is the appropriate attorney fees award, $325,000 is far too much. Similarly situated plaintiffs received mere fractions of what Plaintiffs received in this case. The district court could have and should have reduced the fees award by much, much more than the approximately 25% reduction it made here.

The percentage multipliers used to reduce the fees award were also too small. In *Jones*, the attorney took more than a 60% reduction in fees, and the fees originally requested were quite modest compared to these. 29 F.3d at 423–24 (reducing award from $31,000 to $10,000). In *Fires*, the reduction was close to 85%. 565 F. App'x at 574, 577 (reducing award

from $57,000 to $10,000). Those cases highlight the fact that a crushing loss on the merits requires a sharply reduced fees award. But here, the district court only required Plaintiffs to take a 25% haircut on what was already a high fees request. Although the particular percentage is going to vary from case to case, such a sharp difference in the fees reductions is plainly inequitable—so much so that it was an abuse of discretion.

Cases from other areas of the law also demonstrate that this fees award is just too high. For example, in *Briseño v. Henderson*, the plaintiffs received $1 million in compensatory damages, but class counsel was awarded $5.85 million in fees and another $1 million in expenses. 998 F.3d 1014, 1020 (9th Cir. 2021). The Ninth Circuit held that the fees award was an abuse of discretion because, even though the defendant was ostensibly exposed to nearly $100 million in liability, the plaintiff class received "only about 1% of that touted amount." *Id.* at 1020, 1026.

This case is like *Briseño*, just in a civil rights action instead of a consumer class action. But this time, it is about five times worse. In *Briseno*, the attorneys made about six times what the plaintiff class made from the case, and the ultimate damages award was just *one percent* of the original requested recovery. Here, Plaintiffs' recovery was also just

*one percent* of the requested recovery, but the attorneys made *thirty times* more in fees than Plaintiffs did in damages. The district court rightly recognized that a 40x multiplier was too high, *see* App. 0917; R. Doc. 199, at 4, but it was gravely mistaken in deciding that a 30x multiplier was any better.

No matter how you slice it, Plaintiffs came in with big expectations and sought a massive damages award but left the case barely receiving "the moral satisfaction that results from any favorable statement of law." *Farrar*, 506 U.S. at 112 (quoting *Hewitt v. Helms*, 482 U.S. 755, 762 (1987)) (alteration adopted). In several cases like it, this Court has explained that a fees award should be sharply reduced. The district court abused its discretion when it failed to do so.

### B. The district court abused its discretion in awarding attorney fees when Plaintiffs should have been awarded $0 or $2 in damages.

The district court abused its discretion in awarding attorney fees when, as discussed *supra*, Plaintiffs should have been awarded $0 (or, in the alternative, $2) in damages. If the attorney fees award was too large for a verdict resulting in $5,000 per plaintiff, *see supra* Part III.A, it is certainly too large for a verdict resulting in a $2 or $0 verdict.

Either of these two verdicts would have indicated that the jury found only nominal damages. The U.S. Supreme Court has held that "[w]hen a plaintiff recovers only nominal damages … the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115. This is because "fee awards under § 1988 were never intended to produce windfalls to attorneys." *Id.* (internal quotation marks omitted). This court should reverse the award of attorney fees.

## CONCLUSION

For the reasons discussed *supra*, the judgment below should be reversed. In the alternative, this Court should reduce the damages award to $0 (or, in the alternative $2). It should also reverse the award of attorney fees or, in the alternative, sharply reduce them.

Dated: June 23, 2025

Respectfully submitted,

**ANDREW BAILEY**
Missouri Attorney General

*/s/ Maria A. Lanahan*

Maria Lanahan
*Principal Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63104
Tel: (314) 340-4978
Fax: (573) 751-0774
Maria.Lanahan@ago.mo.gov

*Counsel for Defendant-Appellant*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing complies with the type-volume limit, typeface requirements, and type-style requirements. The document complies with the type-volume limit of F.R.A.P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by F.R.A.P. 32(f), the document contains 12,389 words. The document complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type-style requirements of F.R.A.P. 32(a)(6) because the document was prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font. I further certify that the brief and addendum have been scanned for viruses and are virus-free. All required privacy redactions have been made. The hard copies submitted to the clerk are exact copies of the CM/ECF submission.

/s/ *Maria A. Lanahan*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Maria A. Lanahan*