No. 25-1664

United States Court of Appeals
for the Eighth Circuit

**Brooklyn Rockett; Kadan Rockett**

**Plaintiffs - Appellees**

**v.**

**Eric Eighmy, in his individual capacity only**

**Defendant - Appellant**

Appeal from a final Judgment of the United States District Court
for the Western District of Missouri
The Honorable M. Douglas Harpool

# APPELLEES' BRIEF


*Attorneys for Plaintiffs-Appellees*

Hugh A. Eastwood, 62058MO
8112 Maryland Ave., Suite 400
St. Louis, Missouri 63105-3700
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

W. Bevis Schock, 32551MO
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO 63105
wbschock@schocklaw.com
Fax: 314-721-1698
Voice: 314-726-2322

Christopher R. Hoell, 54011MO
7911 Forsyth Blvd., Ste. 300
Clayton, MO 63105
crh@hoell-law.com
314-441-6559

## Summary of the Case, and Request for Oral Argument

Judge Eighmy heard a custody modification case in Taney County, Missouri, brought by the mother of two minor children who lived in California with their father. The parents settled, and Judge Eighmy made a docket entry that the parties were to prepare a judgment. After court had ended, Judge Eighmy approached the children in the courthouse lobby, where they stated they did not want to live with their mother in Utah. Without either parent's consent, Judge Eighmy personally seized the children, marched them to juvenile cells, threatened to put them in foster care, and said "lock them up" to juvenile officers. There was no finding of contempt, no probable cause, no delinquency, and no due process—nor any judicial proceeding, record, order or judgment. Into the cells they went.

This Court has already denied Judge Eighmy judicial immunity. He now argues qualified immunity, alternatively judicial immunity, and alternatively no color of law. The jury initially issued plaintiffs' verdicts but with zero damages, which were inconsistent since an element of the instructions required a finding of damages. When the district court sent the jury back to further consider its verdicts, Judge Eighmy's counsel did not object to a nominal damages instruction. No matter: the jury then returned with a verdict of $5,000 per child. Judge Eighmy also challenges the Rockett children's award of fees. The Rockett children request 15 minutes of oral argument to address the many points raised by Judge Eighmy.

## Table of Contents

Table of Authorities ..................................................................................... iv

Jurisdictional Statement ..................................................................................1

Statement of the Issues ....................................................................................2

Statement of the Case .......................................................................................4

Summary of the Argument ..............................................................................15

Standard of Review ........................................................................................17

Argument..........................................................................................................18

I. In the light most favorable to the verdicts, Judge Eighmy lacks qualified immunity as (a) the children were seized and not free to leave, (b) it was clearly established that seizing and jailing children without probable cause, delinquency or contempt is unreasonable, and (c) Judge Eighmy was not acting in good faith in the best interests of the children...20

a. Judge Eighmy seized the Rockett children..............................21

b. The seizure was not reasonable because there were no legal bases for a seizure: neither probable cause, delinquency, nor contempt .24

c. Judge Eighmy was not acting in good faith because he was not acting in the best interests of the children ..........................................25

d. Judge Eighmy violated a clearly-established constitutional right..........................................................................................26

i. Judge Eighmy waived his assertion of qualified immunity ......................................................................26

ii. Judge Eighmy's conduct was clearly established to be unconstitutional ..............................................................27

1. The case law clearly establishes an unreasonable seizure of a child ....................................................28

2. The correct analysis for a seizure is whether it is objectively reasonable as conveyed to the seized child, not the seizor's subjective intent ..........................30

3. There is no basis under Missouri law for judges to personally seize children, and that is the law of the case ...........................................................................31

II. Under the law of the case and the prior-panel rule, Judge Eighmy lacks judicial immunity under *Rockett I*. No substantially different evidence was subsequently introduced, nor is *Rockett I* clearly erroneous or working manifest injustice ..........................................................34

III. Judge Eighmy was acting under color of law, and it is inconsistent for him to argue both immunity and "no color of law" .......................36

IV. Judge Eighmy did not object to the nominal damages instruction after inconsistent verdicts. The nominal damages award did not affect the jury's $10,000 damages award upon further consideration, and so was harmless .........................................................................................38

V. The Rockett children have prevailed so far at every stage of this litigation; the jury awarded them compensatory damages; and so the district court did not abuse its discretion in its attorney's fees award...........................................................................................48

Conclusion and Prayer.........................................................................54

Certificate of Compliance ..................................................................56

Certificate of Service...........................................................................56

## Table of Authorities

*Anheuser-Busch, Inc. v. John Labatt, Ltd.,* 89 F.3d 1339 (8th Cir. 1996) 3, 44

*Azimi v. Jordan's Meats, Inc.,* 456 F.3d 228 (1st Cir. 2006) ........................44

*Baribeau v. City of Minneapolis,* 596 F.3d 465 (8th Cir. 2010) ...................28

*Beard v. Flying J, Inc.,* 266 F.3d 792 (8th Cir. 2001)..................................44

*Blanchard v. Bergeron,* 489 U.S. 87 (1989) ................................................50

*Bravo v. City of Santa Maria,* 810 F.3d 659 (9th Cir. 2016) ........................52

*Brendlin v. California,* 551 U.S. 249 (2007)..........................................23, 30

*Brewington v. Keener,* 902 F.3d 796 (8th Cir. 2018)...............................3, 49

*Briseño v. Henderson,* 998 F.3d 1014 (9th Cir. 2021).................................53

*Browder v. City of Albuquerque,* 787 F.3d 1076 (10th Cir. 2015)................29

*Butler v. Dowd,* 979 F.2d 661, 669 (8th Cir. 1992) (en banc) ................ 45-46

*Corpus v. Bennett,* 430 F.3d 912 (8th Cir. 2005)...................................47, 48

*Couzens v. City of Forest Park, Ohio,* 114 F.4th 571 (6th Cir. 2024) ..........23

*D.C. v Wesby,* 583 U.S. 48 (2018) ........................................................20, 29

*D.R.P. v. M.P.P.,* 484 S.W.3d 822 (Mo. App. 2016) ...................................29

*Dawkins v. Graham,* 50 F.3d 532 (8th Cir. 1995)........................................39

*De Rubio v. Herrera,* 541 S.W.3d 564 (Mo. App. W.D. 2017) ................2, 33

*Debity v. Monroe Cty. Bd. of Educ.,* 134 F.4th 389 (6th Cir. 2025) ............44

*Doe v. Washington Cnty.,* 150 F.3d 920 (8th Cir. 1998)..................... 3, 38-39

*Engel Sheet Metal Equip., Inc. v. Shewman,* 307 S.W.2d 694 (Mo. App. St. Louis 1957) ....................................................................... 33

*Estate of Johnson v. Kranitz,* 168 S.W.3d 84 (Mo. App. W.D. 2005) .......... 33

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280 (2005) ......... 10

*Farrar v. Hobby,* 506 U.S. 103 (1992) ......................................................... 43

*Fires v. Heber Springs School Dist.,* 565 F.App'x 573 (8th Cir. 2014) ........ 52

*Garcia v. Tyson Foods, Inc.,* 770 F.3d 1300 (10th Cir. 2014) ...................... 50

*Geier v. Mo. Ethics Comm'n,* 715 F.3d 674 (8th Cir. 2013) ......................... 17

*Gibeau v. Nellis,* 18 F.3d 107, 110 (2d Cir. 1994) ........................................ 45

*Gibson v. Goldston,* 85 F.4th 218 (4th Cir. 2023) ........................................ 52

*Greenman v. Jessen,* 787 F.3d 882 (8th Cir. 2015) ...................................... 17

*Hamner v. Burls,* 937 F.3d 1171 (8th Cir. 2019) ......................................... 26

*Harlow v. Fitzgerald,* 457 U.S. 800 (1982) ................................................... 26

*Haynes v. Minnehan,* 14 F.4th 830 (8th Cir. 2021) ...................................... 22

*Heartland Acad. Commun. Church v. Waddle*, 595 F.3d 798 (8th Cir. 2010) ........................................................................................... 28

*Hendrickson v. Branstad,* 934 F.2d 158 (8th Cir. 1991) ............................... 50

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................... 49, 50, 52

*Hope v. Pelzer,* 536 U.S. 730 (2002) ............................................................ 20

*Hossaini v. Western Mo. Med. Ctr.,* 140 F.3d 1140 (8th Cir. 1998) ......... 2, 37

*Irish v. McNamara,* 108 F.4th 715 (8th Cir. 2024) ................................30, 31

*Jenkins ex rel. Jenkins v. State of Mo.,* 127 F.3d 709 (8th Cir. 1997).......3, 50

*Jones v. Lockhart,* 29 F.3d 422, 424 (8th Cir 1994)...............................51, 53

*K.W.P. v. Kan. City Pub. Sch.,* 931 F.3d 813 (8th Cir. 2019) .......................29

*Kerman v. City of New York,* 374 F.3d 93 (2d Cir. 2004)............3, 39, 40, 43

*Littrell v. Franklin,* 388 F.3d 578 (8th Cir. 2004) ........................................27

*Loggins v. Delo,* 999 F.2d 364 (8th Cir. 1993) ......................................52, 53

*Lowry ex rel. Crow v. Watson Chapel Sch. Dist.,* 540 F.3d 752 (8th Cir. 2008).........................................................................................49, 50

*Masters v. City of Indep., Mo.,* 998 F.3d 827 (8th Cir. 2021) ................20, 45

*Maxfield v. Cintas Corp., No. 2,* 487 F.3d 1132 (8th Cir. 2007).....................1

*McLean v. First Horizon Home Loan Corp.,* 277 S.W.3d 872 (Mo. App. W.D. 2009)..........................................................................................32

*Miller v. Albright,* 657 F.3d 733 (8th Cir. 2011).................................. *passim*

*Missouri v. Jenkins by Agyei,* 491 U.S. 274 (1989) .................................3, 50

*Morris v. Zefferi,* 601 F.3d 805 (8th Cir. 2010) ...........................................24

*Patterson v. City of Omaha,* 779 F.3d 795 (8th Cir. 2015) ...........................45

*Pollreis v. Marzolf,* 9 F.4th 737 (8th Cir. 2021)............................................28

*Pollreis v. Marzolf (Pollreis II),* 66 F.4th 726 (8th Cir. 2023)............. 2, 28-9

*Prof'l Funding Co. v. Bufogle,* 617 S.W.3d 509 (Mo. App. E.D. 2021)...2, 32

*Puga v. Nephrite Fund I, LLC,* No. WD87149 (Mo. App. W.D. Sept. 10, 2024) ........................................................................32

*Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34 (2nd Cir. 1985) .......... 40

