**No. 25-1664**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGTH CIRCUIT**

---

Brooklyn ROCKETT; Kadan ROCKETT,

Plaintiffs–Appellees,

v.

Eric EIGHMY, in his individual capacity only,

Defendant–Appellant.

---

On Appeal from a final Judgment of the
United States District Court for the Western District of Missouri
The Honorable M. Douglas Harpool

---

# MOTION FOR LEAVE TO FILE BRIEF OF THE NATIONAL POLICE ACCOUNTABILITY PROJECT AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLEES AND IN SUPPORT OF AFFIRMANCE

---

Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
ACCOUNTABILITY PROJECT
2022 St. Bernard Ave.
Suite 310
New Orleans, LA 70016
(504) 220-0401

*Counsel for* Amicus Curiae
*National Police*
*Accountability Project*

## MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE*

Pursuant to Federal Rule of Appellate Procedure 29(a)(3) and 29(b)(3), the National Police Accountability Project (NPAP) moves for leave to file the attached *amicus curiae* brief (attached hereto as Exhibit A) in support of Plaintiffs-Appellees and in support of affirmance of the District Court's judgments awarding compensatory damages and attorney's fees, expenses, and costs. Before filing this motion, NPAP sought the parties' permission to file an *amicus* brief, but NPAP did not hear back from Appellant Eighmy before the deadline for filing this motion. Plaintiffs-Appellees have consented to this filing.

Founded in 1999 by the National Lawyers Guild, *amicus* NPAP coordinates and assists civil rights attorneys focused on combatting government misconduct. NPAP has approximately 550 attorney members practicing in every region of the United States, including over a dozen in the Eighth Circuit. Every year, NPAP members litigate the thousands of egregious cases of government abuse that do not make news headlines, as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and regularly appears as *amicus curiae* in cases such as this one that present issues of particular importance for its members and their clients.

NPAP is interested in this case because it is invested in safeguarding the constitutional rights of individuals, like Plaintiffs-Appellees, to be free from the abusive misconduct of rogue state actors, like Appellant Judge Eighmy. NPAP knows all too well that these core rights cannot be adequately protected without a robust bar of civil rights attorneys ready to hold those who would violate them to account. NPAP also has intimate knowledge of the invaluable role Section 1988's fee-shifting rule plays in maintaining this bar of talented civil rights attorneys.

*Amicus* is uniquely positioned to speak to the importance of affirming the District Court's award of attorney's fees in this case. With over 550 member attorneys representing plaintiffs in their civil suits against abusive state actors, NPAP is deeply familiar with the importance of Section 1988 attorney's fees and the ways this Court and the U.S. Supreme Court have interpreted and applied the statute. NPAP's brief draws from this knowledge to highlight the significant public interests at risk in this case and to identify the various precedents supporting the District Court's sound judgment.

*Amicus* hereby respectfully requests the Court grant them leave to file their brief in support of Plaintiffs-Appellees and in support of affirmance.

Dated: July 31, 2025.

Respectfully submitted,

/s/ Lauren Bonds
Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
ACCOUNTABILITY
PROJECT
1403 Southwest
Kansas City, KS
66103
(504) 220-0401

No. 25-1664

United States Court of Appeals

for the Eighth Circuit

KADAN ROCKETT, *et al.,*

Plaintiffs-Appellees,

v.

THE HONORABLE ERIC EIGHMY,

Defendant-Appellant.

Appeal from a final Judgment of the United States District Court

for the Western District of Missouri

The Honorable M. Douglas Harpool

# BRIEF OF *AMICUS CURIAE* NATIONAL POLICE ACCOUNTABILITY PROJECT IN SUPPORT OF PLAINTIFFS-APELLEES AND IN SUPPORT OF AFFIRMANCE

Lauren Bonds
Eliana Machefsky
National Police Accountability Project
1403 Southwest Blvd
Kansas City, KS 66103
legal.npap@nlg.org
*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. of App. P. 26.1, the undersigned counsel for amicus curiae respectfully submit the National Police Accountability Project (NPAP) is a non-profit organization. It has no parent corporation, and no publicly held corporation owns ten percent or more of its stock because it has no stock. Amicus does not have a financial interest in the outcome of this litigation.

