No. 25-1664

# United States Court of Appeals
## For the Eighth Circuit

BROOKLYN ROCKETT and KADAN ROCKETT,
*Plaintiffs-Appellees*,

v.

ERIC EIGHMY, in his individual capacity only,
*Defendant-Appellant*.

INSTITUTE FOR JUSTICE and NATIONAL POLICE ACCOUNTABILITY PROJECT,
*Amici on Behalf of Appellee(s)*

On Appeal from the United States District Court for the Western District of Missouri, the Honorable M. Douglas Harpool

## REPLY BRIEF

**ANDREW BAILEY**
Missouri Attorney General

Maria Lanahan, #65956 (MO)
*Principal Deputy Solicitor General*
815 Olive Street, Ste. 200
St. Louis, MO 63101
Tel: (314) 340-4978
Fax: (573) 751-0774
Maria.Lanahan@ago.mo.gov
*Counsel for Defendant-Appellant*

## TABLE OF CONTENTS

**Table of Contents** ........ i

**Table of Authorities** ........ iii

**ARGUMENT** ........ 1

I. This Court should reverse the judgment against Judge Eighmy because he has qualified immunity, as there was either no Fourth Amendment violation or such violation was *not clearly established.* ........ 3

A. Judge Eighmy did not waive qualified immunity. ........ 4

B. Judge Eighmy did not violate the Fourth Amendment. ........ 6

1. There was no seizure. ........ 6

a. Judge Eighmy did not seize the teenagers when he said "follow me" and the teenagers obeyed. ........ 7

b. Judge Eighmy did not seize the teenagers when he said "lock them up," and an employee of the Juvenile Division who did not work for Judge Eighmy placed them in holding cells for 40 minutes or less while Judge Eighmy remained in the room. ........ 8

2. Neither alleged seizure was unreasonable. ........ 9

C. Even if Judge Eighmy violated the Fourth Amendment, this violation was not clearly established. ........ 15

1. Seizure was not clearly established. ........ 16

a. It is not clearly established that an unarmed judge saying "follow me" is a seizure, especially when the teens knew they were free to leave with their mother. ........ 16

b. It is not clearly established that a judge saying "lock them up" to a Juvenile Division employee he does not supervise is a seizure *by the judge*. ........ 16

2. *Unreasonableness* was not clearly established. ........ 17

II. This Court should reverse the judgment against Judge Eighmy because he is entitled to judicial immunity. .................. 18

A. This Court is not governed by *Rockett I* because that appeal was based on complaint facts, and this appeal is based on trial facts. .................................................................. 18

B. Judge Eighmy has judicial immunity because his actions were judicial in nature and he did not act in complete absence of all jurisdiction. .................................................. 20

1. Judge Eighmy's actions were judicial. ................................ 20

2. Judge Eighmy's actions were not taken in complete absence of all jurisdiction. ................................................ 22

III. This Court should reverse the judgment because, if Judge Eighmy lacks judicial immunity, he was not acting under color of law. ..................................................................... 23

A. Judge Eighmy did not waive his color-of-law argument. ......... 23

B. Judge Eighmy may argue in the alternative. ........................... 24

C. If Judge Eighmy was not acting in judicial capacity, he was not acting under color of law as §1983 requires. ...................... 25

IV. This Court should reverse damages. ............................................ 27

A. Sending back the waived nominal-damages instruction was reversible error; this Court should remand with instructions to reduce damages to $0. ...................................... 27

B. In the alternative, this Court should remand with instructions to reduce damages to $1 per plaintiff instead of $5,000 per plaintiff. ........................................................... 29

V. This Court should reverse the attorney's fees award. ................... 31

**Conclusion** ........................................................................................ **33**

**Certificate of Compliance** ................................................................ **34**

**Certificate of Service** ....................................................................... **35**

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Beard v. Flying J, Inc.*,
266 F.3d 792 (8th Cir.2001)....................28

*Brower v. Cnty. of Inyo*,
489 U.S. 593 (1989)....................9

*Burke v. Lippert Components, Inc.*,
112 F.4th 574 (8th Cir.2024)....................24

*California v. Hodari D.*,
499 U.S. 621 (1991)....................7, 8

*Corpus v. Bennett*,
430 F.3d 912 (8th Cir.2005)....................30

*Crutcher v. MultiPlan, Inc.*,
22 F.4th 756 (8th Cir.2022)....................4

*Davis v. Simon Contractors, Inc.*,
117 F.4th 994 (8th Cir.2024)....................29

*De Rubio v. Herrera*,
541 S.W.3d 564 (Mo.App.2017)....................14, 22

*EEOC v. Drivers Mgmt., LLC*,
142 F.4th 1122 (8th Cir.2025)....................29

*Engel Sheet Metal Equip., Inc. v. Shewman*,
307 S.W.2d 694 (Mo.App.1957)....................14, 21

*Exxon Mobil Corp. v. Allapattah Servs. Inc.*,
545 U.S. 546 (2005)....................31

*Farrar v. Hobby*,
506 U.S. 103 (1992)....................3, 31, 32

*Garcia v. Tyson Foods, Inc.*,
770 F.3d 1300 (10th Cir.2014)....................32, 33

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)........................................................................4

*Heartland Academy Community Church v. Waddle*,
595 F.3d 798 (8th Cir.2010)..........................................................12

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)......................................................................32

*In re H.B.*,
165 S.W.3d 578 (2005)..................................................................22

*In re Marriage of Sutton*,
233 S.W.3d 786 (Mo.App.2007) ..................................... 14, 20, 21

*Interest of Z.N.O v. R.O.*,
566 S.W.3d 609 (Mo.App.2018) ......................................................9

*K.W.P. v. Kansas City Public Schools*,
931 F.3d 813 (8th Cir.2019)....................................................12, 14

