**United States Court of Appeals**
**For the Eighth Circuit**

---

No. 25-1664

---

Brooklyn Rockett; Kadan Rockett

*Plaintiffs - Appellees*

v.

Eric Eighmy, in his individual capacity only

*Defendant - Appellant*

------------------------------

Institute for Justice; National Police Accountability Project

*Amici on Behalf of Appellee(s)*

---

Appeal from United States District Court
for the Western District of Missouri - Springfield

---

Submitted: January 14, 2026
Filed: October 13, 2026

---

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

---

STRAS, Circuit Judge.

The type of immunity has changed, but the outcome has not. *See Rockett ex rel. K.R. v. Eighmy*, 71 F.4th 665, 670–73 (8th Cir. 2023). When Judge Eric Eighmy had courthouse officers lock two children in holding cells because they refused to leave with their mother following a custody hearing, he violated their clearly established Fourth Amendment rights. We affirm the district court's[1] denial of qualified immunity, affirm the damages and attorney fees awarded, and dismiss Judge Eighmy's second try at judicial immunity.

I.

Trial has provided more detail, though the key facts are largely the same as before. Bart Rockett and Kami Ballard divorced in Missouri, but initially stayed together to give their two kids, who were "aspiring stars," a chance to "make it big" in Los Angeles. *Id.* at 667. The children found some success in the entertainment industry, including appearing on America's Got Talent, but their parents eventually split up.

Ballard filed a petition for sole custody that landed on Judge Eighmy's desk. During a hearing several months later, the children waited outside the courtroom while their parents tried to work it out. They agreed on primary custody for Ballard, with Rockett responsible for them at the beginning of each month and "during TV pilot season."

Once the hearing was over, however, neither child was willing to leave with her. With an argument unfolding in the lobby of the courthouse, Judge Eighmy walked over, introduced himself to the children, and told them to follow him to a conference room. Once there, he informed them that they had no choice but to leave

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.



Appellate Case: 25-1664 Page: 2 Date Filed: 10/13/2026 Entry ID: 5693598

with her. A youth counselor then reinforced the point by telling them that they "ha[d] to listen to the judge." The children would not budge, even after the judge mentioned that the other option was foster care.

Frustrated, Judge Eighmy had the children follow him again, this time to a waiting area in the courthouse's juvenile division. Once there, he told someone to "[k]eep an eye on" them to "make sure they [did not] go anywhere." After disappearing for a few minutes, he led them down a hallway to two holding cells. A second threat to place them in foster care made no difference, so he had a juvenile officer "lock them up." Before they entered the cells, the officer patted them down and ordered them to remove their socks and shoes. Judge Eighmy stood by as the officer locked the doors behind them.

With the children in their separate holding cells, Judge Eighmy took a seat in a nearby office. After what "felt like forever," the officer opened the cell doors for Judge Eighmy, who asked them one more time whether they would leave with their mother. This time, they both nodded yes, so he let them go. From start to finish, the time spent in the holding-cell area was between twenty and forty minutes.

Following these events, Rockett sued in federal district court for, among other things, a violation of the children's Fourth Amendment rights. *See* U.S. Const. amends. IV, XIV; 42 U.S.C. § 1983. Judge Eighmy unsuccessfully argued in a motion to dismiss that he should receive judicial immunity. On interlocutory review, we affirmed because, as relevant here, the children were beyond his contempt power and "judges do not do double duty as jailers."[2] *Rockett*, 71 F.4th at 672.

A second try at judicial immunity, this time on summary judgment, fared no better. Nor did his request for qualified immunity, which he raised twice more in

---

[2]We remanded for dismissal of another claim based on judicial immunity that is not before us today. *See Rockett*, 71 F.4th at 672–73.



Appellate Case: 25-1664 Page: 3 Date Filed: 10/13/2026 Entry ID: 5693598

motions for judgment as a matter of law: first at the close of evidence, and again after the jury returned a verdict in the children's favor. Neither was successful.

After a supplemental instruction on damages, the jury awarded the children $5,000 each on their Fourth Amendment claims. From there, the district court declined to reduce the verdict and added $326,637.22 in attorney fees. We now have the case for a second time with some new questions, including whether qualified immunity is available and either award is excessive.