*Riehm v. Engelking,* 538 F.3d 952 (8th Cir. 2008) .......... 25-26

*Riverside v. Rivera,* 477 U.S. 561 (1986) .......... 50, 52

*Rockett v. Eighmy,* 71 F.4th 665 (8th Cir. 2023) (*Rockett I*) .......... *passim*

*Roe v. Humke,*128 F.3d 1213 (8th Cir. 1997) .......... 2, 37-38

*Rosales v. Bradshaw,* 72 F.4th 1145 (10th Cir. 2023) .......... 20

*Schutter v. Seibold,* 632 S.W.3d 820 (Mo. App. W.D. 2021) .......... 33

*Shanks v. Shanks,* 603 S.W.2d 46 (Mo. App. 1980) .......... 29

*Sherman v. Winco Fireworks,* 532 F.3d 709 (8th Cir. 2008) .......... 27

*Smith v. Riceland Foods, Inc.,* 151 F.3d 813 (8th Cir. 1998) .......... 3, 39, 40

*Snider v. City of Cape Girardeau,* No. 1:10-CV-100 CEJ, 2012 WL 6553710 (E.D. Mo. Dec. 14, 2012) .......... 40

*Sophian Plaza Ass'n v. City of Kansas City,* 584 S.W.3d 784 (Mo. 2019) ... 33

*Stanley v. Finnegan,* 899 F.3d 623 (8th Cir. 2018) .......... 2, 28

*State ex rel. Cullen v. Harrell,* 567 S.W.3d 633 (Mo. 2019) .......... 32

*T.K. v. Cleveland,* No. 2:19-cv-04100-NKL (W.D. Mo. July 10, 2020) .......... 29

*Taylor v. Riojas,* 141 S. Ct. 52 (2020) .......... 20

*United States v. Collins,* 108 F.4th 1080 (8th Cir. 2024) .......... 31

*United States v. DaCruz-Mendes*, 970 F.3d 904 (8th Cir. 2020) .......... 24

*United States v. Howard,* 507 F.2d 559 (8th Cir. 1974) .......... 39

*United States v. Lanier,* 520 U.S. 259 (1997) ....................20

*United States v. Lester,* 647 F.2d 869 (8th Cir. 1981)....................28

*Unites States v. Warren,* 984 F.3d 1301 (8th Cir. 2021)....................24

*Villarreal v. City of Loredo,* 94 F.4th 374 (5th Cir. 2024)....................20

*Westcott v. Crinklaw*, 133 F.3d 658 (8th Cir 1998) ....................45

*Wheeler v. City of Searcy, Ark.,* 14 F.4th 843 (8th Cir. 2021) ....................25

*Williams v. Kaufman County,* 352 F.3d 994 (5th Cir. 2003)....................44

**Constitutional Provisions**

Fourth Amendment, U.S Const. .................... *passim*

**Statutes**

42 U.S.C. § 1983 ....................4, 50

42 U.S.C. § 1988 ....................4, 14, 50, 54

RSMo. 211.031....................25

**Rules**

Fed. R. App. P. 28 ....................56

Fed. R. App. P. 32 ....................56

Fed. R. App. P. 39 ....................54

Fed. R. Civ. P. 8 ....................8

Fed. R. Civ. P. 17 ....................4

Fed. R. Civ. P. 23 ....................53

Fed. R. Civ. P. 49 ....................................................................16, 39, 41, 44

Fed. R. Civ. P. 50 ....................................................................................37

Fed. R. Civ. P. 51 ....................................................................................42

**Other Authorities**

Eighth Circuit Model Civil Jury Instruction 4.40.............................11, 38, 39

H. Rep. 94-1558 .......................................................................................52

McCormick, Handbook on the Law of Damages § 107 (1935) .............40, 41

5 Miller, et al., Federal Practice & Procedure § 1278 (3d ed. 2020).............26

Prosser Keeton, The Law of Torts § 11 (5th ed. 1984) ...........................40, 41

S. Rep. No. 94-1011 ..................................................................................51

18 Wright, Miller & Cooper, Federal Practice and Procedure § 4478 (1981 Supp. 1995)......................................................................1

## **Jurisdictional Statement**

The Rockett children agree with Judge Eighmy's jurisdictional statement. This appeal, however, is governed by a prior panel opinion of this Court. *Rockett v. Eighmy,* 71 F.4th 665 (8th Cir. 2023) (*Rockett I*). That is the law of the case and the prior-panel rule applies. *See Maxfield v. Cintas Corp., No. 2,* 487 F.3d 1132, 1134–35 (8th Cir. 2007); 18 Wright, Miller & Cooper, Federal Practice and Procedure § 4478 (1981 Supp. 1995).

## Statement of the Issues

1. In the light most favorable to the verdicts, Judge Eighmy lacks qualified immunity as (a) the children were seized and not free to leave, and (b) it was clearly established at the time that seizing and jailing children without probable cause, delinquency or contempt is unreasonable.

*Stanley v. Finnegan,* 899 F.3d 623 (8th Cir. 2018)

*Pollreis v. Marzolf (Pollreis II),* 66 F.4th 726 (8th Cir. 2023)

*De Rubio v. Herrera,* 541 S.W.3d 564 (Mo. App. W.D. 2017)

*Prof'l Funding Co. v. Bufogle,* 617 S.W.3d 509 (Mo. App. E.D. 2021)

2. *Rockett I* is the law of the case and the prior-panel rule applies, hence Judge Eighmy lacks judicial immunity. No substantially different evidence was subsequently introduced at trial, nor is *Rockett I* clearly erroneous or working manifest injustice.

*Rockett v. Eighmy (Rockett I),* 71 F.4th 665 (8th Cir. 2023)

3. Judge Eighmy was acting under color of law, and he waived the no color of law argument.

*Hossaini v. Western Mo. Med. Ctr.,* 140 F.3d 1140 (8th Cir. 1998)

4. Judge Eighmy did not object to the nominal damages instruction after inconsistent verdicts. The nominal damages instruction did not affect the jury's compensatory damages award, and so was harmless and irrelevant.

*Doe v. Washington Cnty.,* 150 F.3d 920 (8th Cir. 1998)

*Smith v. Riceland Foods, Inc.,* 151 F.3d 813 (8th Cir. 1998)

*Kerman v. City of New York,* 374 F.3d 93 (2d Cir. 2004)

*Anheuser-Busch, Inc. v. John Labatt, Ltd.,* 89 F.3d 1339 (8th Cir. 1996)

5. The Rockett children have prevailed so far at every stage of this litigation; were awarded compensatory damages; and so the district court did not abuse its discretion in its attorney's fees award.

*Brewington v. Keener,* 902 F.3d 796, 804 (8th Cir. 2018)

*Jenkins ex rel. Jenkins v. State of Mo.,* 127 F.3d 709 (8th Cir. 1997)

*Missouri v. Jenkins by Agyei,* 491 U.S. 274, 286 (1989)

## **Statement of the Case**[1]

This is Judge Eighmy's second appeal, this time following jury verdicts in favor of the Rockett children, a judgment awarding them compensatory damages for unreasonable seizures under 42 U.S.C. § 1983, and a judgment awarding them attorney's fees, expenses and costs under 42 U.S.C. § 1988.

### I. Introduction

Kadan and Brooklyn Rockett[2] are siblings, and accomplished actors and magicians. TT 67:2-68:13 (Kadan); TT 176:18-25; 177:9-20 (Brooklyn). The relevant events occurred on October 8, 2019 when they were minors. TT 70:25-71:19 (Kadan); TT 179:2-3 (Brooklyn). They were originally represented by their father D. Bart Rockett as their next friend under F. R. Civ. P. 17(c)(2). App. 2; R. Doc. 1 at 2; App. 297; R Doc. 61 at 2. When Kadan and Brooklyn turned 18 years of age, each substituted themselves as the real party in interest as their father's authority as next friend had extinguished. App. 294-296; R. Doc. 60, 61; Clerk Order dated July 3, 2025.

---

[1] Judge Eighmy states in his brief at 4, n. 1, that he references all facts in the light most favorable to the Rockett children, but, respectfully, some of his facts do not appear to meet that tough standard of deference to the verdicts.
[2] This brief uses Appellees-Plaintiffs' first names, as well as that of their father Bart Rockett, not out of undue familiarity, but rather because they all share the same family name. Although they are now adults, this brief refers to Plaintiffs-Appellees collectively as "the Rockett children" or "the children."

In 2009, when the Rockett family resided in Taney County, the parents divorced pursuant to a judgment issued by another Taney County judge. TT 286:23-287:1. The children and their parents, notwithstanding the divorce, moved as a family unit to Los Angeles County, California, where the children attended public school and pursued careers in the entertainment industry. TT 287:2-12; 288:20-22.

## II. The 2018 Taney County custody modification case

While the children's mother, Kami Ballard, was pursuing a custody modification in Los Angeles Superior Court, California, she also filed a new modification case in Taney County, Missouri in 2018. TT 69:7-13; *Rockett v. Rockett,* No. 07AF-CV00944-02 (Taney County Circuit Court, Missouri).

Judge Eighmy was assigned. The day before Judge Eighmy was to hear the custody trial, the parents attended a custody hearing in the California case. TT 178:12-13. That evening, the children and their father traveled from California to Missouri. TT 178:17-20. The parents appeared with counsel before Judge Eighmy the next morning, while the children sat in the courthouse lobby with their paternal grandparents. TT 75:2-6.

The parents negotiated a settlement. TT 359:7-10. Judge Eighmy then made a brief record that the case was settled. TT 238:2-3. He signed some preliminary parenting plan notes, but did not denominate them a Judgment under

Missouri law, instead requiring in a docket entry that the parties "prepare" a Judgment. (They did so, and he signed it weeks later. TT 227:12-18.)

Judge Eighmy then ended the Rockett court proceedings for the day. TT 227:7-9. The father left the courthouse to retrieve the children's cell phones. TT 301:6-9. When he attempted to re-enter the courthouse, he was told by court officers to leave or be arrested. TT 303:10-19.

## II. Judge Eighmy personally seizes the children, and has them jailed

In the lobby area of the courthouse, after court had ended for the day, the children told their mother and a court-ordered child counselor, Dr. Cindy Baker, that they did not agree with the settlement and did not want to leave with their mother and go to Utah. TT 76:21-77-7; 76:12-20; 183:11-20. Judge Eighmy was no longer in his robes. He entered the lobby and he approached the children. TT 184:12-21. The children had never interacted with Judge Eighmy, and did not even know what he looked like. TT 73:2-74:4 (Kadan); 180:6-7 (Brooklyn).

Judge Eighmy took the children and Dr. Baker into a conference room off of the lobby, where he angrily lectured the children on the evils of kids in the Hollywood entertainment industry, and their need to live with their mother in Utah. TT 80:16-24; 82:2-7; 187:10-14.