## TABLE OF CONTENTS

**Table of Contents**

CORPORATE DISCLOSURE STATEMENT .......................................... ii
TABLE OF AUTHORITIES ................................................................. iv
INTEREST OF THE AMICUS CURIAE ................................................ 1
INTRODUCTION ................................................................................ 1
ARGUMENT ....................................................................................... 3
I. Reducing Appellees' Fee Award Would Undermine the Civil Rights Attorney Fees Act (42 U.S.C. § 1988)'s Legislative Purpose of Ensuring Victims of Government Abuse Can Find Competent Counsel. ....................................................................................... 3
A. Section 1988 Was Enacted to Ensure Victims of Government Abuse Who Receive Low or No Damages Could Find Competent Counsel. ....................................................................................... 3
B. Advancing the Public Interest, Rather Than Recovering Damages Awards, is Frequently the Objective of Civil Rights Cases—Even When the Plaintiff Seeks Damages. ................................................. 7
C. Plaintiffs Would Be Unable to Obtain Counsel if Attorneys Cannot Expect Fee Awards. .............................................................. 9
II. The District Court Did Not Abuse its Discretion in Calculating Reasonable Attorney's Fees for Appellees. ...................... 11
A. District Courts Exercise Immense Discretion in Setting Attorney's Fee Awards. ................................................................. 11
B. The District Court Applied the Proper Procedure to Arrive at a Reasonable Fee Award That is Consistent with Awards Granted in Similar Cases Involving Low or No Compensatory Damages. .......... 14
CONCLUSION ................................................................................... 23
CERTIFICATE OF COMPLIANCE ....................................................... 24
CERTIFICATE OF SERVICE ............................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Alyeska Pipeline Service Corp. v. Wilderness Society*, 421 U.S. 240 (1975) .................... 3

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) .................... 12

*Carey v. Piphus,* 435 U.S. 247 (1978) .................... 7

*City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981) .................... 8

*Evans v. Jeff D.*, 475 U.S. 717 (1986) .................... 4

*Farrar v. Hobby*, 506 U.S. 103 (1992) .................... 2, 7, 12, 14

*Fish v. St. Cloud State Univ.*, 295 F.3d 849 (8th Cir. 2002) .................... 23

*G&K Servs. Co. v. Bill's Super Foods, Inc.*, 766 F.3d 797 (8th Cir. 2014) .................... 13, 17

*H.J., Inc. v. Flygt Corp.*, 925 F.2d 257 (8th Cir. 1991) .................... 12

*Hanig v. Lee*, 415 F.3d 822 (8th Cir. 2005) .................... 11

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................... 3, 11, 13

*Jones v. Lockhart*, 29 F.3d 422 (8th Cir. 1994) .................... 14, 15, 16

*Lash v. Hollis*, 525 F.3d 636 (8th Cir. 2008) .................... 19, 22

*Loggins v. Delo*, 999 F.2d 364 (8th Cir. 1993) .................... 15

*Lowry v. Watson Chapel Sch. Dist.*, 540 F.3d 752 (8th Cir. 2008) .................... 21

*Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700 (8th Cir. 2021) ........ 12, 13, 17, 18

*Mayfield v. Haahr*, 122 F.4th 1046 (8th Cir. 2024) ........ 13, 16

*Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005) ........ 19

*Ollis v. Hearthstone Homes, Inc.*, 495 F.3d 570 (8th Cir. 2007)....... 17, 22

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019)........ 22

*Owen v. City of Independence*, 445 U.S. 622 (1980)........ 7

*Piper v. Oliver*, 69 F.3d 875 (8th Cir. 1995) ........ 8, 11, 15, 21

*Riverside v. Rivera*, 477 U.S. 561 (1986) ........ passim

*St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis, Mo.*, 96 F.3d 323 (8th Cir. 1996)........ 13

*Thurairajah v. City of Fort Smith*, 3 F.4th 1017 (8th Cir. 2021)..... 15, 16

*Vines v. Welspun Pipes Inc.*, 9 F. 4th 849 (8th Cir. 2021) ........ 12

**Statutes**

42 U.S.C. § 1988 ........ 5, 14, 21

**Other Authorities**

121 Cong. Rec. 26,806 (1975) (statement of Sen. Tunney)........ 8

122 Cong. Rec. 33313 (1976) (remarks of Sen. Tunney)........ 8

Andrew W. Stroud, *Comment, The Contingency Factor and the Attorney's Fees Awards Act of 1976: Legislative History Requires Continued Application*, 26 SANTA CLARA L. REV. 193 (1986) ........ 9