*Ledbetter v. Helmers*,
133 F.4th 788 (8th Cir.2025) ..................................... 5, 18, 19, 24

*Martin v. Turner*,
73 F.4th 1007 (8th Cir.2023) ..........................................................15

*Maxfield v. Cintas Corp., No. 2*,
487 F.3d 1132 (8th Cir.2007)..................................................18, 19

*Miller v. Albright*,
657 F.3d 733 (8th Cir.2011)..........................................................27

*New Hampshire v. Maine*,
532 U.S. 742 (2001)......................................................................25

*Philadelphia Indem. Ins. Co.*,
737 F.3d 1188 (8th Cir.2013)..........................................................24

*Rockett as next friend of K.R. v. Eighmy*,
71 F.4th 665 (8th Cir.2023) ..................................... 19, 20, 31

*Roe v. Humke*,
128 F.3d 1213 (8th Cir.1997)....................................................25, 26, 27

*Saunders v. Thies*,
38 F.4th 701 (8th Cir.2022)....................................................17

*Schutter v. Seibold*,
632 S.W.3d 820 (Mo.App.2021)....................................................23

*Sherman v. Winco Fireworks, Inc.*,
532 F.3d 709 (8th Cir.2008)....................................................5

*Sophian Plaza Ass'n v. City of Kansas City*,
584 S.W.3d 784 (Mo.2019)....................................................23

*Stanley v. Finnegan*,
899 F.3d 623 (8th Cir.2018)....................................................12

*Stanley v. Hutchinson*,
12 F.4th 834 (8th Cir.2021)....................................................12

*Thunderhawk v. Cnty. of Morton, North Dakota*,
701 F.Supp.3d 849 (D.N.D. 2023)....................................................15

*Torres v. Madrid*,
592 U.S. 306 (2021)....................................................6

*Westcott v. Crinklaw*,
133 F.3d 658 (8th Cir.1998)....................................................28, 29, 31

*Williams v. Kaufman Cnty.*,
352 F.3d 994 (5th Cir.2003)....................................................30

*Willis v. Mills*,
141 F.4th 904 (8th Cir.2025)....................................................10, 11

**Statutes**

42 U.S.C. §1983....................................................24, 25, 27

Mo.Rev.Stat. §211.031.1....................................................9, 10

Mo.Rev.Stat. §211.061 .......... 10, 11

Mo.Rev.Stat. §211.063 .......... 22

Mo.Rev.Stat. §211.401 .......... 22

**Rules**

F.R.A.P. 32 .......... 34

F.R.Civ.P. 7 .......... 4

F.R.Civ.P. 8 .......... 4, 25

F.R.Civ.P. 12(b) .......... 5

F.R.Civ.P. 51 .......... 27, 28

Mo.Sup.Ct.R. 110.01 .......... 9

Mo.Sup.Ct.R. 127.01(a), (a)(2)–(3) .......... 9

## ARGUMENT[1]

Missouri law expressly provides the State may take into custody children who disobey reasonable and lawful directions of their parents and who are beyond parental control. When probable cause exists to believe this is true, such children may be taken into custody without a warrant and held for up to 24 hours without a detention hearing. That is what happened here. The Juvenile Office took into custody two teenaged children who disobeyed the reasonable and lawful directions of their mother and who were beyond her control. They were held for less than one hour. Thus, there was no Fourth Amendment violation.

Not only was there no seizure by Judge Eighmy (seizure was by a Juvenile Officer, plus the teens knew they could leave with their mother)—any alleged seizure by Judge Eighmy was reasonable because it followed Missouri law. Alternatively, if this Court disagrees on what Missouri Law permits or thinks that Missouri Law violates the Fourth Amendment (it should not), qualified immunity exists under the "clearly

[1] All facts referenced in this brief are in the light most favorable to the Plaintiffs.

established" requirement. The Rocketts cite no cases suggesting that following Missouri law (or what Missouri law seems to permit) violates the Fourth Amendment. This Court should grant qualified immunity to Judge Eighmy and reverse the district court's judgment on this ground alone.

There are more reasons to reverse. For instance, Judge Eighmy is entitled to judicial immunity or, if not, he was not acting under color of law. If Judge Eighmy was not acting as a judge, it is unclear what other state official he was acting as.

Finally, this Court should reverse the award of attorney's fees. The jury determined there were no damages. The only reason it later awarded damages was because the district court wrongly sent back a nominal damages instruction that Plaintiffs waived. This Court should still reverse attorney's fees under the U.S. Supreme Court case *Farrar v. Hobby*, which provides that it is typically an abuse of discretion to award attorney's fees when the plaintiff has only been awarded nominal damages or experienced very limited success. 506 U.S. 103, 115 (1992). Awarding attorney's fees upwards of $325,000 was an abuse of discretion

because the $5,000 in damages each Plaintiff recovered could have been won in small claims court.

This appeal is not governed by a prior panel opinion of this Court because that opinion never addressed attorney's fees, damages, qualified immunity, or "color of law." Though it addressed judicial immunity, it did not do so under trial facts, only under complaint facts.

## I. This Court should reverse the judgment against Judge Eighmy because he has qualified immunity, as there was either no Fourth Amendment violation or such violation was *not clearly established.*

This Court should reverse the judgment because Judge Eighmy should have been granted qualified immunity on the Fourth Amendment unreasonable seizure claim for three reasons: (1) Judge Eighmy did not seize the teens. Until the teens were placed in holding cells in the Juvenile Office, there was no seizure. And Judge Eighmy was not the person who placed them in cells—an unnamed officer from the Juvenile Office did that. Judge Eighmy never seized the teens before they were placed in cells because they knew they were free to leave with their mother. (2) To the extent that Judge Eighmy seized the teens (he did not), such seizure was reasonable because Missouri Law permits children to be brought into custody without a warrant when there is probable cause to

believe that they have disobeyed the reasonable and lawful directions of their parents and are beyond their parental control. They may, as here, be held without a hearing for up to 24 hours on this basis. (3) It is not *clearly established* that Judge Eighmy either seized the teens or that such seizure was unreasonable. The Rocketts point to no case holding that following Missouri law on this issue violated the Fourth Amendment.