II.

An old issue requires attention first: judicial immunity. Except now Judge Eighmy has new summary-judgment and post-trial facts that he thinks change the result. He raised some in his summary-judgment motion, but the district court decided that "genuine issues of material fact" remained for trial. Judicial immunity never came up again, until now.

By waiting so long, Judge Eighmy missed his chance. He had at least two more opportunities to raise it, once at the close of evidence and again after the jury returned its verdict. But rather than doing so, he switched gears and sought judgment as a matter of law on *qualified* immunity. Presumably he thought that raising *judicial* immunity twice previously—once in a motion to dismiss and a second time at summary judgment—was enough to preserve it for appeal. Turns out he was wrong.

We now face a different case than the district court had at summary judgment. The jury has returned its verdict, and "the full record developed in court" includes evidence that was not available then. *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). For that reason, we have required the filing of "subsequent motions for judgment as a matter of law" as "the proper redress for an argument denied at summary judgment," followed by "appellate review of *those* motions if they were denied." *New York Marine & Gen. Ins. Co. v. Cont'l Cement Co., LLC*, 761 F.3d 830, 838 (8th Cir. 2014) (emphasis added) (citation omitted); *see* Fed. R. Civ. P. 50(a)–(b).



Appellate Case: 25-1664 Page: 4 Date Filed: 10/13/2026 Entry ID: 5693598

Not what Judge Eighmy did here, which was giving up on judicial immunity right after summary judgment, thereby depriving the district court of the opportunity to address it first after seeing and hearing all the evidence. *See Ortiz*, 562 U.S. at 185 (holding that an appellate court may not review a denial of qualified immunity at summary judgment following a full trial on the merits). Under these circumstances, we are now "powerless to review" a ruling it never had a chance to make. *Id.* at 189 (citation omitted).

Nor is the issue a "purely legal" one that we can decide without a motion for judgment as a matter of law. *Panting v. United States*, 162 F.4th 940, 944 (8th Cir. 2025) (quoting *Dupree v. Younger*, 598 U.S. 729, 736 (2023)). When this exception applies, it "typically involve[s] contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." *Ortiz*, 562 U.S. at 190. An example is the second step of *qualified* immunity. *See id.* at 188. Here, by contrast, Judge Eighmy wants us to turn back the clock and decide whether the facts were once "genuinely in dispute," exactly the sort of thing we are "powerless" to do. *Id.* at 188–89; *see Dupree*, 598 U.S. at 735 (stating that "factual issues addressed in summary-judgment denials are unreviewable on appeal").

III.

Qualified immunity, on the other hand, presents the reverse scenario. Judge Eighmy did not initially raise it in either his motion to dismiss or for summary judgment, but he pursued it "at trial and after judgment." *Rellergert ex rel. Rellergert v. Cape Girardeau Cnty.*, 924 F.2d 794, 796 (8th Cir. 1991). Doing so preserved it for appeal. *See id.* Our review is de novo, viewing the evidence in the light most favorable to the jury's verdict. *See Ryan Data Exch., Ltd. v. Graco, Inc.*, 913 F.3d 726, 732 (8th Cir. 2019) (explaining the standard of review for orders denying judgment as a matter of law).



Appellate Case: 25-1664 Page: 5 Date Filed: 10/13/2026 Entry ID: 5693598

In dealing with qualified-immunity determinations, we ask two questions. "First, did [the defendant] violate a constitutional right? Second, was that constitutional right clearly established at the time he acted?" *Hight v. Williams*, 164 F.4th 672, 675 (8th Cir. 2026). If the answer to either question is no, Judge Eighmy is not liable. *See id.*

A.

Judge Eighmy violated the Fourth Amendment only if he seized the children and did so unreasonably. *See id.* (explaining that the "threshold inquiry" is whether a seizure occurred, after which we "assess the reasonableness" of it (citation omitted)); *see also* U.S. Const. amend. IV; *id.* amend. XIV (incorporating it against the states). Locking the children up after the custody hearing was both.