Judge Eighmy threatened to put the children into foster care if they did not leave with their mother. TT 83:11-14; 188:7-189:7. The children responded that

they did not see how that was legal for him to do so, "to send us to foster care when no one's done anything wrong." TT 83:19-22; 188:21-23. He stated words to the effect of "I will show you what I can do." TT 83:23-24; 189:15-18. Judge Eighmy then led to the children to jail cells in the juvenile office in the basement. TT 84:5-22. He directed the children to remove their shoes, socks, and jackets. TT 96:1-4; 196:17-197:3. He directed Kadan to remove a bracelet from a church camp, even after Kadan informed Judge Eighmy that he had made a religious commitment not to remove it. TT 96:5-19. Judge Eighmy also stated that the children would be placed in foster care and never see either of their parents again. TT 94:12-14.

Kadan and Brooklyn did not feel free to leave when Judge Eighmy took them downstairs to the juvenile office. TT 87:18-25; 91:15-18. A juvenile officer testified that the only reason to place a child inside a holding cell was a "law violation." TT 537:4-6.

A uniformed adult male officer, on Judge Eighmy's direction, patted down the children. TT 130:10-11. The male officer patted down Brooklyn, a minor female. TT 197:6-13. According to juvenile officer Scott Gillman, a male officer patting down a minor female is "never okay" because "adult men should not be putting their hands on little girls." TT 538:25-539:13; 546:6-7. The chief juvenile officer Darlene Rea had "no idea" why Judge Eighmy had brought the children to

the cells, TT 524:18-19, other than the children would not leave with a parent, TT 449:21-450:4. The juvenile officers testified that they defer to the power of judges inside the courthouse. TT 131:5-7; 545:1-7.

At some point downstairs, Judge Eighmy stated "lock them up." TT 95:7-10. In Judge Eighmy's presence, Rea then locked the children in separate, individual cells. TT 97:12-13; 197-15:18. The cells were cold. TT 98:21-22; 198:6-9. When Brooklyn stood on a raised bed mat because her feet were cold, a male officer banged on the window and told her to get down. TT 198:12-16.

A "long" period of time passed, TT 199:8-9, up to 40 minutes, TT 371:8-9. Judge Eighmy and the officers returned, and Judge Eighmy again threatened foster care. TT 104:14-25. The children nodded their heads that they would leave with their mother. TT 105:21-106:1; 199:21-200:3.

Judge Eighmy and Rea then returned the children to their mother in the courthouse lobby. TT 200:24-201:2. Rea stated to the mother "that if the kids pulled anything else like this or refused to go with you, that [the mother] could reach out to them, and … that's where foster care came into the conversation." TT 371:4-11. Judge Eighmy then admonished Brooklyn until the children stated, under duress and in fear of further jailing, that they would go and live with their mother in Utah. TT 201:5-11. The children then left with their mother. TT 202:9-10.

The children's father did not know of Judge Eighmy's seizure until afterward. TT 306:18-24. The mother did not consent when told by Judge Eighmy what he was doing. TT 250:9-17; 368:9-25; 373:15-24. The Guardian *ad litem* had already left for the day when Judge Eighmy took his actions. TT 250:18-19.

At no point did the children enter the courtroom or attend any judicial proceeding. TT 71:-20-25. At no point was either child adjudicated to be delinquent, beyond parental control, or in contempt. TT 252:13-16, 254:4-6. At no point did Judge Eighmy notify the GAL or the Rockett parents that he was going to jail the children. TT 256:10-18. At no point did Judge Eighmy make any record or findings, or enter any orders or judgments, related to his personal jailing of the children. TT 253:7-14. At no point were the children afforded any hearing related to the jailings. TT 237:21-25.

Kadan testified that for the next year that he suffered fear, TT 110:2-5, and was scared, TT 116:11-13, distrusts the court system, TT 115:22-116:10, had emotional issues, TT 132:14-20, and experienced trauma, TT 116:22-25. Brooklyn testified that she suffered fear, TT 200:11-12; 203:15-25; 204:3-13, lost other children's friendships because their parents were concerned by the jailing, TT 205:24-206:4, and has lost trust in the police, TT 205:5-9. Their mother confirmed as much, TT 375:4-8. So did their father, TT 312:2-9; 313:16-24.

## III. Procedural background

The father as next friend timely filed a Complaint in the Western District of Missouri. The pleading included a claim for damages under 42 U.S.C. § 1983 against Judge Eighmy for unreasonable seizure. App. 30; R. Doc. 1 at 30. The pleading alleged that Judge Eighmy lacked judicial immunity, because his seizure in Taney County was not a judicial act. App. 27-29; R. Doc. 1 at 27-29.[3]

Judge Eighmy moved to dismiss under Fed. R. Civ. P. 12(b)(6), asserting judicial immunity. App. 46-99; R. Docs. 14 – 15-2. He did not argue qualified immunity, no color of law, or that Rockett had failed to state a claim upon which relief could be granted. *Id*. The district court denied Judge Eighmy's motion, finding that the facts of the complaint overcame judicial immunity. App. 177; R Doc. at 30. Judge Eighmy then filed an interlocutory appeal. This Court denied judicial immunity to Judge Eighmy for the October 2019 seizure, holding that "Judge Eighmy's decision to personally escort the kids to jail took what would otherwise be a judicial act too far." *Rockett I,* 71 F.4th at 671. (*Rockett I* did immunize Judge Eighmy for ordering a second seizure of the children in Louisiana several months later, holding that he did not act wholly in the absence of subject-matter jurisdiction. *Id.* at 673.)

[3] Since the complaint did not ask a federal court to enjoin any state court judgment or proceeding, then the Rooker-Feldman doctrine does not apply. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 292 (2005).

In light of two developments—Kadan turning 18 years of age, and Judge Eighmy's immunity for the second seizure—the children amended their complaint. App. 296; R. Doc. at 61. Its allegations were otherwise identical to the original complaint. Judge Eighmy raised qualified immunity for the first time as an affirmative defense in his Answer, App. 358; R. Doc. 68 at 21, some two and half years after the original complaint was filed. App. 1; R. Doc. 1.

Discovery did not uncover substantially different evidence from the allegations in the original pleading. Judge Eighmy moved for summary judgment on the bases of judicial and qualified immunity. The district court denied the motion. Judge Eighmy did not file a second interlocutory appeal after the district court denied summary judgment. The summary judgment documents are not in the record.

The case went to a jury trial starting December 9, 2024. *See* App. 560; R. Doc. 160. The district court held jury instruction conferences. TT 607 *et seq*. The verdict instruction for the seizure claim tracked the Eighth Circuit model civil jury instruction for unreasonable seizure no. 4.40. That requires under element third that the jury find that the plaintiff was damaged as a direct result of an unreasonable seizure. App. 619; R. Doc. 169 at 25. A separate and otherwise identical instruction was offered for each child. App. 630; R. Doc. 169 at 36. Judge Eighmy did not object to the damages element third, nor did he offer an

alternative instruction as to element third. TT 592:6-593:24, 615:14-23; App. 639-40; R. Doc. 170 at 1-2.

After deliberating, the jury returned verdicts in each child's favor on the unreasonable seizure claims, but wrote in zero dollars for the amount of damages. App. 648-49; R. Doc. 172, 173. The children argued that these were inconsistent verdicts since element third required a finding of damages. TT 666. The children requested a nominal damages instruction. TT 666:11. Critically—and this is where the parties differ in their briefing, with only undersigned counsel Messrs. Eastwood and Hoell being present at trial[4]—Judge Eighmy did not object to the nominal damages instructions, stating: "[W]e're fine with the nominal damage instruction given, Your Honor." TT 670:7-8. Later, in discussing how to send the verdict forms back to the jury (either new forms or the existing ones that could be interlineated), defense counsel stated: "our record is that when a nominal damages is not request nor objected to when a damage instruction are given and they don't award damages, therefore the plaintiff would not be the prevailing party. It's kind of in addition to what I've already argued…" TT 668:12-14. As the district court

[4] As the PACER record indicates, Judge Eighmy's counsel at the Attorney General's Office has changed many times throughout this litigation, with at least eleven lawyers making appearances and withdrawing. Counsel for this appeal was not present at the trial nor, on information and belief, involved with the trial.

observed, however, no prior argument was made or offered by Judge Eighmy's counsel on this issue. App. 909; R. Doc. 197 at 2; Add. 3.

The jury was then instructed by the district court:

> I have just what I absolutely know you guys want, and that's more instructions. So I need you to go back to the jury room and I'm going to give you your verdicts back and some additional instructions. I want you to review Instruction 19, paragraph third and reconsider what verdict you may want to enter. Then I need you to review Instruction No. 29, paragraph third and reconsider what verdict you want to enter.
>
> You may not enter a verdict for plaintiffs on the seizure claims unless you find they incurred damage; however, you may award nominal damages that are described in the instructions I'm about to read to you.
>
> Instruction No. 21. "If you find in favor of plaintiff under Instruction 19 but you find the plaintiff's damages have no monetary value, then you must return a verdict for the plaintiff in the nominal amount of one dollar."
>
> Instruction No. 32-1. "If you find in favor of the plaintiff under Instruction No. 29 but you find that plaintiff's damages have no monetary value, then you must return a verdict for the plaintiff in the nominal amount of one dollar."
>
> So if you'll read those two instructions and then decide what if any change you want to make in your verdict based on those additional instructions and my note. When you do, if you make a change, you can write it right on the same two verdicts we had before. And I want the change to be initialed by the foreperson, but again it needs to be unanimous. All right?
>
> TT 675:23-677:9.

The nominals instruction was harmless and ultimately irrelevant: the jury returned shortly thereafter, and awarded $10,000 ($5,000 to each child). App. 648-

49; R. Doc. 172, 173. The district court then issued a judgment accordingly. App 650; R. Doc. 174.

Post-trial, Judge Eighmy moved for judgment as a matter of law or to alter or amend the judgment. App. 569; R. Doc. 164. Judge Eighmy argued in the alternative that (a) there was no seizure, (b) any seizure was reasonable, (c) any Fourth Amendment seizure violation was not clearly established and so Judge Eighmy had qualified immunity, (d) Judge Eighmy had not acted under color of law, and (e) any damages should be reduced to either $2 based on the nominal damages instruction or $0 based on the first verdict. *Id*. The district court denied Judge Eighmy's motions. App. 908; R. Doc. 197.

The Rockett children moved for their attorney's fees and costs under 42 U.S.C. § 1988. App. 666; R. Doc. 176 at 1. The district court granted that motion in part. App. 914-17; R. Doc. 199 at 1-4; Add. 8-11.