Joanna C. Schwartz, *Civil Rights Without Representation*, 64 WM. & MARY L. REV. 641 (2023) ........ 10

Joanna Schwartz, *The Tenacious Power of Constitutional Torts*, UCLA School of Law, Public Law Research Paper No. 25-11 (Jul. 2025) 12

LEGAL SERVICES CORPORATION, *The Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans* (2022) ........................................ 13

S. REP. NO. 94-1011, at 6 (1976) ............................................................... 9

Samuel R. Bagenstos, *Mandatory Pro Bono and Private Attorneys General*, 101 N.W. U. L. REV. 1459 (2007) ..................................... 13

Susan M. Murray, *Attorneys' Fees in Civil Rights Cases: Contingent Fee Awards under Section 1988*, 17 PAC. L. J. 1275 (1986) ................. 10

## INTEREST OF THE *AMICUS CURIAE*

The National Police Accountability Project (NPAP) was founded in 1999 by members of the National Lawyers Guild to address misconduct by law enforcement officers through coordinating and assisting civil rights lawyers. NPAP has approximately 550 attorney members practicing in every region of the United States, including over a dozen members in the Eighth Circuit. Every year, NPAP members litigate the thousands of egregious cases of law enforcement abuse that do not make news headlines as well as the high-profile cases that capture national attention. NPAP provides training and support for these attorneys and resources for non-profit organizations and community groups working on government accountability issues. NPAP also advocates for legislation to increase police accountability and appears regularly as amicus curiae in cases, such as this one, presenting issues of particular importance for its members and their clients.

## INTRODUCTION

42 U.S.C. § 1988 (“Section 1988”) was enacted for the very purpose of ensuring attorneys would take on of civil rights cases that they could not be compensated for through a client’s upfront payment or

contingency fee arrangement. The purpose of the fee-shifting statute was to incentivize attorneys to litigate cases that were meritorious yet not expected to "win big" from a financial standpoint. Yet, Appellant-Defendant Judge Eighmy argues that Plaintiffs-Appellees should not receive any fees under Section 1988—despite winning at the district court—because they won a small compensatory damages award. This argument is not only antithetical to the purpose of Section 1988, but also has no support in case law. Specifically, *Farrar v. Hobby*, 506 U.S. 103 (1992), the case on which Judge Eighmy relies, applies to cases where the plaintiff was only awarded nominal damages as opposed to cases like Plaintiffs-Appellees' where modest compensatory damages were awarded. Moreover, even if *Farrar* were apposite, it would not bar Plaintiffs-Appellees' fees given the relatively low discrepancy between the damages sought and awarded as well as the other metrics of success weighing in favor of awarding fees.

## ARGUMENT

### I. Reducing Appellees' Fee Award Would Undermine the Civil Rights Attorney Fees Act (42 U.S.C. § 1988)'s Legislative Purpose of Ensuring Victims of Government Abuse Can Find Competent Counsel.

Lawsuits by private plaintiffs are central to the effective enforcement of federal civil rights statutes. Section 1988's fee-shifting provisions were enacted for the express purpose of ensuring that private litigants could secure counsel in their cases and fully effectuate civil rights protections. The decision below advances the purpose of Section 1988 and should be upheld.

#### A. Section 1988 Was Enacted to Ensure Victims of Government Abuse Who Receive Low or No Damages Could Find Competent Counsel.

Congress enacted Section 1988 as an incentive for lawyers to take on cases that would protect and enforce a broad range of civil rights protections. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983). A year before Section 1988 was enacted, the Supreme Court issued an opinion in *Alyeska Pipeline Service Corp. v. Wilderness Society*, 421 U.S. 240 (1975), which held that prevailing plaintiffs were not entitled to recover

fees or costs absent express statutory authority. *Id.* at 267. Answering the Court's call in *Alyeska*, Section 1988 was passed to ensure that plaintiffs suing to enforce civil rights actionable under Section 1983 were not solely bearing the costs of cases that served the broader public good. *See* 121 Cong. Rec. 26,806 (1975) (statement of Sen. Tunney) ("The Supreme Court's recent *Alyeska* decision has required specific statutory authorization . . . . This bill simply applies the type of 'fee-shifting' provision . . . to the other civil rights statutes which do not already specifically authorize fee awards.").