### A. Judge Eighmy did not waive qualified immunity.

The Rocketts claim Judge Eighmy waived qualified immunity by not raising it in his motion to dismiss or his interlocutory appeal following denial of that motion. Appellee.Br.26. This was not waiver.

First, it is not true (as Rocketts argue) that "[a]ffirmative defenses must be pled at the earliest opportunity." Appellee.Br.26. That is neither in F.R.Civ.P. 8(c) nor in *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)—two authorities Rocketts cite. Appellee.Br.26. Certainly, failure to plead affirmative defenses results in waiver. *See Crutcher v. MultiPlan, Inc.*, 22 F.4th 756, 765 (8th Cir.2022). But that did not happen here. Judge Eighmy's Answer pled qualified immunity. App. 0358; R. Doc. 68, at 21

("[A]ctions alleged in the complaint are protected by…qualified immunity."). Neither a motion to dismiss nor an appeal are "pleadings." F.R.Civ.P. 7(a) (listing pleadings).

The Rocketts also argue that Judge Eighmy waived qualified immunity by failing to raise it in a motion to dismiss. But they cite no authority for this argument. The F.R.Civ.P. allow, but do not *require* parties to raise affirmative defenses by motion. F.R.Civ.P. 12(b) ("Every defense…must be asserted in the responsive pleading…. But a party *may* assert the following defenses by motion." (emphasis added)). Thus, Judge Eighmy did not waive qualified immunity by failing to raise it in his motion to dismiss.

The Rocketts also suggest that Judge Eighmy somehow waived his claim to qualified immunity by arguing it at summary judgment, losing on it, and failing to appeal it immediately before the case went to trial. Appellee.Br.27. This is wrong. The only case they cite is *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 718 (8th Cir.2008), which is about failure to plead affirmative defenses in a complaint. The Rocketts' rule does not exist, and for good reason—the facts at summary judgment and at trial are necessarily different. *See Ledbetter v. Helmers*, 133 F.4th 788,

794–95 (8th Cir.2025) ("Regardless of whether the record after trial is better for [a particular party], it is necessarily different than at summary judgment"). Thus, Judge Eighmy did not waive his qualified immunity defense by losing on it at summary judgment and not appealing.

### B. Judge Eighmy did not violate the Fourth Amendment.

#### 1. There was no seizure.

The record lacks evidence that Judge Eighmy physically touched the teenagers. So the question becomes whether Judge Eighmy seized them some other way. *See Torres v. Madrid*, 592 U.S. 306, 311 (2021) ("[S]eizure…can take the form of physical force or a show of authority that in some way restrains the liberty of the person." (cleaned up)).

The two alleged seizures are:

(1) Judge Eighmy seized the teenagers when he said, "follow me," and they followed him down to the Juvenile Office; and

(2) Judge Eighmy seized the teenagers when he said, "Lock them up"[2] to an employee of the Juvenile Office that Judge Eighmy did not supervise, and that person placed the teens in holding

---

[2] The Appellee Brief claims Judge Eighmy told the teens they would "never see either of their parents again." Appellee.Br.7. Neither their citation nor the trial transcript says that.

> cells for 40 minutes or less, while Judge Eighmy remained in the room.

Appellee.Br.31 ("The instruction defined seizure…as Judge Eighmy 'personally escorting [the teens] to the Taney County Juvenile Office, *and/or* had [the teens] placed with the Taney County Juvenile Office holding cells."). The first action was not seizure. The second was not seizure *by Judge Eighmy*.

#### a. Judge Eighmy did not seize the teenagers when he said "follow me" and the teenagers obeyed.

Judge Eighmy did not seize the teens when he said "follow me" and they did. "A person has been seized…only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991). Here, a reasonable person would have known that he was free to not follow Judge Eighmy and to leave with his mother. *Id.* at 628 ("[T]he test for…show of authority is…objective…: not whether the citizen perceived…he was being ordered to restrict his movement, but whether the [official's] words and actions would have conveyed that to a reasonable person." (cleaned up)). The circumstances surrounding Judge

Eighmy's "follow me" statement were that the teenagers refused to leave with their mother and Judge Eighmy continuously asked them to do so. When Judge Eighmy said "follow me" and led them downstairs to the Juvenile Office, a reasonable teenager would have known that he was still free to leave with his mother. Kadan admitted this. TT88:9–14 (while sitting in Juvenile Office, but before entering holding cell, Kadan "knew the only way to get out of it was to just give in and go with [his] mother").

In their Brief, the Rocketts ignore the argument that they were free to leave with their mother. If a teenager is not physically seized and knows he is free to leave with his parent, there is no seizure.

**b. Judge Eighmy did not seize the teenagers when he said "lock them up," and an employee of the Juvenile Division who did not work for Judge Eighmy placed them in holding cells for 40 minutes or less while Judge Eighmy remained in the room.**

Judge Eighmy also did not seize the teens because he did not place them in holding cells or even touch them—an employee of the Juvenile Office did. TT95:7–15. The most Judge Eighmy did was say, "lock them up" to the Juvenile Office employee. *Id.* The Rocketts identify no case suggesting it is a seizure for a person to merely suggest seizure to another

person who is free to disobey the suggestion. Thus, Judge Eighmy did not seize the teens because *he* never touched them.

**2. Neither alleged seizure was unreasonable.**

Even if the teens were seized (they were not), neither seizure was *unreasonable*, which is prerequisite for a Fourth Amendment violation. "Seizure alone is not enough for §1983 liability; the seizure must be unreasonable." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989).