1.

Whether there was a seizure pretty much answers itself. By ordering an officer to "lock them up," Judge Eighmy "*objectively* manifest[ed] an intent to restrain" them. *Hight*, 164 F.4th at 675 (alteration in original) (quoting *Torres v. Madrid*, 592 U.S. 306, 317 (2021)). "[A] reasonable person" facing this situation "would have believed that he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 255 (2007) (citation omitted).

The command to "lock . . . up" the kids left no ambiguity about Judge Eighmy's intent. And his actions beforehand confirmed it. He started by pulling the children into a conference room and threatening them with foster care. He then took them to the juvenile division, where he told an officer to "[k]eep an eye on them, make sure *they don't go anywhere*." (Emphasis added). Arguably, he had seized them by that point. But when he stood by as an officer closed the cell doors, no other conclusion was possible: the restrictions on their "freedom of movement," *Torres*, 592 U.S. at 322, were "tantamount to an arrest," *Davis v. Dawson*, 33 F.4th 993, 998 (8th Cir. 2022) (citation omitted). *Cf. Peterson v. City of Plymouth*, 945 F.2d 1416,

1420 (8th Cir. 1991) (concluding that placing someone in the back of a squad car for twenty minutes counted as an arrest).

It makes no difference that Judge Eighmy ordered someone else to physically close the doors. His "personal involvement" was clear: he took the children there, commanded an officer to lock them up, and waited nearby until they were willing to comply. *Molina v. City of St. Louis*, 59 F.4th 334, 344 (8th Cir. 2023); *see Torres*, 592 U.S. at 313 (recognizing seizures can occur through submission to authority); *United States v. Campbell*, 843 F.2d 1089, 1096 n.8 (8th Cir. 1988) ("The presence of coercion is relevant to determining not only whether there is voluntary consent but also to whether a seizure has occurred."); *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005) (explaining that a child was seized after "repeated threats that if she did not agree to live with her father," she "would [be] arrest[ed]"). Voluntary in his eyes or not, it was a seizure.

2.

Not every seizure, however, violates the Fourth Amendment. To the contrary, "[]reasonable" ones, like lawful arrests supported by probable cause, do not. U.S. Const. amend. IV. But here, Judge Eighmy did not have "probable cause to believe that [the children had] committed" an offense, much less one that justified placing them in a holding cell. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)); *see Peterson*, 945 F.2d at 1420 (concluding that a short arrest without probable cause was unreasonable). Rather, their only misdeed was one every parent knows well: resisting authority. Even in the context of legal-custody proceedings, refusing to leave with a parent is not a jailable offense. *See Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008) (explaining that, under the Fourth Amendment, "the protective seizure of children [must] occur pursuant to a court order, or, in the absence of a court order, pursuant to probable cause or exigent circumstances"). Nor were there "exigent circumstances" arising out of danger to themselves or others. *Id.*



Appellate Case: 25-1664 Page: 7 Date Filed: 10/13/2026 Entry ID: 5693598

We have no doubt that Judge Eighmy believed he was acting in "good faith," and possibly even in the children's best interests, by detaining them. But good faith in the Fourth Amendment context is about reasonable reliance, either on binding appellate precedent or a warrant issued by a "neutral magistrate." *Wheeler v. City of Searcy*, 14 F.4th 843, 852 (8th Cir. 2021) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)); *see generally Davis v. United States*, 564 U.S. 229 (2011). Neither was present here. No case allows a judge to detain children in a holding cell when they refuse to leave with a parent. And a custody plan is no substitute for a warrant. *See Rockett*, 71 F.4th at 672 (explaining that in Missouri, a custody plan allows a judge to issue a pick-up order); Mo. Rev. Stat. § 452.885 (outlining the process for getting one). In short, rough justice does not trump the Constitution.

B.