## **Summary of Argument**

Judge Eighmy argues at least five different ways that he is either immune or that he did not act under color of law. In the light most favorable to the verdict, however, Judge Eighmy showed his authority to seize the children, no reasonable child would feel free to leave, and it was clearly established that such as seizure was unreasonable since there was no probable cause, delinquency, or contempt. Alternatively, it was obvious to any judge that such a seizure is unreasonable. Under the law of the case and the prior-panel rule, Judge Eighmy lacks judicial immunity since the evidence at trial was not substantively different from the pleading in *Rockett I*. Judge Eighmy now argues that *Rockett I* means that Judge Eighmy did not act under color of law since he was not functioning as a judge. But that's not the holding of *Rockett I,* and that argument ignores that (a) Judge Eighmy's counsel took that issue out of the case at the jury instruction conference, and (b) in any event Judge Eighmy's conduct occurred in the courthouse and juvenile office where he was a presiding judge, immediately after hearing the parents' custody case, and so his deeds were not purely private acts.

When the jury first came back, its verdicts were inconsistent on the seizure claims given the verdict director's third element requiring a finding of damages in order to find liability. The evidence at trial proved up compensatory damages, and case law holds that damages are presumed where there is a deprivation of liberty.

Judge Eighmy did not object to the subsequent nominal damages instruction, and the instruction was harmless and irrelevant because the jury returned with an award of compensatory damages. This Court need not wade into the circuit split as to requesting nominal damages after the return of a verdict. Reducing the damages award would interfere with the intent of the jury's findings of liability and compensatory damages. The district court properly performed its discretionary duty under Fed. R. Civ. P. 49(b) after the initial inconsistent verdicts, and this Court has long sanctioned sending back the jury to further deliberate a verdict not in proper form or arguably unclear.

The Rockett children have prevailed so far at every stage of this four-year litigation, including the interlocutory appeal, despite Judge Eighmy's vigorous and hard-fought defense.[5] The district court did reduce the children's overall fees motion by 25 percent, including a reduction of hours and a reduction of their counsel's St. Louis market rates to those of the smaller Springfield legal community. The Rockett children do not object to the 25% reduction, and the district court did not abuse its discretion in the attorney's fees award.

[5] The Rockett children prevailed despite significant evidence of reputational damages, and the entire second seizure, being excluded by the district court.

## **Standard of Review**

The Rockett children generally agree with Judge Eighmy's statement of the standard of review with two caveats.

First, *Geier v. Mo. Ethics Comm'n* is inapposite to this Court's review for abuse of discretion and an error of law in the context of a judgment for attorney's fees. *Geier* is a *Younger* abstention case that has nothing to do with fees. 715 F.3d 674, 678 (8th Cir. 2013).

Second, should it need to, this Court can also take judicial notice of the state court files in the Rockett parents' custody modification case. *Greenman v. Jessen,* 787 F.3d 882, 887 (8th Cir. 2015).

## **Argument**

Judge Eighmy argues that the district court and plaintiffs' counsel concede that this is "an unusual fact situation" or a "highly unusual case." Eighmy Br. 19.

That does not help him as to the clearly established prong of qualified immunity. The law was clearly established and gave Judge Eighmy fair warning as to unreasonable seizures of children. This is an "unusual" case only because the uncontroverted evidence is that no judge in a custody case had ever personally marched children to juvenile holding cells, threatened foster care, and said "lock them up" without their father's knowledge or their mother's consent. TT 472:19-24 (Rea: "never in [her] 20 years"); 537:17-20. That's obviously egregious, and a reasonable judge should know that any seizure requires a legal basis, let alone a seizure that he personally performs.

Judge Eighmy picks out evidence to present himself as a well-meaning, grandfatherly judge helping to persuade the children to go live with their mother in Utah, rather than return home to California with their father. That was his approach at trial. *See, e.g.,* TT 282:9-15. It failed. He cannot re-try the evidence on appeal by arguing selective facts in a light unfavorable to the verdicts.

The evidence in the light most favorable to the jury verdicts shows that Judge Eighmy's conduct in seizing and jailing the children within his courthouse was unreasonable. The children testified that Judge Eighmy told them that they

would be put into foster care, and that they would never see either parent again; that they did not feel free to leave; and that they suffered fear, emotional distress, and loss of trust in authority figures—not just at the time, but in the year that followed. Not only did the jury credit this testimony, but its verdicts are supported by testimony from other witnesses: courthouse staff, the children's parents, and Judge Eighmy himself.

Judge Eighmy lacks qualified immunity because the law is clearly established, or alternatively obvious. He lacks judicial immunity under the law of the case, and the evidence at trial did not substantially differ from the record in *Rockett I.* Judge Eighmy explicitly waived the "no color of law" argument at the jury instruction conference. Even so, he held himself out to the children as their parents' custody judge when he approached them *sua sponte* in the lobby.

Judge Eighmy did not object to the unreasonable seizure verdict director. When the jury found against Judge Eighmy but returned inconsistent verdicts as to compensatory damages, he did not object to a nominal damages instruction that was at best harmless and irrelevant because the jury came back with a total award of $10,000. Finally, the district court did not abuse its discretion in awarding attorney's fees to the Rockett children after they have prevailed so far at every stage of this litigation over four years.

This Court should affirm.

## I. In the light most favorable to the verdicts, Judge Eighmy lacks qualified immunity as (a) the children were seized and not free to leave, (b) it was clearly established that seizing and jailing children without probable cause, delinquency or contempt is unreasonable, and (c) Judge Eighmy was not acting in good faith in the best interests of the children.

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Masters v. City of Indep., Mo.,* 998 F.3d 827, 835 (8th Cir. 2021) (citations omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Id.* This Court conducts a two-part inquiry to determine whether qualified immunity protects a government official from liability: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.*

A prior case need not be factually on all fours if the government official has fair warning. *Taylor v. Riojas,* 141 S. Ct. 52, 53-54 (2020), citing *Hope v. Pelzer,* 536 U.S. 730, 741 (2002); *United States v. Lanier,* 520 U.S. 259, 271 (1997). The constitutional rights violation may be obvious. *D.C. v Wesby,* 583 U.S. 48, 64 (2018); *Rosales v. Bradshaw,* 72 F.4th 1145 (10th Cir. 2023); *see also Villarreal v. City of Loredo,* 94 F.4th 374 (5th Cir. 2024) (Oldham, J., concurring).

### a. Judge Eighmy seized the Rockett children

Judge Eighmy argues all he did was "lead the teens down to the Juvenile Office," Eighmy Br. at 24-25, and that the children's counsel argued as much. That is not correct: the evidence in the light most favorable to the verdicts is that the children did not feel free to leave from when Judge Eighmy personally marched them to downstairs to the juvenile holding cells, and stayed there "the whole time" throughout their jailing. TT 479:19-24. Undersigned counsel for the children did not argue that the seizure consisted only of the escort downstairs to the juvenile office. In closing, the children argued Judge Eighmy caused the jailing. TT 633:8-12. The instruction defined the seizure in the alternative as Judge Eighmy "personally escorting [the children] to the Taney County Juvenile Office, *and/or* had [the children] placed with the Taney County Juvenile Office holding cells." App. 619, 630; R. Doc. 169 at 25, 36.

Kadan was 14 and Brooklyn was 12 when Judge Eighmy approached them. Court was done for the day. TT 79:20-80:13. The children were unhappy that they could not express their views on leaving their longtime California home inside Judge Eighmy's courtroom. TT 76:21-22; TT 184:7-11.

After Judge Eighmy approached the children and asked them to step into a conference room, he threatened to put them in foster care if they did not leave with their mother that day to go live in Utah. TT 83:13-14. Judge Eighmy told the

children to follow him downstairs, without either parent, and they did not know where they were going. TT 84:5-13. Judge Eighmy took them to the juvenile office, and told a woman at a desk there to "keep an eye on them" in an accusing manner. TT 87:14-22. They did not feel free to leave. TT 87:23-24.

Judge Eighmy returned and told the children to follow him back to holding cells. TT 88:6-8. The children had no interactions or conversations with chief juvenile officer Darlene Rea until *after* they were released from the holding cells. TT 90:9-18. No one other than Judge Eighmy had any idea why the children were there, TT 524:18-19, and so it was Judge Eighmy's presence that caused a juvenile officer to pat the children down and jail them inside the holding cells. TT 545:1-7. Kadan did not even know if leaving with his mother was an option once he was locked in the holding cell. TT 149:21-23. Brooklyn did not feel free to leave even before she was placed into a holding cell. TT 195:22-25. Chief juvenile officer Rea placed Judge Eighmy personally at the jailing "the whole time," and testified that Judge Eighmy did not object to the jailing. TT 479:10-24; 524:4-19. Judge Eighmy conceded the obvious, that a child in a holding cell would not feel free to leave. TT 249:2-5.

A seizure occurs "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Haynes v. Minnehan,* 14 F.4th 830, 835 (8th Cir. 2021). The children here were

seized. Judge Eighmy started his seizure when he marched the children down to the juvenile office. The seizure continued when the children were patted down and jailed in holding cells under Judge Eighmy's watchful eye. This is the law of the case under *Rockett I,* 71 F.4th at 671-72. Judge Eighmy did not object to, and does not now challenge on appeal, the instruction's first element as to the seizure. App. 622, 630; R. Doc. 169 at 28, 36.

Nor could Judge Eighmy challenge that his seizure began when he marched the children downstairs and away from their mother. At that point the children submitted to Judge Eighmy's show of authority and did not feel free to leave. *Brendlin v. California,* 551 U.S. 249, 254 (2007); *Couzens v. City of Forest Park, Ohio,* 114 F.4th 571, 578 (6th Cir. 2024).

Judge Eighmy then pivots to argue that the children "voluntarily chose to stay with Judge Eighmy because their dad was no longer present." Eighmy Br. 26. But that is not the evidence in the light most favorable to the verdicts. The children did not voluntarily follow him down to the Juvenile Office, they did not voluntarily be jailed in its holding cells, and they did not voluntarily ask to be put in foster care and never see their parents again.

Judge Eighmy's voluntariness authority is far afield—a Supreme Court consent-to-search case involving a bag with hidden cocaine, and adults on an interstate bus—and has no value to the analysis here. There can be no

voluntariness if there is coercion. *United States v. DaCruz-Mendes*, 970 F.3d 904, 908 (8th Cir. 2020). Under the totality of the circumstances, Judge Eighmy made threats or misrepresentations, *id.,* when he threatened to put the children in foster care even before he marched them down to the Juvenile Office and oversaw their jailing. There was no consent or voluntariness, the children were not free to go, and the evidence shows that there was a seizure.