The legislative history of Section 1988 is replete with remarks explaining that the legislative purpose of fee shifting was to ensure civil rights plaintiffs received competent representation regardless of their ability to pay. For instance, Section 1988's lead sponsor, Senator John Tunney, outlined the aim of the legislation in his remarks introducing the bill, stating, "If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire Nation, not just the individual citizen, suffers." 122 Cong. Rec. 33313 (1976) (remarks of Sen. Tunney). Courts have similarly recognized the legislative intent

behind Section 1988. In *Evans v. Jeff D.*, 475 U.S. 717 (1986), the Court noted that "Congress provided fee awards to ensure that there would be lawyers available to plaintiffs who could not otherwise afford counsel, so that these plaintiffs could fulfill their role in the federal enforcement scheme as 'private attorneys general,' vindicating the public interest." *Id*. at 745.

At the crux of Section 1988's fee-shifting provision is the reality that plaintiffs have a low or uncertain prospect of damages in many if not most civil rights cases. *See Riverside v. Rivera*, 477 U.S. 561, 577 (1986) ("[T]he contingent fee arrangements that make legal services available to victims of personal injuries would often not encourage lawyers to accept civil rights cases, which frequently involve substantial expenditures of time and effort but produce only small monetary recoveries."); *see also*, Andrew W. Stroud, *Comment, The Contingency Factor and the Attorney's Fees Awards Act of 1976: Legislative History Requires Continued Application*, 26 SANTA CLARA L. REV. 193, 200 (1986). A review of the legislative record reveals that Congress clearly intended Section 1988 to compensate attorneys in the types of civil rights cases that would not be economically viable under a contingency

fee model. *See eg.* S. REP. NO. 94-1011, at 6 (1976) (noting fees should not be reduced because the relief sought was nonpecuniary in nature).

Indeed, Section 1988 was likely primarily concerned with providing fee-shifting in cases seeking low or nonpecuniary relief because plaintiffs with cases that were likely to yield high damage awards could secure an attorney by agreeing to a contingent fee contract. *See* Joanna C. Schwartz, *Civil Rights Without Representation*, 64 WM. & MARY L. REV. 641, 654 (2023) (explaining that "[p]eople with high-damages cases could likely find lawyers to represent them because a portion of the large awards anticipated in these cases would adequately compensate the lawyers for their time."). Though Section 1988's legislative history is silent on contingency fee arrangements, the fee model was clearly viewed as an incomplete solution to the civil rights legal aid deficit that the statute sought to address. Susan M. Murray, *Attorneys' Fees in Civil Rights Cases: Contingent Fee Awards under Section 1988*, 17 PAC. L. J. 1275, 1289 (1986); *See also*, Schwartz at 654 ("[C]ourts and Congress came to believe that the contingency fee model did not adequately support the vindication of people's constitutional rights.").

Accordingly, withholding fees from attorneys because the plaintiff achieved a modest monetary award deeply conflicts with the legislative purpose of Section 1988. The statute was passed to encourage attorneys to take cases where the prospect of damages was uncertain, low, or nonexistent. Adopting Judge Eighmy's position would disincentivize attorneys from taking on cases that vindicate important civil rights and severely undermine the statutory goal of Section 1988.

### B. Advancing the Public Interest, Rather Than Recovering Damages Awards, is Frequently the Objective of Civil Rights Cases—Even When the Plaintiff Seeks Damages.

The public benefit of a civil rights case stems from the rights that the case vindicates rather than the specific type of relief that the case would obtain. *See Farrar v. Hobby*, 506 U.S. 103, 121 (1992) (O'Connor, J., concurring) (succeeding on a significant issue despite low damages would entitle plaintiffs to fees). Cases for injunctive and declaratory relief obviously serve the public interest by outlawing harmful practices and laws. *See Riverside*, 477 U.S. at 572. But civil rights cases solely seeking damage relief can be equally beneficial to the public. A plaintiff can be providing a public benefit even if they are only suing for monetary relief for themselves by deterring future illegal conduct. *Owen*