Both walking the teens down to the Juvenile Office and having them placed in holding cells was reasonable. Missouri law provides: "[t]he Juvenile Court…shall have exclusive original jurisdiction in proceedings…[i]nvolving any child…alleged to be in need of care and treatment because…[t]he child disobeys the reasonable and lawful directions of his or her parents…and is beyond their control." §211.031.1, .1(2), .1(2)(b). The "Missouri Supreme Court has promulgated rules governing the scope of each Section 211.031 proceeding." *Interest of Z.N.O v. R.O.*, 566 S.W.3d 609, 616 (Mo.App.2018); Mo.Sup.Ct.R. 110.01. Those rules exist in Missouri Supreme Court Rules 110–130. "A juvenile may be taken into judicial custody under subdivision (2)…of subsection 1 of section 211.031" (the beyond-parental-control portion) "pursuant to the laws

of arrest applicable to adults" or "by a juvenile officer as authorized by law." Mo.Sup.Ct.R. 127.01(a), (a)(2)–(3).

That is exactly what happened here. The juvenile officer took the juveniles into custody. Further, laws of arrest applicable to adults state that persons may be taken into custody without a warrant when there is "probable cause…to believe…[they] ha[ve] committed or [are] committing an offense" given "the totality of the circumstances at the time of the arrest." *Willis v. Mills*, 141 F.4th 904, 911 (8th Cir.2025); *see also* §211.061.1 ("child" may be "taken into custody with or without warrant").

Here, the offense was that the teens were "in need of care and treatment because…[they] disobey[ed] the reasonable and lawful directions of" their mother "and [were] beyond [her] control." §211.031.1, .1(2), .1(2)(b). Probable cause existed to believe this was the case. Consequently the Rocketts were "taken into judicial custody under subdivision (2)…of subsection 1 of section 211.031" (the beyond-parental-control portion).

When a child is "taken into custody…without warrant for an offense, the child, together with any information concerning the child and

the personal property found in the child's possession, shall be taken immediately and directly before the juvenile court *or delivered to the juvenile officer…acting for the child*." §211.061.1. That too happened here. When the teens were placed in cells, their personal property—like Kadan's bracelet—was delivered to the juvenile officer. TT96:2–5.[3] If the teens had not recanted, they could have been held for up to 24 hours without a court ordering a detention hearing. *See* §211.061.4 ("A juvenile shall not remain in detention for a period greater than twenty-four hours unless the court orders a detention hearing."). As it was, the teens were held for less than an hour—much less time than the 24 hours they lawfully could have been. *See id.*; Appellant.Br.7 & n.4.

All this was reasonable because it is permitted under Missouri law when children are beyond control of their parents, as here. The Rocketts have no response to this. Their response (and amici's) is based on feelings, not law. They argue it is obviously wrong to detain teens like this.

[3] The teens did not have to take off all their clothes, contrary to what the Appellee Brief makes it sound like. They took off their shoes, socks, bracelet, maybe a jacket, and emptied their pockets. That's it. TT130:14–22, 196:23–197:2.

Appellee.Br.30. That ignores Missouri law, which identifies the teens' actions as detainable offenses.

The Rocketts claim it violates the Fourth Amendment to seize children without reasonable suspicion under *Stanley v. Finnegan*, 899 F.3d 623, 628 (8th Cir.2018), and *Heartland Academy Community Church v. Waddle*, 595 F.3d 798, 809 (8th Cir.2010). Appellee.Br.28. But as discussed, there was not only reasonable suspicion but probable cause to believe the teens were "beyond parental control."[4]

Next, the Rocketts argue that being placed in a holding cell is a seizure. Appellee.Br.28. Maybe so, but that does not mean Judge Eighmy seized them, as the person who placed them in cells was not subordinate to Judge Eighmy.

The Rocketts claim the seizure was unreasonable, citing the handcuffing of a student at school in *K.W.P. v. Kansas City Public Schools*, 931 F.3d 813, 827 (8th Cir.2019), but *K.W.P.* is inapposite. *K.W.P.* does not

---

[4] At first blush, *Finnegan* seems to say children cannot be removed from parents' custody without reasonable suspicion of child abuse, 899 F.3d at 627, but *Stanley v. Hutchinson* clarifies this Court has "never held that children have a Fourth Amendment right not to be separated from their parents absent probable cause to believe the parents are guilty of child abuse." 12 F.4th 834, 842 (8th Cir.2021). *Finnegan* is limited to the child-abuse context, inapplicable here.

address a case, as here, where there was probable cause the teenagers committed a detainable offense.

The fact it was a judge (but not acting as judge, according to Rocketts) who allegedly seized the teens does not affect reasonableness. Missouri law permits seizures of children beyond parental control and without limiting who may seize them. Thus, the allegation that Judge Eighmy seized the teens does not change the analysis.

The Rocketts claim seizure was unreasonable because Judge Eighmy was not enforcing a divorce settlement, as no judgment existed in the record. This argument fails for two reasons. First, the agreed-upon parenting plan was filed on October 8, 2019—the date of the incident. *Rockett v. Rockett*, No.07AF-CV00944-02 (Mo.Cir.Oct. 8, 2019) (10/08/2019: "Parenting Plan Filed," noting "Agreed Upon Parenting Plan").[5] Second, even if Judge Eighmy was not enforcing an order, the teens still disobeyed the lawful and reasonable commands of their mother and were beyond parental control, so Missouri law allowed them to be taken into custody.