The law in this area was also "clearly established." *Hight*, 164 F.4th at 675. "[I]t would have been sufficiently clear [to] every reasonable official," Judge Eighmy included, that locking up two children for refusing to follow directions violated the Fourth Amendment. *Molina*, 59 F.4th at 338 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). As we put it over a decade and a half ago, long before the events in this case, "[i]t is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Baribeau*, 596 F.3d at 478; *see Davis*, 33 F.4th at 998 (explaining that, other than "a few narrow exceptions," there are "centuries of precedent" that support "the principle that seizures are 'reasonable' only if supported by probable cause" (quoting *Dunaway v. New York*, 442 U.S. 200, 214 (1979))).

We are not concerned about the lack of a prior case with "'fundamentally similar' facts." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). As then-Judge Gorsuch put it, "sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015); *see District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)

(leaving room for "the rare 'obvious case,' where the unlawfulness of the offic[ial]'s conduct is sufficiently clear even though existing precedent does not address similar circumstances" (citation omitted)). Indeed, given how clear the law is, it would have been surprising to find one. *See Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 809–10 (8th Cir. 2010) (denying qualified immunity for an "outrageous" Fourth Amendment seizure of children even though other cases lacked "identical facts").

A reasonable judge should have known better. *See Hope*, 536 U.S. at 741 (explaining that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"). As we said the first time around, criminal contempt was off the table because the children were neither parties to the custody case nor present inside the courtroom. *See Rockett*, 71 F.4th at 671–72 (failing to locate a case applying the contempt power to facts like these); Mo. Rev. Stat. § 476.110(1) (giving judges the ability to punish "[d]isorderly, contemptuous or insolent behavior" under the contempt power only when it occurs "*during* [the court's] session, in its immediate view and presence" (emphasis added)). Nor could the power to punish a party for violating an injunction have provided the justification, given that Judge Eighmy never issued one. *See Tincher v. Noem*, 164 F.4th 1097, 1100 (8th Cir. 2026) (discussing how an injunctive "order" can trigger the "judicial contempt power" (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 n.2 (1974))). The law was "clearly established" enough, in other words, to place the issue "beyond debate."[3] *Taylor v. Barkes*, 575 U.S. 822, 825 (2015).

---

[3]Despite exceeding his powers, Judge Eighmy still acted "under color of state law." *Mohamud v. Weyker*, 144 F.4th 1099, 1103 (8th Cir. 2025) (explaining that in a § 1983 lawsuit, a plaintiff must show the official's conduct was "fairly attributable to the State" (citation omitted)). "[P]urporting" to do so is enough, even without "hew[ing] to the line of [one's] authority." *Roe v. Humke*, 128 F.3d 1213, 1216 (8th Cir. 1997) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion)). Indeed, if he were not a judge, it is doubtful that anyone in the courthouse would have followed his order to lock the children in holding cells.



Appellate Case: 25-1664 Page: 9 Date Filed: 10/13/2026 Entry ID: 5693598

IV.

Judge Eighmy raises two remaining challenges, one to the damages award and the other to the amount of attorney fees and costs. Different arguments, same result: no reversible error.

A.

Start with the damages of $5,000 for each child. The jury eventually ended up there, but not before initially awarding "none." The district court thought the original verdict was a problem because Judge Eighmy could not at the same time be liable *and* owe nothing in damages. *See Miller v. Albright*, 657 F.3d 733, 736 (8th Cir. 2011) (suggesting, but not deciding, that a Fourth Amendment violation requires at least nominal damages). The original set of instructions said as much by listing "damage[s]" as an element.

The parties disagreed about how to resolve the inconsistency in the verdict, but neither wanted to send the case back to the jury. Judge Eighmy asked for a defense verdict based on the no-damages finding, while the children urged the district court to award nominal damages on its own. The court went with a middle ground: sending the jury back with an instruction to "reconsider" its decision because a verdict for the children required "damage[s]," with even "one dollar" being enough if it thought their "damages ha[d] no monetary value."