**b. The seizure was not reasonable because there were no legal bases for a seizure: neither probable cause, delinquency, nor contempt**

Judge Eighmy argues that it was reasonable for him to march the children down to the juvenile office, since the children and their mother "were going in circles" and in a "plainly emotional situation." Eighmy Br. 27. He also argues that it was reasonable for Judge Eighmy to "bring the [children] into another room to privately discus the terms of the settlement and what was happening." *Id.* But the children have always maintained that the seizure began only when Judge Eighmy marched them down to the juvenile office's holding cells, and that is the law of the case. *Rockett I,* 71 F.4th at 671-72. Judge Eighmy cites to another drug case involving a stopped motorist and a request by an officer for the motorist to stay in his car. *Unites States v. Warren,* 984 F.3d 1301, 1303-4 (8th Cir. 2021). But that is not apposite to vulnerable children coerced by a judge. Judge Eighmy's conduct was not just a seizure; it was coercive punishment without due process or a legal basis. *Morris v. Zefferi,* 601 F.3d 805, 811 (8th Cir. 2010).

Judge Eighmy then pivots to arguing that the children were beyond parental control under Missouri law. Eighmy Br. 28; *see also* RSMo. 211.031.1(2)(b). But there was never any charge or finding as much (let alone a record), and this Court already held that judges cannot personally and informally enforce child welfare statutes. *Rockett I,* 71 F.4th at 672.

**c. Judge Eighmy was not acting in good faith because he was not acting in the best interests of the children**

In the light most favorable to the verdicts, the jury did not credit Judge Eighmy's testimony that he was not present for the jailing, TT 247:415, and instead believed chief juvenile officer Rea that Judge Eighmy was there "the whole time," TT 479:19-24. Judge Eighmy cannot now manufacture "good faith" based on his testimony alone. Eighmy Br. 29. He argues that it was "undisputed testimony" that the children would have to go into custody if they did not go with their mother, but again, that is not the record. Chief juvenile officer Rea had no idea why the children were there. TT 524:18-19. Only Judge Eighmy did. Taking children into custody when they have done nothing wrong—no probable cause, no delinquency, no contempt—is not "good faith action" as to the children's best interests.

Judge Eighmy cites to objective good faith cases involving an officer's reliance on a facially valid warrant or order. *See Wheeler v. City of Searcy, Ark.,* 14 F.4th 843, 852 (8th Cir. 2021); *Riehm v. Engelking,* 538 F.3d 952, 965 (8th Cir.

2008). This argument actually helps the children: there was no warrant or order here. Indeed, as the district court held, any judge should know a seizure is not constitutionally authorized absent due process proceedings.

**d. Judge Eighmy violated a clearly-established constitutional right**

**i. Judge Eighmy waived his assertion of qualified immunity**

Before discussing how Judge Eighmy violated a clearly-established right to be free of seizure, the children first review the issue of waiver. Affirmative defenses must be pled at the earliest opportunity. Fed. R. Civ. P. 8(c); *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982) ("Qualified . . . immunity is an affirmative defense that must be pleaded by a defendant official."). A failure to plead an affirmative defense results in its waiver. 5 Miller, et al., Federal Practice & Procedure § 1278 (3d ed. 2020).

True, this Court has held that qualified immunity can be raised for the first time even on appeal out of procedural efficiency concerns. *Hamner v. Burls,* 937 F.3d 1171, 1176 (8th Cir. 2019), *cert. denied,* 141 S. Ct. 611 (2020). But Judge Eighmy did not identify qualified immunity as a basis for his motion to dismiss, or his interlocutory appeal to this Court. 71 F.4th at 668. Where qualified immunity is evident on the face of the complaint, it is an available basis for decision. 937 F.3d at 1176. Therefore, the procedural efficiency concerns identified by this Court in *Hamner* do not apply. The *Rockett I* panel declined to review the issue or

order supplemental briefing to consider it despite notice of this potential defense from the face of complaint. Through its verdicts the jury determined that Judge Eighmy seized the children, that the seizures were unreasonable, and that as a direct result each child was injured. Having determined these predicate facts, then the issue of qualified immunity was resolved against Judge Eighmy. *Cf. Littrell v. Franklin,* 388 F.3d 578, 584–85 (8th Cir. 2004).

Nothing happened to make qualified immunity a new issue in the case as to Judge Eighmy's October 2019 seizure. *Sherman v. Winco Fireworks,* 532 F.3d 709, 718 (8th Cir. 2008). This Court has held that it would be an abuse of discretion to allow an undiligent party to inject a new affirmative defense where it was obvious at the outset from the complaint. *Id*. After Judge Eighmy lost on summary judgment, he did not file a second interlocutory appeal. It is hard to see how he has preserved the issue of qualified immunity when the evidence at trial did not substantially differ from the pleadings. App. 780; R. Doc. 182 at 6.

**ii. Judge Eighmy's conduct was clearly established to be unconstitutional**

Turning to the merits, it was clearly established that Judge Eighmy's seizure was unreasonable given the lack of probable cause, contempt or delinquency. He argues that there was an "alleged [Fourth Amendment] violation," Eighmy Br. 32, but by its verdicts the jury found unreasonable seizures. *Compare* App. 619, 630; R.Doc. 169 at 25, 36 *with* App. 648-49; R. Doc. 172-173. The case law clearly

establishes that the children were unreasonably seized. Judge Eighmy's subjective intent is irrelevant to an objective seizure. Missouri law does not provide a basis for his acts.

#### 1. The case law clearly establishes an unreasonable seizure of a child

First, Judge Eighmy argues that the children lack even "at least something" that puts the right asserted beyond debate, Eighmy Br. 34, and that there is "no case law" that "demonstrates Judge Eighmy violated a clearly established right." *Id.* at 33. But it was clearly established in October 2019 that reasonable suspicion to seize children was required at the moment of the seizure. *Stanley v. Finnegan,* 899 F.3d 623, 628 (8th Cir. 2018); *see also Heartland Academy Commun. Church v. Waddle*, 595 F.3d 798, 809 (8th Cir. 2010). Being placed in a holding cell is a seizure for anyone, let alone a child. *Baribeau v. City of Minneapolis,* 596 F.3d 465, n.1, 474 (8th Cir. 2010) (holding that a minor taken to a juvenile facility was seized); *United States v. Lester,* 647 F.2d 869 (8th Cir. 1981) (being placed in a cell for one-half to three-quarters of an hour is a seizure). Even detaining children for an investigative stop is a seizure, and given the long length of time, it was likely an arrest. *Pollreis v. Marzolf,* 9 F.4th 737, 743-46 (8th Cir. 2021). The children did not believe they were free to leave the cells. No reasonable person–let alone a child–would believe under these facts that he or she was free to leave based on Judge Eighmy's show of authority. *Pollreis v. Marzolf (Pollreis II),* 66 F.4th

726, 729-30 (8th Cir. 2023) (collecting pre-2019 cases); *see also T.K. v. Cleveland,* No. 2:19-cv-04100-NKL at **14-16 (W.D. Mo. July 10, 2020) (detaining minor in police car is a seizure). Handcuffing a student for 25 to 45 minutes at school is an unreasonable seizure. *K.W.P. v. Kan. City Pub. Sch.,* 931 F.3d 813, 827 (8th Cir. 2019).

Judge Eighmy argues that these are "very unusual circumstances." But children, particularly pre-teens, routinely have disagreements about where they will live in custody cases. Judge Eighmy gave the children no opportunity to be heard about their wish to continue to live in California, which is why the children were frustrated. Missouri courts have long recognized that parents may have trouble trying to force preteen children to do things that they do not wish to do in the context of disputed custody arrangements. *See, e.g., D.R.P. v. M.P.P.,* 484 S.W.3d 822, 829 (Mo. App. 2016), citing *Shanks v. Shanks,* 603 S.W.2d 46, 48 (Mo. App. 1980). It should be obvious to a judge that seizing children for not wanting to change their home in a custody case was unreasonable.

Nor did Judge Eighmy—a sitting judge who routinely makes probable cause determinations—make a reasonable mistake that there was probable cause. *Cf. Wesby,* 583 U.S. at 65. And unlike Fourth Amendment cases involving law enforcement officers performing seizures, judges do not functionally perform seizures, as *Rockett I* holds is the law of the case. 71 F.4th at 671-72. To quote

Justice Gorsuch: "After all, some things are so obviously unlawful that they don't require detailed explanation[,] and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque,* 787 F.3d 1076, 1082 (10th Cir. 2015).

**2. The correct analysis for a seizure is whether it is objectively reasonable as conveyed to the seized child, not the seizor's subjective intent.**

Judge Eighmy argues he did not subjectively intend to seize the children. Without such intent, he argues he is immune, citing *Irish v. McNamara,* 108 F.4th 715, 721 (8th Cir. 2024). A Fourth Amendment seizure occurs when a government official "by … show of authority, terminates or restrains [an individual's] freedom of movement, through means intentionally applied." *Brendlin,* 551 U.S. at 254. The Supreme Court explained in *Brendlin* that the "intent that counts under the Fourth Amendment is the 'intent [that] has been conveyed to the person confronted.'" *Id*. at 260-61. The *Brendlin* court rejected the notion that a passenger is not seized when an officer subjectively intends to investigate only the driver. *Id*. at 260-61. Although a Fourth Amendment seizure requires the "willful restriction on freedom of movement," the Court explained that this "is no invitation to look to subjective intent when determining who is seized." *Id.* at 261. The relevant issue is intent as objectively manifested. *Id*. at 260.

*Irish*, on which Judge Eighmy hangs his hat for a subjectivity requirement,

concerns a "narrow and specialized" line of factual scenarios that do not apply here. 108 F.4th at 721. The *Irish* officer had immunity for his K-9 biting a fellow officer who was assisting him in apprehending a suspect, because he did not intend for the K-9 to seize the fellow officer. *Id*. Since he intended to seize *someone else,* not an innocent bystander, then he lacked intent to seize. That is inapposite to the evidence here that Judge Eighmy intended only to seize the Rockett children.

Judge Eighmy also argues that he did not intend to seize the children because he wanted the children to go home with their mother. Eighmy Br. 34. Whether he subjectively wanted the children to leave with their mother is irrelevant to whether Judge Eighmy seized them. The seizure test is objective: would a reasonable child feel free to leave, feel free to decline Judge Eighmy's requests, or otherwise terminate the encounter. *See, e.g., United States v. Collins,* 108 F.4th 1080, 1085–86 (8th Cir. 2024). The children did not feel free to leave.

#### 3. There is no basis under Missouri law for judges to personally seize children, and that is the law of the case

Judge Eighmy next argues that his actions were authorized by Missouri state law, since he was enforcing a divorce settlement. Eighmy Br. at 35-36. Not so. First, there was not yet any judgment. The undisputed evidence at trial was that the Court subsequently entered a judgment *as to the parents* some 23 days later, on October 31. TT 227:17-18; *Rockett,* No. 07AF-CV00944-02.