*v. City of Independence*, 445 U.S. 622, 651 (1980) (explaining that civil rights damage cases "serve as a deterrent against future constitutional deprivations"); *see also Carey v. Piphus,* 435 U.S. 247, 256 (1978) (noting that there is no future "deterrent more formidable than that inherent in the award of compensatory damages"); *Piper v. Oliver*, 69 F.3d 875, 877 (8th Cir. 1995) (noting that plaintiff who sought compensatory damages and won only nominal damages served "a public goal . . . in encouraging [the County Jail] to refashion their . . . procedures to avoid future illegality"). Even if the amount in controversy is low, damage cases on behalf of individual civil rights plaintiffs still advance the public interest by exposing government abuse and serving as a catalyst for political pressure to change elected leadership or improve practices. Joanna Schwartz, *The Tenacious Power of Constitutional Torts*, UCLA School of Law, Public Law Research Paper No. 25-11 at 30 (Jul. 2025);[1] *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 254 (1981) (noting cases for damages "focus taxpayer

---

[1]Available at:
https://papers.ssrn.com/sol3/papers.cfm?abstract_id=5182492#:~:text=Yet%20constitutional%20tort%20litigation%20remains,court%2C%20and%20commemorations%20of%20wrongdoing.

and voter attention upon the entity's malicious conduct," which can "promote accountability at the next election"). Accordingly, the rationale of fee shifting for the public good applies even if the plaintiff is only suing for damages for themselves.

Here, the Rockett family's case achieved success on a significant legal issue and furthered several public goals, including judicial accountability and deterring future violations of children's rights. Judge Eighmy's status as an elected judge only makes the public service of the Rocketts' victory all the more significant. Theirs is precisely the type of case Section 1988 was enacted to encourage.

### C. Plaintiffs Would Be Unable to Obtain Counsel if Attorneys Cannot Expect Fee Awards.

Many victims of civil rights abuses cannot afford an attorney. As is often the case, victims who seek justice for violation of their rights have limited wealth and come from marginalized communities. *See generally* LEGAL SERVICES CORPORATION, *The Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans* (2022).[2] Moreover, the costs

[2] Available at: https://justicegap.lsc.gov/resource/executive-summary/.

associated with litigating civil rights claims are significant, and could be prohibitive even to plaintiffs from more secure financial backgrounds. *See* Samuel R. Bagenstos, *Mandatory Pro Bono and Private Attorneys General*, 101 N.W. U. L. REV. 1459, 1460 (2007) ("[C]ivil rights enforcement is expensive, time consuming, and technical."); *see also Riverside*, 477 U.S. at 576 ("Congress enacted § 1988 specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process…These victims ordinarily cannot afford to purchase legal services at the rates set by the private market."). As Congress and courts have recognized, civil rights cases would not be brought if plaintiffs were forced to cover the cost of litigation. Withholding fees in this case not only unfairly presumes the Rocketts can shoulder the significant costs of this complex litigation but also could negatively impact the ability of prospective plaintiffs from being able to access justice.

## II. The District Court Did Not Abuse its Discretion in Calculating Reasonable Attorney's Fees for Appellees.

### A. District Courts Exercise Immense Discretion in Setting Attorney's Fee Awards.

Section 1988(b) grants the district courts broad "discretion" to award "a reasonable attorney's fee" to "the prevailing party" of any § 1983 action. 42 U.S.C. § 1988(b). Both this Court and the Supreme Court have long emphasized that "[a]ttorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse discretion." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). *See also Hensley*, 461 U.S. at 424 (1983) ("We reemphasize that the district court has discretion in determining the amount of a fee award."). This "deferential abuse of discretion standard has been and remains paramount to [this Court's] review of a district court's decision to grant or deny attorney's fees," no matter the size of the prevailing party's monetary damages award. *Piper v. Oliver,* 69 F.3d 875, 877 (8th Cir. 1995). Indeed, this Court applies the same deferential standard of review in "nominal damages case[s]" where the jury declines to award the prevailing plaintiff any compensatory damages at all. *Id.*