---

[5] www.courts.mo.gov/cnet/cases/newHeader.do?inputVO.caseNumber=07AF-CV00944-02&inputVO.courtId=CT46&inputVO.isTicket=false#docket

The Rocketts claim the alleged seizure was unreasonable because Missouri courts cannot hold children in contempt, citing *De Rubio v. Herrera*, 541 S.W.3d 564, 574 (Mo.App.2017). Appellee.Br.33. But *De Rubio*'s basis for that proposition is unclear, citing neither case nor statute. *Id.* Nor is this proposition a *De Rubio* holding.[6] Thus, *De Rubio* does not overcome the holding in *Engel Sheet Metal Equip., Inc. v. Shewman*, 307 S.W.2d 694, 696 (Mo.App.1957), that courts may hold nonparties in contempt when they participate in acts in violation of a court order. The Rocketts claim *Engel* is different because it dealt with an injunction. But injunctions are not materially different from court entry of parenting plans—also court orders. *See In re Marriage of Sutton*, 233 S.W.3d 786, 793–94 (Mo.App.2007). Even if Judge Eighmy could not hold the teens in contempt, they still could be lawfully seized under Missouri law because they were beyond parental control. The argument that the alleged seizures were "obviously" unreasonable is based on feelings, not law. Thus, this Court should grant qualified immunity.

---

[6] The case addressed whether the circuit court erred in denying a mother's request for an Order of Special Findings of Fact, which would permit her son to apply to the federal government for "Special Immigrant Juvenile" status. *De Rubio*, 541 S.W.3d at 569–74.

### C. Even if Judge Eighmy violated the Fourth Amendment, this violation was not clearly established.

Even assuming Judge Eighmy violated the Fourth Amendment (he did not), the violation was not clearly established at the time of the incident. Throughout Appellee Brief, Rocketts suggest Judge Eighmy must identify a case showing his conduct was constitutional. That is not how qualified immunity works. The non-governmental plaintiff must show the government actor's conduct was unconstitutional *and* that it was clearly established as unconstitutional at the time of the incident. *Martin v. Turner*, 73 F.4th 1007, 1010 (8th Cir.2023). Specifically, "a plaintiff" must "point to existing circuit precedent that involves sufficiently similar facts to squarely govern the officer's conduct in the specific circumstances at issue." *Id.* "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition…." *Id.*

This case's unprecedented fact pattern weighs against the Rockett's claim that the alleged violation was clearly established. *See, e.g.*, *Thunderhawk v. Cnty. of Morton, North Dakota*, 701 F.Supp.3d 849, 860 (D.N.D. 2023) ("While Plaintiffs cite…cases to establish…general principles…, Plaintiffs have not cited to any case or body of cases that establish

the road closure under the unique and unprecedented circumstances of this case…fail strict or intermediate scrutiny.”).

### 1. Seizure was not clearly established.

There are two potential seizures: (1) telling the teens “follow me”; and (2) saying “lock them up,” after which a Juvenile Office employee who did not work for Judge Eighmy placed them in Juvenile Department holding cells for less than an hour.

#### a. It is not clearly established that an unarmed judge saying “follow me” is a seizure, especially when the teens knew they were free to leave with their mother.

The Rocketts cite no Eighth Circuit or Supreme Court case in which a judge saying “follow me” to two teenagers is a seizure, especially when those teens knew they were free to leave with their mother. Thus, this action by Judge Eighmy is not clearly established as a Fourth Amendment violation, meaning Judge Eighmy gets qualified immunity for it.

#### b. It is not clearly established that a judge saying “lock them up” to a Juvenile Division employee he does not supervise is a seizure *by the judge*.

The Rocketts cite no Eighth Circuit or Supreme Court case in which a judge saying “lock them up” to a Juvenile Division employee he does

not supervise is a seizure *by the judge.* There are cases stating that supervisors can be liable for employees, but Judge Eighmy was not the Juvenile Division employee's supervisor. *See Saunders v. Thies*, 38 F.4th 701, 716 (8th Cir.2022). Thus, Judge Eighmy is entitled to qualified immunity for the holding-cell alleged seizure.

**2. *Unreasonableness* was not clearly established.**

The Rocketts cite no Eighth Circuit or Supreme Court precedent suggesting that either action ("follow me" or "lock them up") were unreasonable. This situation simply has not come up. The Rocketts cite no cases involving a government actor escorting teenagers to the Juvenile Division because they were beyond parental control and would not go home from the courthouse with their parent. Neither do the Rocketts cite any cases in which teenagers beyond parental control were placed in holding cells in the Juvenile Division for less than an hour when they refused to go home with their parent. Rather, Missouri statute specifically allows this, suggesting that the State and its citizens believe that disobeying the reasonable and lawful commands of one's parents and being beyond their control is a detainable offense. *See supra* Part I.B.2.

Because the Rocketts cannot point to a case finding a violation in a similar situation, Judge Eighmy gets qualified immunity.

## II. This Court should reverse the judgment against Judge Eighmy because he is entitled to judicial immunity.

The Rocketts claim Judge Eighmy cannot be granted judicial immunity under "law of the case" and "prior-panel" rules. Not so. "[L]aw-of-the-case…posits that when a court decides upon a rule of law, the decision should continue to govern the same issues in subsequent stages of the same case." *Ledbetter v. Helmers*, 133 F.4th 788, 794–95 (8th Cir.2025) (cleaned up). The prior-panel rule states that "one panel of this court has no authority to overrule an earlier decision of another panel." *Maxfield v. Cintas Corp., No. 2*, 487 F.3d 1132, 1135 (8th Cir.2007). "This rule reinforces…law-of-the-case…when a case returns to a panel of this court after a prior decision." *Id.*

### A. This Court is not governed by *Rockett I* because that appeal was based on complaint facts, and this appeal is based on trial facts.