Picking the right solution was a judgment call for the district court, subject to reversal only for an abuse of its discretion. *See Smith v. Riceland Foods, Inc.*, 151 F.3d 813, 821 (8th Cir. 1998) ("A district court has discretion to decide whether a jury's findings on a verdict form are incomplete, confusing, or inconsistent and whether to resubmit the claim to the jury."); *Karl v. Burlington N. R.R. Co.*, 880 F.2d 68, 72 (8th Cir. 1989) (explaining that the court "has the discretion to resubmit the issue" until "the dismissal of the jury"). According to the Federal Rules of Civil Procedure, district courts can "direct the jury to further consider its answers and

verdict" if its "answers are inconsistent . . . with the general verdict." Fed. R. Civ. P. 49(b)(3)–(4). Faced with inconsistent answers and conflicting interpretations, the court wanted to give the *jury* the chance to clarify what it meant. *See Beard v. Flying J, Inc.*, 266 F.3d 792, 799 (8th Cir. 2001) (affirming a district court's resubmission of a case to the jury after its findings on liability and damages did not match). Did it really believe there was no unreasonable seizure of the children, or did it mean to award nominal damages?

Turns out the answer was neither, which surprised everyone. The jury came back with damages of $5,000 for each child, which Judge Eighmy thought should be reduced to a nominal $1 award. The district court refused, which made sense because the supplemental instruction did not require an either-or choice between no damages and nominal damages. *See United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) ("A district court has broad discretion in determining whether to grant or deny a motion to alter or amend [a] judgment pursuant to Rule 59(e) . . . ."). It allowed for a third possibility "consistent" with the jury's finding of liability: awarding actual damages. *Smith*, 151 F.3d at 822. And having not challenged the instruction itself,[4] Judge Eighmy cannot now argue that it somehow "pressure[d] or coerce[d] the jury" to award them. *Id.* at 821.

B.

Also discretionary was the $326,637.22 award of attorney fees and costs after the children prevailed at trial. *See* 42 U.S.C. § 1988(b) (stating that district courts may award "reasonable" attorney fees to the prevailing party in a lawsuit under 42 U.S.C. § 1983); *Brewington v. Keener*, 902 F.3d 796, 804 (8th Cir. 2018)

---

[4]Judge Eighmy waived any objection to it once his attorney said, "[w]e're fine with the nominal damage instruction given, your honor." The objection was to returning the case to the jury, not to providing another instruction. *See Westcott v. Crinklaw*, 133 F.3d 658, 662 (8th Cir. 1998) (explaining the need for "specific objections before the jury retires so that the district court may correct errors and avoid the need for a new trial").



Appellate Case: 25-1664 Page: 11 Date Filed: 10/13/2026 Entry ID: 5693598

(“Attorney[] fees are within the broad discretion of the district court” (citation omitted)). The district court “us[ed] the lodestar method” to calculate the amount. *Brewington*, 902 F.3d at 805. It began by determining the “number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,” *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which it reached after reducing the rates proposed by the children’s attorneys, *see M.B. ex rel. Eggemeyer v. Tidball*, 18 F.4th 565, 568 (8th Cir. 2021) (affirming the district court’s grant of over $3 million in attorney fees after noting it had reduced the hourly rates of most of the attorneys). It then shaved off a flat 10% to account for the lower-than-expected damages and the lack of success on “several of [the children’s] claims.” *See Hensley*, 461 U.S. at 434 (explaining that another important consideration is the “result[] obtained”).

We realize that the final number of $326,637.22 looks large in comparison to the $10,000 the jury awarded in damages. But this was a hotly contested case with multiple defenses raised, including two types of immunity. *See Rockett*, 71 F.4th at 668–73; *Lash v. Hollis*, 525 F.3d 636, 642–43 (8th Cir. 2008) (explaining that “a plaintiff’s success in a civil rights case can be measured only in part by monetary success,” and “dramatic reductions in fee awards are not always required simply because the actual damage award is small or nominal”). As we have explained, lodestar calculations do not require “rigid proportionality,” and here the district court both showed its work and explained its choice. *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 713 (8th Cir. 2021) (quoting *Cent. Pension Fund of the Int’l Union of Operating Eng’rs & Participating Emps. v. Ray Haluch Gravel Co.*, 745 F.3d 1, 6 (1st Cir. 2014)). Our law requires nothing more.

V.

We accordingly dismiss the appeal in part and otherwise affirm each of the judgments of the district court.

______________________________