Missouri law is strict that a judgment must be denominated as such. *See*

*Prof'l Funding Co. v. Bufogle,* 617 S.W.3d 509, 513 (Mo. App. E.D. 2021). The evidence was that Judge Eighmy made an oral record of a preliminary settlement parenting plan by the parents requiring them to prepare the judgment at a later date. TT 227:12-16. Judge Eighmy conceded that the children were not parties to the settlement agreement under Missouri law. TT 250:6-8.

Judge Eighmy cites to Missouri case law holding that its courts have inherent power to enforce their own judgments. Those cases involve actual parties filing a motion with the trial court seeking an order to enforce a provision of a final judgment. *Compare State ex rel. Cullen v. Harrell,* 567 S.W.3d 633, 639 (Mo. 2019) with *McLean v. First Horizon Home Loan Corp.,* 277 S.W.3d 872, 876-77 (Mo. App. W.D. 2009). By contrast, here there was no motion by a parent-party to enforce the preliminary parenting plan notes heard on the record, which Judge Eighmy testified was neither a final settlement nor a judgment. TT 227:12-16; *cf. Puga v. Nephrite Fund I, LLC,* No. WD87149 at *11 (Mo. App. W.D. Sept. 10, 2024). There was no judgment to enforce. Neither parent consented to what Judge Eighmy was doing with their children: the father was not aware, and the mother did not want Judge Eighmy to seize her children. TT 373:18-23, 375:9-11. No one had invoked the judicial machinery.

Nor was this a contempt case as Judge Eighmy alleges. As *Rockett I* held, and the evidence at trial indicated, the children were not parties, they were not

present in the courtroom, and Judge Eighmy personally locked them up. In Missouri, children cannot be in contempt in a custody case. *De Rubio v. Herrera,* 541 S.W.3d 564, 574 (Mo. App. W.D. 2017) ("In a dissolution case, the child is not a party, the court does not exercise jurisdiction directly over the child, but over the parents of the child, and the child is not subject to sanction for non-compliance with any judgment."). In Missouri, contempt is directed to parents, with the complaining parent able to grant relief to his or her adversary. *See, e.g., Schutter v. Seibold,* 632 S.W.3d 820, 833 (Mo. App. W.D. 2021). Since the children were not before Judge Eighmy as parties, then they could not be in civil contempt. *Sophian Plaza Ass'n v. City of Kansas City,* 584 S.W.3d 784, 788 (Mo. 2019).

Judge Eighmy argues he had inherent powers to use contempt. But his authorities miss the mark. *Estate of Johnson v. Kranitz* concerns the attorney for the personal representative of an estate who willfully refused to comply with a court order. 168 S.W.3d 84, 92 (Mo. App. W.D. 2005). It was clearly established that children are not subject to the sanction of contempt in custody and dissolution cases. *De Rubio,* 541 S.W.3d at 574. Judge Eighmy next tries to assert his power to hold in contempt non-parties who knowingly and willfully obstruct an injunction. *Engel Sheet Metal Equip., Inc. v. Shewman,* 307 S.W.2d 694, 696 (Mo. App. St. Louis 1957). But here there was no injunction. Again, Judge Eighmy is not a law enforcement officer or jailer, so *Rockett I* controls. 71 F.4th at 671-72.

## II. Under the law of the case and the prior-panel rule, Judge Eighmy lacks judicial immunity under *Rockett I*. No substantially different evidence was subsequently introduced, nor is *Rockett I* clearly erroneous or working manifest injustice.

Judge Eighmy next argues that he has judicial immunity, arguing (1) his acts were judicial in nature, (2) he was functionally resolving disputes, and (3) the children dealt extensively with Judge Eighmy in his capacity as a judge. These arguments have already been rejected by this Court in *Rockett I,* 71 F.4th at 671-72, and Judge Eighmy offered no substantially different evidence at trial. Judge Eighmy now argues that the pleading analyzed by the Court at the motion-to-dismiss stage in *Rockett I* alleged that Judge Eighmy "threw the teens in jail himself." Eighmy Br. 39. That is incorrect.

Both the pleading and this Court held that Judge Eighmy "personally escorted the kids to jail, stood there while they removed their clothes and belongings, and personally came back an hour later to release them." *Rockett I,* 71 F.4th at 671. The evidence did not substantially change at trial: a juvenile officer patted down the children and placed the children in the jail in Judge Eighmy's presence. App. 14-15; R. Doc. 1 at 14-15; *Rockett I,* 71 F.4th at 668, 671-72; App. 309-10; R. Doc. 61 at 14-15. Any reasonable person, let alone a child, would not think they were free to leave based on the same facts alleged in the complaint, *Rockett I,* and the evidence at trial. *Compare* App. 14-15; R. Doc. 1 at 14-15;

*Rockett I,* 71 F.4th at 668, 671-72; App. 309-10; R. Doc. 61 at 14-15 *with* TT 87:18-25; 91:15-18.

As to Judge Eighmy's three arguments, each fails under *Rockett I.* Judge Eighmy was not enforcing a court order or judgment. Nor could he as judges are not law enforcement officers, and functionally if he was performing enforcement, then he was not acting as a judge. 71 F.4th at 672.

Judge Eighmy's argument that he subjectively believed that he was exercising his contempt power, Eighmy Br. at 39-40—which was not his testimony at trial, TT 252:13-14—is immaterial to the functional analysis. There was no order or judgment to enforce.

Nor was Judge Eighmy resolving a dispute. No party had filed a motion or otherwise sought a judicial process. No evidence at trial changed the holding in *Rockett I* otherwise. Judge Eighmy approached the children after court and engaged them in conversation after court was finished for the day. TT 230:22-232:2. It does not matter for the seizure analysis whether the jail cells were for adults or children, *cf.* Eighmy Br. at 40, whether Judge Eighmy had a subjective belief that the children were beyond parental control, *id.*, or whether hypothetically judges could ask the juvenile office to intervene in custody cases without probable cause, *id.*; *see also Rockett I,* 71 F.4th at 672.

Judge Eighmy has not even attempted to argue that *Rockett I* is clearly erroneous or works a manifest injustice, and so this argument is waived.

## III. Judge Eighmy was acting under color of law, and it is inconsistent for him to argue both immunity and "no color of law."

Judge Eighmy cannot make this "no color of law" argument. First, his counsel expressly waived this issue at the jury instruction conference:

> THE COURT: And we agree that the issue of state action is not at issue?
>
> MR. EASTWOOD: The color of law issue, Judge?
>
> THE COURT: Color of law, yeah.
>
> MR. MERELLO: Agreed, Your Honor.
>
> MR. EASTWOOD: Agreed.
>
> TT 590:19-24.[6]

Second, Judge Eighmy only raised the "no color of law" argument after the close of plaintiffs' evidence. App. 569, 778; R. Docs. 164 at 8, 182 at 4. He did not plead this theory as a defense, App. 358; R. Doc. 68 at 21, or argue it in a dispositive motion. He never raised it on interlocutory appeal in *Rockett I*. He argued throughout this litigation that he had immunity—that is, he was functioning

[6] Mr. Eastwood is an undersigned counsel for the Rockett children. Mr. Merello from the Missouri Attorney General's Office was lead trial counsel for Judge Eighmy.

as a judge within his courthouse. Legally sufficient evidence defeated his Rule 50(a) motion. He cannot consistently argue both immunity and "no color of law."

Judge Eighmy reasons that since *Rockett I* held he lacked judicial immunity, then he was "necessarily acting in his private capacity." Eighmy Br. at 41-42. Not so. Judicial estoppel bars this new theory. *Hossaini v. Western Mo. Med. Ctr.,* 140 F.3d 1140, 1142 (8th Cir. 1998). "The underlying purpose of the doctrine is to protect the integrity of the judicial process." *Id*.

Even on merits, this argument still fails in the light most favorable to the verdicts. Judge Eighmy never held himself out to the children as a private citizen. He approached them in his courthouse, identifying himself as the judge of their parents' custody case, even if judges "do not do double duty as jailers." *Rockett I*, 71 F.4th at 672. The chief juvenile officer and the court-appointed counselor Dr. Baker deferred to Judge Eighmy because he was a judge. TT 345:1-6, 18-21.

A random citizen who walked into the courthouse off the street would not have had any authority to seize the children as Judge Eighmy did. A juvenile officer testified that a private individual in the juvenile office waiting room "could not just walk right in." TT 523:21-23. Only Judge Eighmy's status as a judge allowed him to effect an unreasonable seizure.

Judge Eighmy seeks to negate color of law by relying solely on *Roe v. Humke,* where an off-duty police officer sexually assaulted children he oversaw as

a school resource officer, after inviting them to his farm off hours to ride all-terrain vehicles where he perpetrated his abuse. 128 F.3d 1213, 1214-15 (8th Cir. 1997). It is an undignified oddity that Judge Eighmy now seeks to compare himself to an off-duty cop who raped children at his home. Judge Eighmy argues that he did not seize the children his capacity as a judge, unrelated to his judicial duties. Eighmy Br. at 42-44. Ergo, argues Judge Eighmy, his acts were not pursuant to any state duties that he had. *Id.* at 44. But *Rockett I* holds this is not the law of the case. 41 F.4th at 671. Judge Eighmy was "clothed with the authority" of a state court judge, *Roe,* 128 F.3d at 1215, even if he was not functioning as a judge. No immunity does not equal no color of law.

## IV. Judge Eighmy did not object to the nominal damages instruction after inconsistent verdicts. The nominal damages instruction did not affect the jury's $10,000 damages award and so was harmless.

Judge Eighmy failed to object to the nominal damages instruction after the jury returned inconsistent verdicts. TT 670:7-8. Although the jury initially found in favor of each child, the jury awarded zero dollars for damages—despite element third of model instruction 4.40 requiring a finding of damages. *See* App. 619, 630; R. Doc. 169 at 25, 36. The children objected that these were inconsistent verdicts. TT 666. Their objection was timely. *Doe v. Washington Cnty.,* 150 F.3d 920, 924 (8th Cir. 1998).

Applying Fed. R. Civ. P. 49(b)(3)(B), a district court has discretion and "is in the best position" to decide whether a jury's findings on a verdict form are incomplete, confusing, or inconsistent, and whether to resubmit the claim to the jury. *Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 821–22 (8th Cir. 1998). This Court has long sanctioned sending back the jury to further deliberate a verdict not in proper form or arguably unclear. *United States v. Howard*, 507 F.2d 559, 562 (8th Cir. 1974).