The district courts begin their inquiry by calculating an initial estimate of the reasonable fees, known as the lodestar, which is determined by multiplying the number of hours the prevailing party's attorney reasonably expended in the litigation by a reasonable hourly rate. *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 259-60 (8th Cir. 1991). *See also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("*Hensley* . . . directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended on successful claims."); *Vines v. Welspun Pipes Inc.*, 9 F. 4th 849, 856 (8th Cir. 2021) ("The district court must calculate the lodestar."). After calculating the lodestar, the district court "may then consider other factors to adjust the fee upward or downward." *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021). Chief among these factors is "the degree of success obtained," which, in a case seeking money damages, involves an assessment of "the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114-15 (1992) (quotation marks and citations omitted). But "[t]he amount of damages a plaintiff recovers is . . . *only one of many factors* that a court should consider in calculating

an award of attorney's fees." *Riverside*, 477 U.S. at 574 (1986) (emphasis added). Additional factors the district courts consider include "the time and labor required; . . . the novelty and difficulty of the questions; . . . [and] the skill requisite to perform the legal service properly." *St. Louis Fire Fighters Ass'n Int'l Ass'n of Fire Fighters Local 73 v. City of St. Louis, Mo.*, 96 F.3d 323, 332 n.10 (8th Cir. 1996) (quotation marks and citation omitted).

Although the district court must consider the plaintiff's degree of success when determining a reasonable attorney's fee, there is no formulaic percentage by which the court must reduce the fee award in light of the plaintiff's limited success. *See Marshall*, 8 F.4th at 713 ("[T]he Supreme Court has recognized there is no precise rule or formula for determining a reasonable fee award in light of a plaintiff's partial degree of success."). Accordingly, this Court "will not second-guess the degree of the reduction" that the district court assigns to the plaintiff's limited success. *G&K Servs. Co. v. Bill's Super Foods, Inc.*, 766 F.3d 797, 800 (8th Cir. 2014). So long as the district court accurately and expressly "consider[s] the relationship between the amount of the fee awarded and the results obtained," its principled

determination as to the amount or percentage by which to adjust the lodestar will not be disturbed. *Hensley*, 461 U.S. at 437. *See also Mayfield v. Haahr*, 122 F.4th 1046, 1059 (8th Cir. 2024) (rejecting argument that the fee award was excessive where the district court expressly accounted for discrepancies between the amounts of damages sought and actually awarded); *Jones v. Lockhart*, 29 F.3d 422, 424 (8th Cir. 1994) (reducing the district court's fee award, but only because the district court had based its award on the mistaken belief that the plaintiff had prevailed on two claims when he had in fact only prevailed on one).

### B. The District Court Applied the Proper Procedure to Arrive at a Reasonable Fee Award That is Consistent with Awards Granted in Similar Cases Involving Low or No Compensatory Damages.

Judge Eighmy insists that the District Court failed to adequately account for the fact that the Rocketts' compensatory damages award of $10,000 was much lower than the amount of damages they initially sought. *See* Op. Br. at 55. He argues that *Farrar* controls this case such that any fee award greater than "'low fees or no fees' . . . is not lawful." *Id*. (quoting *Farrar*, 506 U.S. at 115). This argument is doubly flawed.

First, this Court has never applied *Farrar* to deny or restrict attorney's fees where—as in this case— the plaintiff recovers actual compensatory damages—no matter how modest the award. *See, e.g.*, *Loggins v. Delo*, 999 F.2d 364, 368-69 (8th Cir. 1993) (rejecting argument that *Farrar* precluded attorney's fee award to plaintiff who sought "$50,000.00 in actual damages and $50,000.00 in punitive damages" but was awarded a mere "$102.50 in actual damages" because "[u]nlike the plaintiff in *Farrar*, who received only nominal damages, Loggins *recovered actual damages* and injunctive relief") (emphasis added). Second, even when evaluating the reasonableness of an attorney's fee award in a nominal damages case, the discrepancy between damages sought and awarded described in *Farrar* is only one factor in determining fees. *Piper*, 69 F.3d at 877 (citing *Jones*, 29 F.3d at 423 (8th Cir. 1994)). Instead, the district court has discretion in applying the factors set out in Justice O'Connor's *Farrar* concurrence. *See Thurairajah v. City of Fort Smith*, 3 F.4th 1017, 1030-31 (8th Cir. 2021) (affirming district court's grant of attorney's fees in nominal damages case after applying Justice O'Connor's *Farrar* factors to the facts of the case). Although the difference between the amount of