The Rocketts claim Judge Eighmy's judicial-immunity claim is foreclosed by this Court's prior *Rockett v. Eighmy* appeal. Appellee.Br.2, 34. Not so. The Rocketts argue that the facts at trial are the same as those alleged in the complaint (and therefore the same as those at issue in the

first appeal). Their own brief disagrees—they characterize the first appeal as about whether Judge Eighmy gets judicial immunity when he "personally escorted the kids to jail, stood there while they remove their clothes and belongings, and personally came back an hour later to release them." *Id.* at 34. They characterize this second appeal as about whether Judge Eighmy gets judicial immunity when "a juvenile officer patted down the children and placed the children in the jail in Judge Eighmy's presence." *Id.* Those are not the same. This Court previously ruled on whether Judge Eighmy himself could place the teens in jail. *Rockett as next friend of K.R. v. Eighmy*, 71 F.4th 665, 672 (8th Cir.2023) (*Rockett I*) ("[H]ere,…Judge Eighmy personally locked them up himself."). It did not determine whether Judge Eighmy could have ordered someone else to. *Id.* ("[E]ven assuming Judge Eighmy could have ordered *someone else* to take the kids to jail, he could not put them there *himself*."). Plus, the teens were not placed in "jail"—they were temporarily placed in Juvenile Office holding cells. TT91:15–95:15. Further, facts at trial necessarily differ from facts at motion-to-dismiss stage. *See Ledbetter*, 133 F.4th at 794–95. Thus, this Court is not bound by *Rockett I*'s judicial-immunity decision.

### B. Judge Eighmy has judicial immunity because his actions were judicial in nature and he did not act in complete absence of all jurisdiction.

Judges have judicial immunity in all but "two…circumstances: (1) when a judge takes nonjudicial actions; and (2) when the action is judicial, but is done in the complete absence of all jurisdiction." *Rockett I*, 71 F.4th at 670 (cleaned up).

#### 1. Judge Eighmy's actions were judicial.

"The overall focus" in determining whether an action is judicial "is on distinguishing between judicial acts and the administrative, legislative, or executive functions…judges may on occasion perform." *Id.* at 671 (cleaned up).

Because Judge Eighmy did not put the teens in cells himself, this Court's prior holding that "judges do not do double duty as jailers" is inapposite. *See id.* at 672. Judge Eighmy's actions were judicial for two independent reasons: (1) he was enforcing a court-entered parenting plan—a court order, *In re Marriage of Sutton*, 233 S.W.3d at 793–94,[7] and

[7] *Rockett v. Rockett*, No.07AF-CV00944-02 (Mo.Cir.Oct. 8, 2019) (10/08/2019: "Parenting Plan Filed," noting "Agreed Upon Parenting Plan"), at www.courts.mo.gov/cnet/cases/newHeader.do?inputVO.caseNumber=07AF-CV00944-02&inputVO.courtId=CT46&inputVO.isTicket=false#docket.

(2) judges may ask the Juvenile Division to intervene in custody cases. TT240:2–14, 472:6–17.

The Rocketts argue Judge Eighmy was not enforcing a court order or judgment. Appellee.Br.35. They argue: (a) "a judgment must be denominated as such," Appellee.Br.31; (b) there was no settlement judgment, *id.* at 31–32; (c) "[n]o one…invoked the judicial machinery," *id.* at 32; (d) the teens were not parties, not present in the courtroom, and Missouri law prevents children from being held in contempt in a custody case, *id.* at 33, and (e) Judge Eighmy admitted he was not holding the teens in contempt, *id.* at 35.

Regarding (a) and (b), Judge Eighmy enforced a court order—a parenting plan. *In re Marriage of Sutton*, 233 S.W.3d at 793–94. Regarding (c), they cite no case suggesting courts acting of their own volition cease acting judicially. Regarding (d), nonparties may be held in contempt. *Engel*, 307 S.W.2d at 696. Regarding (e), Judge Eighmy functionally held the teens in contempt even if not formally.

Regarding (2), the Rocketts claim: "[i]t does not matter…whether hypothetically judges could ask the juvenile office to intervene in custody cases without probable cause." *Id.* at 35. Here, probable cause existed

that the Rocketts were beyond parental control. Second, the Rocketts do not explain why they think it does not matter that judges can ask juvenile officers to intervene in custody cases. The Rocketts cite no authority suggesting judges cannot do this. And Missouri statutes expressly allow it: "The juvenile officer shall:…Take charge of children before and after the [probable cause] hearing as may be ordered by the court." Mo.Rev.Stat. §211.401; *see also* §211.063 (when probable-cause hearing required).

The Rocketts also argue Judge Eighmy could not enforce the divorce custody settlement order because this would have required him to act as a law enforcement officer. But holding parties in contempt is not an executive action, but a judicial one. The same goes for asking for help from the Juvenile Office, an executive office. *In re H.B.*, 165 S.W.3d 578, 581 (2005) (juvenile office contains prosecutors).

#### 2. Judge Eighmy's actions were not taken in complete absence of all jurisdiction.

The Rocketts claim Judge Eighmy's actions were taken in complete absence of all jurisdiction because they believe that in dissolution cases, the court does not exercise jurisdiction over the child, and the child is not subject to sanction for non-compliance with judgments, citing *De Rubio*, 541 S.W.3d at 574. Appellee.Br.33. *De Rubio* is wrong for the reasons

set forth *supra* Part I.B.2. Neither *Schutter v. Seibold*, 632 S.W.3d 820, 833 (Mo.App.2021), nor *Sophian Plaza Ass'n v. City of Kansas City*, 584 S.W.3d 784, 788 (Mo.2019), stand for this proposition.

Judge Eighmy receives judicial immunity because his actions were judicial and were not taken in complete absence of all jurisdiction.

## III. This Court should reverse the judgment because, if Judge Eighmy lacks judicial immunity, he was not acting under color of law.