Note 5 to this Court's model civil jury instruction 4.40 suggests that "[a] finding that the plaintiff suffered some actual injury or damage is necessary before an award of substantial compensatory damages may be made under 42 U.S.C. § 1983" (citing *Dawkins v. Graham,* 50 F.3d 532, 535 (8th Cir. 1995)). Under the instructions given here, the jury could not find liability but then value the damages at zero. App. 619, 630; R. Doc. 169 at 25, 36. Judge Eighmy never objected to this jury instruction. None of his refused instructions submitted a different element third, which requires a finding of damages. App. 639, 640; R. Doc. 170 at 1, 2.

A finding for the plaintiff as to an unconstitutional seizure / deprivation of liberty requires compensatory damages. *Kerman v. City of New York,* 374 F.3d 93, 124 (2d Cir. 2004). This Court has affirmed a Missouri district court following *Kerman,* holding in the deprivation of liberty context that "[compensatory] damages are inferred or presumed to result simply from the deprivation itself."

*Snider v. City of Cape Girardeau,* No. 1:10-CV-100 CEJ, 2012 WL 6553710, at *2 (E.D. Mo. Dec. 14, 2012), *aff'd,* 752 F.3d 1149 (8th Cir. 2014). There was ample evidence of the children's emotional distress and fear caused by the deprivation of liberty, accompanied by Judge Eighmy's threat to place them in foster care. Compensatory damages are "presumed." *Id.* at *2-3.

Forty years ago, the Second Circuit reversed a jury for $16 in compensatory damages for several hours in confinement, stating that $16 was categorically "inadequate to compensate the plaintiff," and noting that "New York cases uphold awards of up to $10,000 for even short periods of confinement without proof of actual damages," citing cases involving "$10,000 for three hours," "$7,500 for five hours," and "$10,000 for three hours." *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 39 (2nd Cir. 1985), *cert. denied,* 475 U.S. 1027 (1986). The *Kerman* court explained how general damages "would include at least the value of the time lost by the plaintiff during the period of detention." 374 F.3d at 125 (citing Prosser Keeton, The Law of Torts § 11, at 48 (5th ed. 1984)).

The compensatory damages that may be awarded for false imprisonment fall into two categories: general damages and special damages. *See, e.g.,* McCormick, Handbook on the Law of Damages § 107, at 375-77 (1935). General damage is a "harm of a sort inseparable from [the unlawful] restraint." *Id*. at 375. For "false imprisonment, upon pleading and proving merely the unlawful interference with

his liberty, the plaintiff is entitled to 'general' damages for loss of time and humiliation or mental suffering." *Id.*; *see also* Prosser Keeton § 11, at 48. "'General' damage . . . need not be specifically proved-it may be inferred from the circumstances of the arrest or imprisonment" and "would include at least the value of the time lost by the plaintiff during the period of detention." McCormick at 376.

After the nominal damages instruction was given, the jury could have come back with three options to cure: (1) defendant's verdicts, (2) plaintiff's verdicts with compensatory damages, or (3) plaintiff's verdicts with nominal damages. The district court instructed the jury as much. TT 676:2-5. The district court also observed to counsel in discussing the proposed additional instruction: "[t]hat way if they choose that because damage is a requirement we don't think a verdict should be entered against the judge, they can do that, but if they do think a verdict should be entered but only nominal damages should be awarded, then they'd be free to do that.." TT 671:18-22. The district court properly applied Fed. R. Civ. P. 49(b)(3)(B). The jury could have found for Judge Eighmy and returned defendant's verdicts. The nominal damages instruction was harmless and irrelevant since the jury never awarded nominal damages.

Judge Eighmy next argues that the children waived a nominal damages award, and the verdicts were not inconsistent, so it was an abuse of discretion for the district court to submit a nominal damages instruction. As a threshold matter,

the parties agree that failure to object to a jury instruction waives the objection. Fed. R. Civ. P. 51(d); *Miller v. Albright,* 657 F.3d 733, 736 (8th Cir. 2011).

Judge Eighmy did not object to the nominals instruction. His counsel stated "We're fine with the nominal instruction given, Your Honor." TT 670.[7] Later, in discussing how to send the verdict forms back to the jury (either new forms, or the old ones that could be changed by interlineation), Judge Eighmy's counsel stated: "our record is that when a nominal damages is not request nor objected to when a damage instruction are given and they don't award damages, therefore the plaintiff would not be the prevailing party. It's kind of in addition to what I've already argued…" The district court, however, found that no "prior objection had been made on this issue" by Judge Eighmy's counsel in its careful review of the record. App. 909; Add. 3. The record shows no prior objection.

Judge Eighmy now argues that this means that his counsel was "fine" with the *text* of the instruction as submitted, but was still objecting to the submission of the instruction itself. But that's not what the transcript shows. It shows that Judge Eighmy's counsel was arguing that Judge Eighmy was the prevailing party if the

[7] There was also discussion by counsel with the district court that the advisory committee comments to the Eighth Circuit model civil jury instruction no. 4.71 require "at least nominal where there is a finding of a violation of constitutional rights." TT 673:5-10.

jury did not award damages. TT 675:12-16. In other words, Judge Eighmy's counsel was conceding that the initial verdicts were inconsistent.

*Miller v. Albright* does not control here and is distinguishable. 657 F.3d at 735. Here the evidence showed compensatory damages caused by Judge Eighmy's seizure and deprivation of liberty. *Miller* involved a finding of liability for unlawful entry into a home where there were no damages. *Id.* at 738. The *Miller* plaintiff's unlawful entry damages were separate and distinct from his damages for excessive force—a claim on which the jury returned a defense verdict. *Id*. It did not help Mr. Miller that he was a drunk who had earlier photographed children playing in a schoolyard; one might surmise that the jury thought he was a creep who got some "street justice" from the police notwithstanding the technical violation of his constitutional rights. *See Farrar v. Hobby,* 506 U.S. 103, 117-18 (1992). There was no claim for deprivation of liberty in which compensatory damages are presumed. *Kerman,* 374 F.3d at 125.

*Miller* also avoids the very issue that Judge Eighmy now claims is controlling: that is, "the tactical dilemma that occurs when a plaintiff is forced to choose between asking for only compensatory damages and risking a zero-dollar verdict, on one hand, or requesting a nominal damages instruction and giving the jury an easy 'out' on the other hand." *Id.* at 738. Contrary to Judge Eighmy's assertion, this Court in *Miller* did not wade into the circuit split on this issue

because the issue was not ripe. *Id*. Some circuits permit a nominal instruction after an inconsistent verdict. *Id*., citing *Azimi v. Jordan's Meats, Inc.,* 456 F.3d 228, 240 (1st Cir. 2006).

After receiving the initial verdict, the Court was well within its discretion under Fed. R. Civ. P. 49(b)(3)(B) to send the jury back to reconsider since the jury's intent seemed to be in favor of the children. *Beard v. Flying J, Inc.,* 266 F.3d 792, 799 (8th Cir. 2001).

Even if Judge Eighmy did object to the nominal damages instruction, however—which he did not—the jury did not return a nominal damages verdict. Accordingly, the nominals instruction was irrelevant to the jury's ultimate verdicts, and if there was error it was harmless. "It is the court's duty to harmonize inconsistent verdicts, viewing the case in any reasonable way that makes the verdicts consistent." *Anheuser-Busch, Inc. v. John Labatt, Ltd.,* 89 F.3d 1339, 1347 (8th Cir. 1996). Even if this Court holds that $5,000 per child is a nominal damages amount, the Fifth Circuit has held that the determination of the amount of nominal damages awarded is within the Court's discretion. *Williams v. Kaufman County,* 352 F.3d 994, 1014-15 (5th Cir. 2003).

Judge Eighmy cannot rely on cases where the district court reviewed special verdicts as opposed to general verdicts. Eighmy Br. 49 (citing *Debity v. Monroe Cty. Bd. of Educ.,* 134 F.4th 389, 3980404 (6th Cir. 2025)). The district court

refused special interrogatories proffered by Judge Eighmy, but Judge Eighmy has not made that refusal part of his appeal. *See* App. 644; R. Doc. 170 at 6. A review of a general verdict is highly deferential: all reasonable inferences are drawn in favor of the children, without making credibility assessments or weighing the evidence. *Masters,* 998 F.3d at 835.

Judge Eighmy next discusses excessive force cases where seizures need not "demonstrate actual damages." Eighmy Br. at 49. These are distinguishable. *Westcott v. Crinklaw* holds that nominal damages are legally insufficient for fatal injuries, but notes three exceptional *excessive force* fact patterns where a jury may properly refuse to award compensatory damages: (1) where justifiable force caused the injuries, (2) where the plaintiff's evidence is not credible, or (3) where the injuries have no monetary value or are insufficient. 133 F.3d 658, 661 (8th Cir 1998). Judge Eighmy then goes on to review excessive force cases where these narrow exceptions applied. *Patterson v. City of Omaha,* for example, affirms a nominal damages verdict for excessive force where the plaintiff could not prove causation for his injuries. 779 F.3d 795, 801-02 (8th Cir. 2015). *Gibeau v. Nellis* has the same causation issue when an inmate had altercations with multiple prison officials. 18 F.3d 107, 110 (2d Cir. 1994); similarly, the prison inmate plaintiffs in *Butler v. Dowd* had a causation issue with showing prison officials were liable for

their sexual assaults by other inmates. 979 F.2d 661, 669 (8th Cir. 1992) (en banc).

This is not an excessive force case involving prison brawls or sexual assaults, where the jury could not determine *who* caused an injury. It is a deprivation of liberty case where the evidence in the light favorable to the verdicts indicates that Judge Eighmy caused the seizure. Judge Eighmy argues that "the jury could reasonably have found that the cause of Plaintiffs' injuries was their refusal to follow the settlement agreement and go home with their mother." Eighmy Br. at 50. But that elides the role that Judge Eighmy played. He then argues that the children later dressing up as Judge Eighmy and a prisoner for Halloween disproves any harm to them. But that did not stop the jury from finding Judge Eighmy liable for *causing* the children's unreasonable seizures. Judge Eighmy also suggests these two facts justify $0 in compensable damages. But there was substantial evidence of both causation and compensable damages.

Finally, Judge Eighmy argues that it was error under *Miller* to send back the nominal instructions, since Plaintiffs did not ask for it until after the jury's original verdict. But *Miller* is distinguishable as discussed above: an unlawful entry is a different violation in kind to an unreasonable seizure; and, while *Miller* did not present evidence of damages caused by the unlawful entry, the children and their parents did testify as to their fear and emotional distress caused by Judge Eighmy,

thinking they would never see their parents again. *Compare* 657 F.3d at 738 with TT 149:21-23. In the face of such undisputed evidence, and the presumption of compensatory damages for a deprivation of liberty, then it was not error for the district court to send back the nominal instructions, or any error was harmless.