damages recovered and the amount sought is one *Farrar* factor the district courts consider in a nominal damages case, this factor is not the dramatic hurdle to recovery that Judge Eighmy imagines. This Court has approved fees under *Farrar* where there was close to a 1million dollar discrepancy between the damages recovered and damages sought. *See, e.g.*, *Jones*, 29 F.3d at 424 ("First, although there is a discrepancy between the amount of damages sought and the amount recovered ($860,000 sought, $2 recovered), it pales in comparison to the discrepancy presented in *Farrar*[.]"); *Thurairajah*, 3 F.4th at 1030 (similar). Thus, even if the Court were to agree that the Rocketts should have only been awarded $0 or $2 in nominal damages, *see* Op. Br. at 59, the discrepancy between those nominal damages and the amount the Rocketts requested would not justify the remarkable reversal Judge Eighmy requests.

Rather than applying *Farrar*, the District Court properly calculated the lodestar and then reduced the hourly rate and the overall fee to account for the Rocketts' limited success and modest damages award. Add. 011. The District Court dutifully documented its methodology and settled on an attorney's fee award that was well

within its broad discretion. *See id.* This Court has routinely affirmed attorney's fee awards calculated under similar circumstances and should do the same here. *See, e.g.*, *Mayfield*, 122 F.4th at 1059 (rejecting argument that attorney's fees be further reduced in light of Plaintiff's modest damages award, because "the district court *did* account for any discrepancy between the amount Plaintiff originally sought and the amount actually realized following trial when it adjusted downward the hourly rate for the attorney's fees") (emphasis added) (internal quotation marks omitted); *G&K Servs. Co.*, 766 F.3d at 800 (similar); *Marshall*, 8 F.4th at 713 (similar); *Ollis v. Hearthstone Homes, Inc.*, 495 F.3d 570, 576-77 (8th Cir. 2007) (affirming attorney's fee awarded in *nominal damages case* where the district court calculated the lodestar and "then reduced the award calculation by 25%" in light of the plaintiff's "failure to prove compensatory damages").

Judge Eighmy's remaining challenges to the attorney's fee award are similarly unavailing. He insists that the attorney's fees be proportional to the damages the Rocketts recovered, *see* Op. Br. at 58-59, despite clear precedent to the contrary. The Supreme Court has explicitly "reject[ed] the proposition that fee awards under § 1988

should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Riverside*, 477 U.S. at 574. Similarly, this Court has cautioned that although "a fee-setting court can take the amount of damages recovered into account[,] . . . proportionality cannot be used as the sole determinant of a lodestar-based fee award." *Marshall*, 8 F.4th at 713 (internal quotation marks and citations omitted). As the Supreme Court has explained, a strict proportionality rule risks leaving civil rights attorneys without adequate compensation by ignoring the fact that civil rights cases "frequently involve substantial expenditures of time and effort but produce only small monetary recoveries." *Riverside*, 477 U.S. at 577. To be sure, "because there are fixed costs of litigation" no matter the size of the damages award, "a rigid proportionality rule would allow defendants to inflict with impunity small losses on the people whom they wrong." *Marshall*, 8 F.4th at 713 (cleaned up).

An outsized emphasis on the size of the monetary damages poses a particular risk of unfair attorney compensation in cases like this one, where Judge Eighmy bears responsibility for expanding the scope—and cost—of litigation with interlocutory and post-judgment appeals to this

Court. *See id.* at 714 (affirming grant of attorney's fees, which the district court calculated by considering "the plaintiffs' degree of success . . . and . . . the extent to which the plaintiffs' expenses were engendered by [Defendant's] recalcitrance and sloppy bookkeeping"). *See also Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir. 2005) ("Given the nature of this litigation, which was hard fought by both sides, has been on-going for more than seven years, and is now in the middle of its third appeal, we cannot conclude merely from the size of the fee award that the award is unreasonable."). The complexity of the legal issues and immunity doctrines raised in this case further underscores the impropriety of focusing solely on the size of the Rocketts' damages award to determine the reasonable attorney's fee. *See Rivera*, 477 U.S. at 571 (noting with approval that the district "court paid particular attention to the fact that the case presented complex and interrelated issues of fact and law" in declining to make the attorney's fees proportionate to the modest damages award). Indeed, it would have been an abuse of discretion for the District Court to elevate the monetary damages factor so far above these other considerations and grant the sweeping reductions Judge Eighmy seeks. *See Lash v. Hollis*,

525 F.3d 636, 642 (8th Cir. 2008) (deciding the district court abused its discretion by making "global cuts" to the lodestar figure to account for the plaintiffs' modest degree of success, resulting in a fee award so low that "[o]n its face," it seemed to "represent an inadequate amount of time to investigate, prepare, brief, and try [the complex] civil rights case").