### A. Judge Eighmy did not waive his color-of-law argument.

The Rocketts claim Judge Eighmy waived his color-of-law argument in a colloquy with the district court, but that is wrong. At the close of Plaintiff's evidence, Judge Eighmy filed a motion for judgment as a matter of law by filing a brief. TT.Index p.3 ("PLAINTIFFS REST…546"; "DEFENSE MOTION…547"); TT547:16–18. The brief argued Judge Eighmy "was not acting under color of state law." App. 0576–77; R. Doc 164, at 8–9. The district court overruled the motion after argument. TT554:15–16. Only then did Judge Eighmy agree not to put "color of law" into jury instructions. TT590. Since then, the issue has been argued in the alternative: if Judge Eighmy was not acting as judge and does not

get judicial immunity, then he was not acting under color of law, as he has no official role but judge.

**B. Judge Eighmy may argue in the alternative.**

The Rocketts argue Judge Eighmy cannot argue "color of law" because he did not raise it as a defense, argue it in dispositive motion, or raise it on appeal in *Rockett I*. They are wrong about the dispositive motion—Judge Eighmy raised the issue in his motion for judgment as a matter of law at trial. He did not have to plead it because it is not an affirmative defense. *See Burke v. Lippert Components, Inc.*, 112 F.4th 574, 579 (8th Cir.2024) ("[W]hen…defense involved…merely negates…element of…prima facie case[,] it is not…an affirmative defense and need not be pleaded…." (cleaned up)). Here, "color of law" is an element of a §1983 claim and therefore need not be pleaded. 42 U.S.C. §1983. The Rocketts do not explain why "color of law" should have been raised in the first appeal. The facts are different now than in the first appeal, so it is difficult to argue forfeiture. *See Ledbetter*, 133 F.4th at 794–95 (facts necessarily differ between dispositive motion and trial); *Machecha Transport. Co. v. Philadelphia Indem. Ins. Co.*, 737 F.3d 1188, 1194 (8th Cir.2013) (forfeiture rule).

The judicial-immunity argument does not prevent Judge Eighmy from arguing in the alternative. F.R.Civ.P. 8(d)(3) ("A party may state as many separate…defenses as it has, regardless of consistency."). Nor does judicial estoppel bar this argument. Appellee.Br.37. Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contrary argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). That is not what happened here. If this Court rules against judicial immunity, this is not "prevailing…on an argument." *Id.* Thus, Judge Eighmy may rely "on a contrary argument to prevail." *Id.*

### C. If Judge Eighmy was not acting in judicial capacity, he was not acting under color of law as §1983 requires.

The Rocketts argue Judge Eighmy was acting under color of law because: he never held himself out as a private citizen, the chief juvenile officer and court-appointed counselor deferred to Judge Eighmy because of his status as judge, and a random person would not have been able to seize the teens or walk in to the Juvenile Office's holding-cell area.

The Rocketts misunderstand Judge Eighmy's argument. Either Judge Eighmy was acting under color of law as a judge *or* he was acting as a private citizen. *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir.1997)

("Absent…actual or purported relationship between…officer's conduct and his duties as…police officer, the officer cannot be acting under color of state law."). The Rocketts themselves say that Judge Eighmy's throwing the teens in cells had nothing to do with judge duties: "[A]t no point"

- "did the children enter the courtroom or attend any judicial proceeding…";
- were the teens "adjudicated…delinquent, beyond parental control, or in contempt";
- "did Judge Eighmy notify the [guardian ad litem] or the Rockett parents that he was going to jail the children…[or] make any record or findings, or enter any orders or judgments, related to his personal jailing of the children"; or
- "were the children afforded any hearing related to the jailings."
- was Judge Eighmy in his robes.

Appellee.Br.6.

The Rocketts cannot have it both ways. Judge Eighmy was either acting as judge in judicial capacity, in which case he has judicial immunity, or he was acting "[a]bsent…actual or purported relationship between [his] conduct and his duties as" judge. *Roe*, 128 F.3d at 1216. If Judge

Eighmy lacks judicial immunity, he is not liable under §1983 because he was not acting under color of law. *Id.*

## IV. This Court should reverse damages.

This Court should reverse the $5,000 damages award for each Rockett teen for two reasons. First, the district court erred by sending back the verdict with a nominal-damages instruction after the jury returned a $0 verdict. Second, the district court abused its discretion by denying the motion to alter or amend the judgment to a proper nominal-damages amount.

### A. Sending back the waived nominal-damages instruction was reversible error; this Court should remand with instructions to reduce damages to $0.

If the jury returns a verdict in favor of Plaintiffs but awards $0, and there was no nominal damages instruction, Plaintiffs have already made their strategic choice and cannot then ask the Court for a nominal damages instruction. *Miller v. Albright* indicates that this is what F.R.Civ.P. 51 requires and that many sister circuits stick to the Federal Rule. 657 F.3d 733, 738 (8th Cir.2011) ("[A]lthough the First Circuit has adopted an exception to Rule 51(c)(2), many circuits that have addressed similar issues have declined to do so."). There is no reason to deviate from what

the Rules require. F.R.Civ.P. 51(c)(2) (timeliness requirements for jury-instruction objections). The Rocketts' case *Beard v. Flying J, Inc.* is inapposite because it does not address sending back a new jury instruction. 266 F.3d 792, 799–800 (8th Cir.2001).

Judge Eighmy did not agree the verdict was inconsistent—he argued the opposite. TT675 ("Our record is that when a nominal damages [instruction] is not requested nor objected to when a damage instruction [is] given and they don't award damages,…the plaintiff would not be the prevailing party."). In other words, when a nominal damages instruction is not given and the jury does not award damages, *plaintiff loses*. This is not the same as arguing the verdict is inconsistent.