Judge Eighmy next argues that that the district court abused its discretion in denying his motions to alter or amend the judgment, arguing (1) waiver of the nominal damages instruction, (2) lack of inconsistency in the initial verdict, (3) abuse of discretion in sending back the verdict for further deliberation. Eighmy Br. 44-45.

But the jury found in both the inconsistent initial verdicts and the consistent second verdicts that Judge Eighmy violated the constitutional rights of the children when he seized them and caused their deprivation of liberty.

Judge Eighmy relies on *Corpus v. Bennett* to argue that the district court erred in not reducing the $10,000 damages award to $2. 430 F.3d 912, 915 (8th Cir. 2005). But the district court considered *Corpus,* and did not abuse its discretion in distinguishing it. App. 913; R. Doc. 197 at 6; Add. 6. *Corpus* was an excessive force case, and it did not have finding of damages as an element of the verdict director. 430 F.3d at 914-15. Rather, it had special interrogatories (absent here) under which the jury found that although the defendant police officer used excessive force, he did not directly cause any injury to the plaintiff. *Id.* at 915. The

jury awarded $75,000 in nominal damages for a violation of constitutional rights despite no injury. *Id.* This Court held that in the absence of actual, provable injury, the district court did not err as a matter of law in reducing the award to $1 nominal damages. *Id.* Critically, however, this Court analyzed the reduction not under an abuse of discretion standard, *id.,* but rather under the district court's duty to make the nominal damages award conform to the law absent compensable injuries. *Id.* Here, since the undisputed evidence showed deprivations of liberty and compensable damages, then there was no such duty.

**V. The Rockett children have prevailed so far at every stage of this litigation; the jury awarded them compensatory damages; and so the district court did not abuse its discretion in its attorney's fees award.**

Judge Eighmy next argues that the district court abused its discretion in awarding attorney's fees of $325,000, arguing that the children's fees for four years of litigation, including the trip to this Court in *Rockett I,* is excessive. (The award was actually $326,637.22. App. 917; R. Doc. 199; Add. 11.) Judge Eighmy also argues that since the verdict should have been reduced to $0 or $2, then the children basically lost the case and should not get any fees.

Here, all trial counsel were from larger metropolitan areas, and not the local Springfield community where the federal district court is located, nor from Taney County where the seizures occurred. App. 675; R. Doc. 176 at 10. Plaintiffs' counsel were each from St. Louis; defendant's trial counsel were from the Missouri

Attorney General's Kansas City office. App. 677; R Doc. 176 at 12. Kansas City has the highest market rates in Missouri. App. 677; R. Doc. 176 at 12. The district court reduced plaintiffs' counsel's hourly rates sought given the district court's "own experience and knowledge of prevailing rates for attorney fees in the community." App. 917, R. Doc. 199, at 4; Add. 11. The district court reduced the number of hours by 10 percent given the verdict size, but not specifically find any hours that should be eliminated. *Id.* This was effectively a 25 percent reduction in fees, which the children do not challenge.

This Court reviews *de novo* both the determination of whether a litigant is a prevailing party, and the legal issues related to the award of attorney fees. *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.,* 540 F.3d 752, 763 (8th Cir. 2008) (internal citations omitted). This Court reviews the actual award of attorneys' fees and costs for abuse of discretion. *Brewington v. Keener,* 902 F.3d 796, 804 (8th Cir. 2018).

First off, the children were the prevailing parties. The district court has discretion to award reasonable attorney's fees to a party who prevails on § 1983 claims. *See* 42 U.S.C. § 1988(b). A party is a prevailing party if he succeeds on any significant issue in the case "which achieves some of the benefit the part[y] sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoted case omitted). A district court's "discretion to deny attorneys' fees to a prevailing

plaintiff is narrow." *Jenkins ex rel. Jenkins v. State of Mo.,* 127 F.3d 709, 716 (8th Cir. 1997); *Hensley,* 461 U.S. at 429. A fee award "should not be reduced merely because a party did not prevail on every theory raised in the lawsuit." *Hendrickson v. Branstad,* 934 F.2d 158, 164 (8th Cir. 1991).

Courts have rejected docking fees based on receiving lower damages than requested in closing. *Garcia v. Tyson Foods, Inc.,* 770 F.3d 1300, 1311 (10th Cir. 2014) (rejecting fee reduction where jury awarded only 8% of the damages sought). Given the remedial purpose of the § 1983 statute, attorney fee requests commonly exceed the amount of judgment in the case by many multiples.

"Damage awards do not reflect fully the public benefit advanced by civil rights litigation. Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Lowry,* 540 F.3d at 764-65 (quoting *Riverside v. Rivera,* 477 U.S. 561, 585 (1986)). "Congress 'intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex Federal litigation . . . and not be reduced because the rights involved may be non-pecuniary in nature.''' *Blanchard v. Bergeron,* 489 U.S. 87, 95 (1989) (quoting S. Rep. No. 94-1011, at 6). A § 1988 fee award "grants the successful civil rights plaintiff a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 286 (1989).

Judge Eighmy focuses on the size of the verdicts. But his cases where fees were reduced are distinguishable. *Jones v. Lockhart* is a prisoner excessive force case where the plaintiff won $1 in nominal damages. 29 F.3d 422, 424 (8th Cir 1994). A court-appointed lawyer lost a separate set of claims, not rooted in a common core of facts, as to deliberate indifference to serious medical need. *Id.* The attorney, back in 1994, sought $860,000 in fees. *Id.* The district court award $25,000, and this Court reduced to $10,000, finding that the district court mistakenly assumed that the plaintiff had also prevailed on his medical claims. *Id.*

By contrast, here each of the children's three claims submitted to the jury were rooted in the same common core of facts. App. 619-621; 630-32. Three lawyers were awarded $326,637.22 in fees and expenses under the district court's knowledge of December 2024 prevailing market rates and degree of success achieved. It is highly unusual for a judge to be denied immunity, and the children have prevailed so far at each stage of this litigation. Congress recognized the difference between damages and attorney's fees, and that held that attorneys' fees are required especially in cases where damages play little role. *See, e.g.*, H. Rep. 94-1558, at 8-9.

Judge Eighmy reviews other cases, but they also do not show abuse of discretion by the district court. *Loggins v. Delo* is a prisoner mail case, where the plaintiff used swear words and references to masturbation that were nevertheless

protected by the First Amendment from discipline. 999 F.2d 364, 368 (8th Cir. 1993). The district court reduced the attorney's fee award in 1993 by $9,968. *Id.* This Court *affirmed* the district court's reduction of attorney's fees under an abuse of discretion standard, reviewing *Hensley* and *Rivera. Loggins,* then, counsels that this Court be deferential in its abuse of discretion review of the district court's award of attorney's fees.

*Fires v. Heber Springs School Dist.* is a per curiam opinion involving somewhat silly claims: parents sued a school district for disciplining their daughter for making a prank phone call falsely claiming a school bus accident. 565 F.App'x 573, 574 (8th Cir. 2014). The parents brought sweeping claims seeking compensatory, punitive and injunctive relief. The jury gave them $1 in nominal damages. The district court held that the plaintiffs' claims were not complex, and that their victory was limited. *Id.* at 575.

This case has wide-ranging implications for what family court judges can and cannot do to children who object to their parents' custody arrangements. *Rockett I* has already been relied on by the Fourth Circuit in *Gibson v. Goldston,* 85 F.4th 218 (4th Cir. 2023). This litigation is significant in preventing unreasonable seizures in custody cases, and in clarifying standards of constitutional conduct by judges. *Bravo v. City of Santa Maria,* 810 F.3d 659, 666 (9th Cir. 2016).

Nor is this case comparable to 32-year-old prisoner cases such as *Jones* and *Loggins* where the incarcerated plaintiffs could not prove a compensable injury, and received nominal damages for run-of-the-mill prisoner civil rights claims.

This case should not be analyzed under the distinguishable standards of the relatively new class action rules and consumer class action law. *Briseño v. Henderson,* where the finding of error was based on the class action requirements of Fed. R. Civ. P. 23(e), is mostly about fairness to absent class members under a settlement. It is inapposite. 998 F.3d 1014, 1020, 1022-23 (9th Cir. 2021). This civil rights case implicates neither a class action nor a settlement. And, unlike the loathsome plaintiff in *Farrar,* who abused teens and caused the death of one, 506 U.S. at 105-06, here there were no special interrogatories, *id.* at 106.

After the Rockett children prevailed at trial, the district court did not abuse its discretion in its attorney's fees award.

## VI. Conclusion and Prayer

Judge Eighmy lacks qualified and judicial immunity, but he was acting under color of law. The district court did not abuse its discretion in denying his motion to alter or amend the judgment, and Judge Eighmy did not timely object to a harmless nominal damages instruction. The district court did not abuse its discretion in awarding reduced attorney's fees to the Rockett children as prevailing parties.

WHEREFORE Plaintiffs-Appellees Kadan Rockett and Brooklyn Rockett pray this Court to AFFIRM the judgment of the district court; to AWARD Plaintiffs-Appellees their attorney's fees, non-taxable expenses, and costs for this appeal under 42 U.S.C. § 1988; grant LEAVE for Plaintiffs-Appellees to submit their attorney's fees, non-taxable expenses, and costs with their Fed R. App. P. 39 Bill of Costs; and to grant such other relief as may be just, meet and reasonable.

Dated: July 24, 2025

Respectfully submitted,

*Attorneys for Plaintiffs-Appellees*
*Kadan Rockett & Brooklyn Rockett*

/s/ Hugh A. Eastwood
Hugh A. Eastwood, 62058MO
8112 Maryland Ave., Suite 400
St. Louis, Missouri 63105-3700
hugh@eastwoodlawstl.com
(314) 809 2343
(314) 228 0107 eFax

/s/ W. Bevis Schock
W. Bevis Schock, 32551MO
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO 63105
wbschock@schocklaw.com
Fax: 314-726-2322
Voice: 314-721-1698

/s/ Christopher R. Hoell
Christopher R. Hoell, 54011MO
Law Office of Chris Hoell, LLC
7911 Forsyth Blvd., Ste. 300
Clayton, MO 63105
crh@hoell-law.com
314-441-6559

## Certificate of Compliance

The undersigned certifies that this brief complies with the typeface and formatting requirements of Fed. R. App. P. 28 and 32, in that it is written in Times New Roman 14 point font, and contains 12,792 words as counted by Microsoft Word. The electronic copy of this brief has passed a software scan for viruses.

/s/ Hugh A. Eastwood

## Certificate of Service

The undersigned certifies that (s)he e-filed this brief on July 24, 2025 with the Clerk of the Court using the Eighth Circuit's CM/ECF system, with e-service on all appellate counsel of record.

/s/ Hugh A. Eastwood