Judge Eighmy also incorrectly assumes that the modest size of the Rocketts' damages award is an indication of their limited success. The Supreme Court has cautioned against drawing such conclusions in § 1983 cases. *See Riverside*, 477 U.S. at 571 (citing with approval the district court's opinion that the modest "size of the jury award resulted from . . . the general reluctance of jurors to make large awards against police officers" and "did not imply that [plaintiffs'] success was limited"). Judge Eighmy insists that the Rocketts' $10,000 damages award necessarily means the jury questioned the extent of the Rocketts' injuries or Judge Eighmy's liability. Yet the modest damages award may just as well be explained by the jury's reluctance to bring in a large verdict against a powerful officer of the state. *See id.* at 571 n.5 (quoting the district court's observation that government officers regularly

prevail in § 1983 cases "because juries do not bring in verdicts against police officers very readily nor against cities").

Further, as both this Court and the Supreme Court have repeatedly emphasized, the vindication of core constitutional rights is not readily distilled to any particular monetary sum. *See, e.g, id.* at 574 ("Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms."); *Lowry v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 765 (8th Cir. 2008) (rejecting argument that plaintiffs who were awarded nominal damages achieved a "merely technical" victory because "the free speech right vindicated was not readily reducible to a sum of money."); *Piper*, 69 F.3d at 877 (recognizing that the plaintiff's "right to be free from illegal detention was a significant one; and [that] a public goal had been served by [the plaintiff's] victory in encouraging appellants to refashion their . . . procedures to avoid future illegality").

Here, the Rocketts' counsel secured a significant victory for both their clients and the broader public by successfully holding a sitting judge accountable for violating the Constitution. The jury found that

Judge Eighmy unlawfully jailed the Rockett children—who were neither accused nor even suspected of any crime—in blatant disregard of their Fourth Amendment rights. This case's verdict is a hard-won and powerful affirmation that no one, not even a judge, is above the law. The Rocketts' lawsuit "provide[d] a forum for exposing official misconduct," which in turn can "help[] induce governmental entities to institute policies protective of civil rights." *Lash*, 525 F.3d at 643. These non-monetary effects increase the value of the Rocketts' lawsuit far beyond the sum of damages they received.

The District Court did not abuse its discretion in calculating a reasonable attorney's fee that accounted for both the significant time and effort necessary to win this complex case on the one hand, and the Rocketts' modest damages award on the other. The District Court's final award—a 22% reduction from the attorney's fees requested, *see* Add. 009, 011—is consistent with awards granted in similar low and even nominal damages cases. *See, e.g.*, *Ollis*, 495 F.3d at 576-77 (affirming fee award of the lodestar figure reduced by 25% in a nominal damages case); *Orduno v. Pietrzak*, 932 F.3d 710, 720 (8th Cir. 2019) (affirming 20% reduction of requested fees to account for the limited success of the

plaintiff, who “exposed misconduct by a police chief” and was awarded punitive damages but “failed to demonstrate that she suffered any actual damages”); *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002) (“The district court did not abuse its discretion in reducing the lodestar by 15% to reflect the lack of complete success.”). This Court should affirm.

## CONCLUSION

For the foregoing reasons, in addition to the reasons in Appellees' Brief, the judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Lauren Bonds
Lauren Bonds
Eliana Machefsky
NATIONAL POLICE
ACCOUNTABILITY
PROJECT
1403 Southwest
Kansas City, KS
66103
(504) 220-0401

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that, pursuant to Federal Rule of Civil Procedure 32, this brief complies with the type-volume, typeface, and type style limitations because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. This brief contains 4,361 words and is under the 6,500 word limit provided by Federal Rule of Civil Procedure 29(a)(5). The electronic copy of this brief has been scanned for viruses, and found to be free therefrom.

/s/ Lauren Bonds

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing has been served electronically to counsel of record via operation of the Court's CM/ECF system this 31st day of July, 2025.

/s/ Lauren Bonds