Nor was the verdict inconsistent. A party can have their rights violated and not have any compensable injury for that violation. Appellant.Br.49–50; *Westcott v. Crinklaw*, 133 F.3d 658, 661 (8th Cir.1998). "[T]here are three situations in which a jury may reasonably conclude that compensatory damages are inappropriate despite a" constitutional violation. *Id.* Two of those three apply here: (1) "when the plaintiff's evidence concerning injury is not credible" (*e.g.*, picture of Rockett teens

dressed as Judge Eighmy and prisoner, smiling), and (2) "when the plaintiff's injuries have no monetary value or are insufficient to justify with reasonable certainty" (*e.g.*, claim that teens' constitutional rights were violated, but finding no physical or mental harm). *Id.*

Sending the verdict back to the jury after waiver of nominal damages was prejudicial error. Errors are prejudicial when they change or could have changed the case outcome. *See, e.g.*, *EEOC v. Drivers Mgmt., LLC*, 142 F.4th 1122, 1133 (8th Cir.2025); *Davis v. Simon Contractors, Inc.*, 117 F.4th 994, 999 (8th Cir.2024). Here, there is little doubt that sending back the nominal-damages instruction after the Rocketts waived it changed the outcome of the case. Between considering the verdict in the first instance and in the second, the jury changed the amount of damages from $0 to $5,000 per plaintiff. This Court should remand with instructions to reduce damages to $0.

### B. In the alternative, this Court should remand with instructions to reduce damages to $1 per plaintiff instead of $5,000 per plaintiff.

Even if sending back the nominal-damages instruction were not error (it was), the district court should have reduced damages to $1 per plaintiff because the jury already found no compensatory damages. The

only thing left for them to do when the judge sent back the nominal-damages instruction was to award nominal damages of $1 as the new jury instruction *required*. App. 0638; R. Doc. 169, at 44; *see also Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir.2005) (one dollar appropriate value for nominal damages).

Even if a slightly larger amount would be nominal, the Rocketts do not point to any amount over $100 being considered nominal in constitutional-rights contexts. *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1014–15 (5th Cir.2003) ("nominal damages" is "insignificant sum"). Though the Fifth Circuit has held amounts between $500 and $5,000 are nominal for commercial disputes, it should not follow that $5,000 is nominal for individuals.

The Rocketts baldly suggest this Court cannot rely on special verdict cases, but they do not explain why. They also state that Judge Eighmy cannot rely on *Corpus* to require decreasing nominal damages from $5,000 to $1 because they argue that in *Corpus* the defendant officer did not injure the plaintiff. Judge Eighmy relyies on *Corpus* for the broader proposition that courts should not award compensatory damages

when there is no basis for them. The discussion of *Westcott*, above, addresses two bases on which the jury could have found a constitutional violation but no damages without creating an inconsistent verdict. 133 F.3d at 661. Thus, this Court should reverse damages entirely or reduce them to a nominal amount: $1 per plaintiff.

## V. This Court should reverse the attorney's fees award.

The district court abused its discretion by awarding attorney's fees because the Rocketts have almost entirely lost this case from the beginning. They lost half the first appeal on judicial immunity, *Rockett I*, 71 F.4th at 673, and they essentially lost at trial by being awarded almost zero damages despite asking for millions. The U.S. Supreme Court in *Farrar v. Hobby* specifically states that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief," "the only reasonable fee is usually no fee at all." 506 U.S. 103, 115 (1992). The Rocketts rely on legislative history to claim the contrary, *see* Appellee Br. at 51, but this is a disfavored interpretive method. *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 568–69 (2005) (describing problems with legislative history).

In *Farrar*, the Supreme Court held that $280,000 in attorney's fees was too high when only nominal damages were awarded. 506 U.S. at 105, 115–16. So too here. Zero or nominal damages are the most that should have been awarded at trial. Thus, $325,000+ in attorney's fees is too much. The Rocketts claim *Farrar* is inapposite because it was a special verdict, not a general one like here. But *Farrar* does not distinguish, and the reasoning is the same for both verdict types.

To the extent $5,000 in damages were correctly awarded (it was not), the amount of attorney's fees was still an abuse of discretion. "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Id.* at 436 (cleaned up). This is true "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). Attorneys should not be paid $325,000+ for obtaining an amount fitting within Missouri small claims court. Appellant.Br.54 n.6. The Rocketts have no answer to this.

The Rocketts separately claim *Garcia v. Tyson Foods, Inc.* (Tenth Circuit) requires the opposite. 770 F.3d 1300 (10th Cir.2014); Appellee.Br.50. *Garcia* is inapposite because much more than small-claims

damages were awarded: $503,011. *Id.* at 1305 ($166,345 plus $336,666). The Rocketts point to no case in which a district court awarded hundreds of thousands of dollars for damages attainable in small claims court. Thus, awarding $325,000 in attorney's fees was an abuse of discretion, and this Court should reverse.

## CONCLUSION

This Court should reverse the district court's judgment. Even if it does not, it should still reverse or drastically reduce attorney's fees.

Dated: September 3, 2025

Respectfully submitted,

**ANDREW BAILEY**
Missouri Attorney General

*/s/ Maria A. Lanahan*

Maria Lanahan
*Principal Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63104
Tel: (314) 340-4978
Fax: (573) 751-0774
Maria.Lanahan@ago.mo.gov

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing complies with the type-volume limit, typeface requirements, and type-style requirements. The document complies with the type-volume limit of F.R.A.P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by F.R.A.P. 32(f), the document contains 6,495 words. The document complies with the typeface requirements of F.R.A.P. 32(a)(5) and the type-style requirements of F.R.A.P. 32(a)(6) because the document was prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font. I further certify that the brief has been scanned for viruses and is virus-free. The hard copies that will be submitted to the clerk are exact copies of the CM/ECF submission.

/s/ *Maria A. Lanahan*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Maria A. Lanahan*